# EXHIBIT B



**OGDEN MURPHY WALLACE, PLLC**  T 206.447.7000   OMWLAW.COM
901 FIFTH AVENUE, SUITE 3500   F 206.447.0215
SEATTLE, WA 98164-2008

**KARI I. LESTER**
206.447.0410
klester@omwlaw.com

July 13, 2018

**VIA USPS**

Oscar Mateo
GMAC
P.O. Box 1623
Winston Salem, NC  27102

JUL 1 8 2018
Brenda Gentle

Re:    Our Client:     Eric Hoff
       Your Insured:  Daniel L. Wilcox
       Claim No.:      3051958
       Policy No.:     2001534738
       Date of Loss:   11/01/2017

**This letter contains an offer of settlement of a claim.  Pursuant to Evidence Rule 408, this letter is not admissible as evidence in any pending or future legal proceeding.**

Dear Mr. Mateo:

As you are aware, our office represents Eric Hoff regarding injuries he suffered as a direct result of an automobile collision that occurred on November 1, 2017, which are set forth in detail in this demand.

To assist you in evaluating this matter, we have enclosed copies of our client's medical records, medical bills, a copy of the vehicle collision report and investigation documentation, as well as other pertinent information.  You are prohibited from releasing this information to any other party without our written consent.  You should not construe any of the enclosed information as waiving our client's physician/patient privilege, right to privacy, or as any admission against interest.  Accordingly, the enclosed information is provided solely for settlement purposes.

Although our client wishes to cooperate with you in reaching an amicable settlement, time is of the essence.  Therefore, our offer automatically terminates in twenty (20) days without further notice to you.

{KIL1697010.DOCX;1/00999.089722/ }



INT_000127

Oscar Mateo
July 13, 2018
Page 2

## I. LIABILITY

On November 1, 2017, at approximately 5:35 p.m., our client, Eric Hoff, was at the crosswalk at SR 524 and Scriber Lake Road in Lynnwood, Washington.  Mr. Hoff was waiting to cross the street in the northbound crosswalk on Scriber Lake Road (that crossed over SR 524).  At the same time, your insured, Daniel Wilcox, was driving a 2000 Dodge vehicle heading north on SR 524 and was apparently intending to turn right to head eastbound on SR 524.  As confirmed by witnesses at the scene, the pedestrian signal for Mr. Hoff lit up and he started to cross the street.  Mr. Wilcox – who had been only looking to his left to clear the intersection from that direction – failed to look to his right when the light turned green and failed to yield the right of way to Mr. Hoff who was already in the intersection.  Mr. Wilcox then violently struck Mr. Hoff.  The force of the impact was so great that it knocked Mr. Hoff into the air and then, as he came back down, your insured hit him a second time, throwing Mr. Hoff onto the hood of Mr. Wilcox's vehicle.

The collision was investigated by Lynnwood Police Officer Ryan McQuoid, Badge No. 0988, who noted that, when he arrived, Mr. Hoff was lying on the inside eastbound lane of SR 524, just east of Scriber Lake Road.  After speaking with the driver, Daniel Wilcox, Mr. Hoff, and multiple witnesses, Officer McQuoid confirmed the following facts as he set forth in his report:

> *Wilcox said he was looking to his left and saw his traffic light turn green. Wilcox said he began to accelerate and turn to the right and had not fully looked back to the right before he began making his turn.  Wilcox said he did not see the crosswalk signal activated and did not see the pedestrian in the crosswalk until he hit him, and the pedestrian was on his hood.  Wilcox said he freaked out and slammed on his brakes and the pedestrian slid off his hood and onto the street. Wilcox said he immediately pulled off the road and waited for help.*

> *Pedestrian (Hoff) said he was waiting on the southeast corner of Scriber Lake Rd. and SR 524 to cross NB across SR 524 to go to Heritage Bank to deposit his check. Hoff said the NB light turned green as well as the pedestrian walk signal and he stepped into the crosswalk to cross the street.  Hoff said as he walked across the crosswalk he was suddenly hit by a car and thrown into the air and then into the street.*

> *Hoff suffered obvious femur, hip and knee injuries from the collision and was transported to Swedish Edmonds for his injuries.*

> *Witness 2 (Blaine) said he was stopped on SB 58th Ave. W. at SR 524 directly across from Unit 1.  Blane said he saw Unit 1 pull forward and make its right turn as the pedestrian was in the crosswalk.  Blaine said Unit 1 hit the pedestrian,*

Oscar Mateo
July 13, 2018
Page 3

---

*knocking him into the air and then hit him a second time where the pedestrian landed on the hood of Unit 1. Blaine said Unit 1 then stopped suddenly and the pedestrian slid off the hood and into the roadway.*

Officer McQuoid cited Mr. Wilcox for Fail to Yield to Pedestrian in Crosswalk.

A diagram from the police report is set forth below for your review and is also contained within **Exhibit "A."**



Transcripts from 911 calls placed just after the impact by witnesses, including your insured, are included in **Exhibit "B."** A call log is included in **Exhibit "C."**   One of the 911 calls describes the incident:

Dispatch:   911 addressing your emergency.

Jones:   Yes, 196th and Scribner Lake a guy just ran over a guy crossing the street.

Dispatch:   Okay.

Jones:   He's laying in the middle of the street.

Dispatch:   Okay, hold on – 196th Street Southwest and Scriber?

Oscar Mateo
July 13, 2018
Page 4

| | |
|---|---|
| Jones: | Yes, Scriber Lake Road. |
| Dispatch: | Okay. Hold on one moment, let me get this call started. And is he still laying in the road? |
| Jones: | Oh, God – he's still laying in the road. A tow truck just pulled in front of him so nobody will run him over. The car pulled over into the Big Lots – that ran him over. |
| Dispatch: | Okay. |
| Jones: | You'll probably get more calls. I just wanted someone to call. |
| Dispatch | Do you see (unintelligible). Do you see any obvious injuries? Do you know if there's any bleeding or anything? |
| Jones: | He's grabbin' his leg and he's laying on the ground. He flipped completely over the car. He was on top of the hood. |
| Dispatch: | Okay so does it look like he's conscious? |
| Jones: | Yes. |
| Dispatch: | Okay. Okay. And does it look like – so he's breathing normally – does it look like he has any bleeding? |
| Jones: | No, he doesn't look like he has any bleeding, he's grabbing his legs, I don't see any blood, a guy is right over him but he's not getting up off the ground. |
| Dispatch: | Okay. Okay and then the vehicle that hit him pulled into the parking lot, correct? |
| Jones: | Yes, he pulled into a parking lot, it's a grey car. I saw the guy crossing the street. I'm two cars behind and I saw the guy crossing – I saw him going faster. I was like oh my God I want to – and I saw the guy go up over the hood and back down. |
| Dispatch: | Okay and what is your name? |
| Jones: | Kim Jones. |

The Lynnwood police department investigation documentation is included within **Exhibit "A"** for your review. It is absolutely clear that Mr. Wilcox is 100% liable for the subject motor vehicle collision that proximately caused Mr. Hoff's injuries. In fact, it is our understanding that your company has already accepted 100% liability for the subject collision, given the clear manner in which the subject motor vehicle collision occurred. If, however, you intend to

Oscar Mateo
July 13, 2018
Page 5

dispute liability in any manner or degree notwithstanding the obvious negligence of your insured, please let me know immediately.

## II. ERIC HOFF'S INJURIES AND TREATMENT

### 2.1    Edmonds Fire Department – South Snohomish Fire and Rescue

EMTs from the Edmonds Fire Department arrived at the scene of the collision and noted that Mr. Hoff had been in the crosswalk when struck by a vehicle and was still laying on the ground upon their arrival. Mr. Hoff had significant left femur pain and could not move into a seated or standing position. They transported Mr. Hoff to Swedish Hospital.

*The records and billings from the Fire Department are included within Exhibit "1."*

### 2.2    Swedish Hospital

Upon arrival at Swedish Hospital, Mr. Hoff presented to Elizabeth Gillenwater, M.D. with left hip and left proximal leg pain. It was noted that he had been in a crosswalk when he was hit by a car going "pretty fast" at an estimated 35 mph. He recalled rolling over the hood of the car and reportedly landed 20 feet from the impact. Mr. Hoff did not know if he had lost consciousness.

Dr. Gillenwater ordered CT scans of Mr. Hoff's chest/abdomen and pelvis, as well as of his cervical spine and head. She also ordered x-rays of Mr. Hoff's left femur, left knee, and left tibia. The results of the radiology testing confirmed a comminuted left intertrochanteric fracture with mild-to-moderate displacement of the fracture fragments and intramuscular hematoma within the left thigh. Mr. Hoff was admitted, and he was not discharged until November 5, 2017.

Given the extent of the fracture, Mr. Hoff was seen by orthopedic surgeon Shane Leavitt, M.D. for surgical evaluation. He underwent surgery the following day – specifically, a left hip intermedullary ("IM") nailing of his femoral shaft fracture.

Dr. Leavitt noted of the surgery that he performed on November 2, 2017:

> *This procedure is a complicated medical procedure that requires precision when implanting. A surgically trained assistance surgeon, such as a PA-C, is utilized during this procedure to ensure safety and accuracy when stabilizing the patient, removing existing bone and implanting the artificial total joint. During this implant procedure the patient's body and surgical extremity is moved and adjusted to accommodate the surgical procedure. Ultimately this implant requires*

Oscar Mateo
July 13, 2018
Page 6

---

*two sets of hands that are medically trained to recognize how the patient should be placed, if the implant is to be positioned correctly, securely and safely. To perform this surgical procedure without a surgically trained assistant surgeon would be detrimental to the patient and the medical outcome of the procedure would be compromised.*

Mr. Hoff remained in the hospital for 4 days and was ultimately discharged home to his mother's care on November 5, 2017.

*The records and billings from Swedish Hospital are included within Exhibit "2."*

### 2.3    CEP America, LLP

*The billing from CEP America, LLP is included within Exhibit "3."*

### 2.4    Radia Inc., P.S.

*The billing from Radia Inc., P.S. is included within Exhibit "4."*

### 2.5    WWMG

Mr. Hoff saw Dr. Leavitt for follow-up in his practice. On November 20, 2017, it was noted that Mr. Hoff was still getting around via a wheelchair. On December 12, 2017, it was noted that Mr. Hoff was using crutches and could only bear weight as tolerated. Mr. Hoff has continued to follow up with Dr. Leavitt.

*The records and billings from WWMG are included within Exhibit "5."*

### 2.6    Community Health Center of Snohomish County

Mr. Hoff also followed up with his primary care physician on November 9 and 30, 2017 for his collision-related injuries and anemia, which resulted from the surgery he underwent.

*The records and billings from Community Health Center of Snohomish County are included within Exhibit "5."*

### 2.7    Providence Homecare of Snohomish

Pursuant to the recommendation and referral from Dr. Leavitt, Mr. Hoff received in-home physical therapy starting on November 8, 2017 due to his inability to be mobile following the collision in this case. The notes are self-explanatory and therefore, not repeated here.

{KIL1697010.DOCX;1/00999.089722/ }

Oscar Mateo
July 13, 2018
Page 7

As noted by the physical therapist on December 8, 2017, Mr. Hoff still required the use of a walker and assistance due to his impaired gait and strength. "Leaving the home" was noted to be a "taxing effort due to pain and decreased strength." His pain level – even at rest – was noted to be a 5 out of 10 on a 0 to 10 pain scale. He reported increased pain in his left knee, including pain with terminal knee extension, movement and weight bearing. It was also noted that he had significant pain in his left suprapatellar region and posteriolaterally and pain diagonally down the anterior thigh.

*The records and billings from Community Health Center of Snohomish County are included within Exhibit "7."*

### III. MEDICAL BILLINGS

The billings for Eric Hoff's medical care and treatment(s) because of the subject motor vehicle collision are attached hereto throughout Exhibits 1-7. For your convenience, a summary of those medical expenses is also set forth below.

| No. | Provider | Date of Service | Amount |
|-----|----------|-----------------|--------|
| 1 | South Snohomish Fire and Rescue 18800 68th Avenue West Lynnwood, WA 98036 425.670.5314 | 11/1/2017 - 11/5/2017 | $ 1,027.20 |
| | | | $ 1,027.20 |
| 2 | Swedish Hospital 747 Broadway Seattle, WA 98122 206.320.5300 | 11/1/2017 - 11/5/2017 | $ 69,704.11 |
| | | | $ 69,704.11 |
| 3 | CEP America 1601 Cumins Dr. Ste. D Modesto, CA 95358-6403 | 11/1/2017 | $ 667.00 |
| | | | $ 667.00 |
| 4 | Radia Inc., PS P.O. Box Seattle, WA | 11/1/2017 - 11/03/2017 | $ 1,139.20 |
| | | | $ 1,139.20 |

Oscar Mateo
July 13, 2018
Page 8

| No. | Provider | Date of Service | Amount |
|-----|----------|-----------------|--------|
| 5 | WWMG Dept. of Orthopedics | 11/1/2017 | $ 231.00 |
| | 3726 Broadway, Suite 201 | 11/2/2017 | $ 2,856.00 |
| | Everett, WA 98201-3788 | 11/2/2017 | $ 2,856.00 |
| | 425.317.9199 | 11/20/2017 | $ 120.00 |
| | | | $ 6,063.00 |
| 6 | Community Health Center of Snohomish County | 11/9/2017 | $ 254.00 |
| | PO Box 21743 | 11/30/2017 | $ 213.00 |
| | Belfast, ME 04915-4114 | | |
| | 425.789.3704 | | |
| | | | $ 467.00 |
| 7 | Providence Homecare of Snohomish | 11/8/2017 | $ 658.01 |
| | 2731 Wetmore Ave. | 11/10/2017 | $ 259.00 |
| | Everett, WA 98201 | 11/13/2017 | $ 532.40 |
| | 425.261.4800 | 11/16/2017 | $ 259.00 |
| | | 11/20/2017 | $ 268.00 |
| | | 11/21/2017 | $ 259.00 |
| | | 11/27/2017 | $ 268.00 |
| | | 12/1/2017 | $ 268.00 |
| | | 12/5/2017 | $ 268.00 |
| | | 12/8/2017 | $ 268.00 |
| | | | $ 3,307.41 |
| **TOTAL MEDICAL BILLINGS** | | | **$ 82,374.92** |

## IV.  WAGE LOSS

As a result of the injuries Mr. Hoff sustained in the automobile collision, he has not been able to return to work.  He had just started a new job at the Blazing Onion as a server and was, ironically, crossing the street to deposit his paycheck when the collision occurred.  At $15/hr. and 40 hours per week, Mr. Hoff has lost at least a year of wages, for a total of $31,200.00. Mr. Hoff will not be able to return to any type of physical job and will therefore have to find sedentary work, which will be difficult.  He is expected to have wage loss greater than 1 year.

## V.  DAMAGE SUMMARY

Prior to the November 1, 2017 collision, Mr. Hoff was an active young man who had no physical limitations.  Mr. Hoff's life was turned upside down however when your insured failed to follow basic law and yield to Mr. Hoff.

Oscar Mateo
July 13, 2018
Page 9

---

As a direct result of the collision, Mr. Hoff suffered a significant injury to his left femur, which required surgery. The injury was so severe that even with surgery, the surgeon was not sure if he would ever walk again, but was certain that if he did, it would be with a permanent limp. It has now been a little more than six months since the collision and unfortunately, Mr. Hoff can only ambulate with a limp and support. He has not been able to take care of himself, live by himself, return to employment, or do much of anything independently. He had to quit his job because of his injuries and has not been able to become gainfully employed since.

Since the November 1, 2017 collision, Mr. Hoff awakes in pain, which continues all day and into the night when he tries to sleep. Understandably, Mr. Hoff, who is currently only 34 years old, is extremely concerned about what the future holds for him, particularly as he is destined to have a limp for life. He will never be able to walk normally, obtain any type of physical work, take care of his own home or yard, or even be active.

It is clear that Mr. Hoff will be forced to live with the residual effects of these injuries for the rest of his life. As demonstrated through the reports and records of Mr. Hoff's providers, he has suffered substantial past pain and discomfort, due to a direct result of the November 1, 2017 collision, which has restricted his activities daily, recreational and work activities and dramatically and forever impacted the quality of his life.

As articulated in *Buchalaksi v. Universal Marine Corp.*, 393 F. Supp. 246, 248 (W.D. Wash. 1975), the law in Washington is that "a tortfeasor takes his victim as [he/she] finds them, and must bear liability for the manner and degree in which [his/her] fault manifests itself on the individual physiology of the victim." Accordingly, Washington law specifically provides that a tortfeasor is responsible for all injuries that occur or are aggravated, even those that occur because the victim is more susceptible. This law is reflected in several Washington jury instructions. *See* WPI 30.17, 30.18 and 30.18.01. See also *Harris v. Drake*, 11 Wn. App. 261, 65 P.3d 350 (2003) affirmed by *Harris v. Drake*, 152 Wn.2d 480 (2004) (holding that the fact that a condition is pre-existing does not relieve the tortfeasor from liability and evidence of a pre-existing condition is irrelevant and inadmissible, unless the condition was symptomatic immediately before the collision). Prior to the collision, Mr. Hoff did not have any of the same symptoms, or any physical limitations whatsoever that he suffered in the November 1, 2017 collision. Significantly, Mr. Hoff had no issues or any diagnosis before the subject collision that are the same as the diagnoses that were rendered of his condition following the collision.

The law makes it clear that a Plaintiff may recover for an increased risk of injury or even for the reasonable fear of an increased risk of injury. *Sorenson v. Raymark Indus.*, 51 Wn. App. 954, 756 P.2d 740 (1988); *Hisskovitz v. Group Health*, 99 Wn.2d 609, 664 P.2d 474 (1983); *Daugert v. Pappas*, 104 Wn.2d 254, 704 P.2d 600 (1985). Loss of ability to enjoy life is a proper element of

Oscar Mateo
July 13, 2018
Page 10

damages. *Kirk v. WSU,* 109 Wn.2d 448, 746 P.2d 285 (1987). Furthermore, negligently inflicted mental distress is compensable. *Hunsley v. Giard*, 87 Wn.2d 424, 553 P.2d 1096 (1976).

Mr. Hoff is entitled to general damages for his past and future pain and suffering. Generally, the purpose of awarding damages for injuries to persons in tort actions is to place the injured party in as nearly as possible the same condition as if the wrong had not occurred. *Wilson v. Brand S Corp.*, 27 Wn. App. 1143, 621 P.2d 748 (1980); *Restatement of Torts*, 2d Ed., Section 929. The Washington cases make a clear distinction between the sufficiency of the evidence to establish the fact of damage and the sufficiency of the evidence to sustain the amount awarded. Once the fact of damage has been established by substantial evidence, a more liberal rule applies requiring only that there be a reasonable basis for estimating the loss, and the substantial evidence test no longer applies. The rule is peculiarly applicable to proof of future damages. Our Supreme Court in the case of *Larson v. Union Inv. Loan Co.*, 168 Wash. 5, 11, 10 P.2d 557 (1932) cited the holding of the United States Supreme Court in the case of *Storey Parchment Co. v. Patterson Parchment Paper Co.*, 282 U.S. 555, 75 L. Ed. 544, in pointing out the distinction between cases in which the evidence of the fact of damages is uncertain and those in which the fact of damages is clearly established, the uncertainty existing only as to the extent of the damages:

> It is true that there was uncertainty as to the extent of the damage, but there was none as to the fact of damage; and there is a clear distinction between the measure of proof necessary to establish the fact that petitioner had sustained some damage, and the measure of proof necessary to enable the jury to fix the amount. The rule which precludes the recovery of uncertain damages applies to such as are not the certain result of the wrong, not to those damages which are definitely attributable to the wrong and only uncertain in respect of their amount.
> *Larson v. Union Inv. Loan Co.*, supra.

The reason for the more liberal rule governing proof of the amount of damages is the elementary principle of justice that where the fact of the damages has been proved, the wrongdoer must bear the risk of uncertainty of proof of the extent of the damages caused by his wrong. *Kramer v. Portland-Seattle Auto Freight*, 43 Wn.2d 386, 261 P.2d 692 (1953). The *Kramer* decision recognized this principle when it quoted with approval the following passage from *Bigelow v. RKO Pictures, Inc.*, 327 U.S. 251, 265, 90 L.Ed. 652, 66 S. Ct. 574 (1946):

> The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty, which his own wrong has created. The constant tendency of the courts is to find some way in which damages can be awarded where a wrong has been done. The difficulty of

{KIL1697010.DOCX;1/00999.089722/ }

Oscar Mateo
July 13, 2018
Page 11

ascertainment is no longer confused with the right of recovery for a proven invasion of the Plaintiff's rights.

Once an injured party has established the fact of damages, difficulties of proof that prevent an absolute establishment of the specific amount of future damages will not preclude recovery. *Sund v. Keating*, 43 Wn.2d 36, 259 P.2d 1113 (1953); *Wenzlar & Ward* v. *Sellen*, 53 Wn.2d 96, 330 P.2d 1068 (1958). Mathematical precision or exactness is not required. *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp.*, 66 Wn.2d 469, 403 P.2d 351 (1965).

As demonstrated through the reports and records of Mr. Hoff's providers, he has suffered substantial past pain and discomfort, due to a direct result of the November 1, 2017 collision, which has restricted his activities, affected his basic ability to function and mentally process, and dramatically impacted the quality of his life. He is depressed and has a very grim outlook on his future.

Now, at more than six months since the collision, Mr. Hoff has a chronic condition and must be appropriately compensated for the same. Accordingly, we evaluate Mr. Hoff's claim for damages as follows:

| | |
|---|---|
| **General Damages - Pain and Suffering, Loss of Ability to Enjoy Life, Disability:** | |
| Past General Damages: | $   525,000.00 |
| *.6 months since November 1, 2017 collision* | |
| Future General Damages: | $ 1,000,000.00 |
| *47.5 Years Life Expectancy at Age 35 (birthday 10/23/83)* | |
| **TOTAL GENERAL DAMAGES:** | **$ 1,525,000.00** |
| | |
| **Special Damages:** | |
| Past Medical Expenses: | $    82,374.92 |
| Past Wage Loss | $    31,200.00 |
| **TOTAL SPECIAL DAMAGES:** | **$   113,574.92** |
| | |
| **TOTAL GENERAL AND SPECIAL DAMAGES:** | **$ 1,638,574.92** |

Thus, based on Mr. Hoff's medical records, the trauma of the collision, severity of his injuries, and his resultant long-term physical pain and discomfort, our office evaluates his claim as having a value of at least **$ 1,638,574.92**. Significantly, we believe his general damages claim exceeds $1.5 million.

***Therefore, if your insured's policy limits are insufficient to satisfy this claim we are hereby demanding immediate disclosure of policy limits***. As we are sure you are aware, in Hamilton v.

{KIL1697010.DOCX;1/00999.089722/ }

Oscar Mateo
July 13, 2018
Page 12

---

*Farmers Insurance Co., 107 Wn.2d 721, 733 P.2d 213 (1987), the Washington Supreme Court held that an insurance carrier has strict liability for any excess verdict rendered against its insured when it refuses to settle in good faith for a reasonable demand of policy limits. With regard to any offers for your insureds' policy limits, <u>please be advised that we will also require a complete certified copy of any and all such insurance policies and declaration of coverages.</u> We have enclosed these documents for your insured to complete.*

## VI.  <u>EXHIBIT LIST</u>

| No. | Document Provider | Type of Document |
|-----|-------------------|------------------|
| A | Washington State Patrol | *Police Traffic Collision Report* |
| B | 911 Calls | *Transcripts* |
| C | Call for Service Detail Report | *Photographs* |
| 1 | South Snohomish Fire and Rescue | *Medical Records & Billings* |
| 2 | Swedish Hospital | *Medical Records & Billings* |
| 3 | CEP America | *Medical Billing Only* |
| 4 | Radia Inc., PS | *Medical Billing Only* |
| 5 | WWMG | *Medical Records & Billings* |
| 6 | Community Health Center of Snohomish County | *Medical Records & Billings* |
| 7 | Providence Homecare of Snohomish County | *Medical Records & Billings* |

If you have any questions or comments, or if you would like to discuss this matter more fully, please contact me.  Otherwise, I look forward to receiving a timely response from you. **This offer will remain open for a period of twenty (20) days from the date of this letter.**

Very truly yours,

**OGDEN MURPHY WALLACE, P.L.L.C.**

Kari I. Lester

KIL:csh
Enclosures
cc:      Client (w/o encl.)

{KIL1697010.DOCX;1/00999.089722/ }

## DECLARATION OF DANIEL WILCOX REGARDING INSURANCE COVERAGE(S)

I, Daniel Wilcox, hereby declare under penalty of perjury of the laws of the State of Washington that the following is true and correct:

That the following insurance coverages were in effect and applied to the automobile collision of November 1, 2017:

Name of Insured: _____

Insurance Company: _____

Policy Number: _____

Effective dates of Coverage: _____

Amounts of Coverage: _____


Name of Insured: _____

Insurance Company: _____

Policy Number: _____

Effective dates of Coverage: _____

Amounts of Coverage: _____

DATED this _____ day of _____, 2018, at _____, Washington.

_____
Daniel Wilcox
Address: _____
_____
Phone: _____
Social Security Number: _____

## ** IN THE ALTERNATIVE **

As of the date of the collision, November 1, 2017, there was no applicable liability insurance coverage that was in effect and that would apply to the referenced automobile collision.

DATED this _____ day of _____, 2018, at _____, Washington.

_____
Daniel Wilcox
Address: _____
_____
Phone: _____
Social Security Number: _____

{KIL1700062.DOCX;1/00999.089722/ }

INT_000139

# ASSET DECLARATION
## OF
## DANIEL WILCOX (AND "JANE DOE" WILCOX, IF APPLICABLE)

I/We, Daniel Wilcox (and "Jane Doe" Wilcox, if applicable) hereby, declare under penalty of perjury, under the laws of the State of Washington, that the following is true and correct:

I/We am/are over the age of eighteen, competent to provide this information, and make the same as my/our free and voluntary deed. This declaration of my/our assets and financial information is being provided as a condition precedent to potential settlement of all claims in the matter pertaining to, and stemming from the automobile accident which occurred with Eric Hoff on November 1, 2017 in Snohomish County, Washington.

Accordingly, I/we have set forth our financial information below and I/we affirm that the information contained herein is true and accurate and that I/we have listed all of my/our assets; further, I/we certify that there are no other potential insurance coverages that are or were maintained, from which I/we would be covered for the automobile accident which occurred on November 1, 2017, in Snohomish County, Washington, besides my/our _____ Insurance Policy No _____ which has liability limits of _____.

1.    Name(s):                    _____

                                  _____

      Social Security Number(s):  _____

                                  _____

INT_000140

Date(s) of Birth: _____

_____

2.    Address(es): _____

_____

3.    Are you (and/or your husband/wife, if applicable) presently employed or receiving Social Security?:

[  ] Yes          [  ] No

a.    If yes:

(1)    where do you (and your husband/wife, if applicable) work?  What benefits are received (name & address)?

_____

_____

_____

(2)    When did you/he/she start (month & year)?          _____/_____

b.    If no:

(1)    When did you/he/she last work (month & year)?          _____/_____

c.    What is your/his/her trade or occupation? _____

4.    Gross Monthly Income:

If you/he/she are paid on a weekly basis, multiply your/his/her weekly gross pay by 52 and divide by 12 to determine your/his/her monthly wages and salaries. If you/he/she are paid every two weeks, multiply your/his/her gross pay by 2.  If you/he/she are paid once a month, list that amount below.

|   |   | Daniel Wilcox | "Jane Doe" Wilcox |
|---|---|---|---|
| a. | Wages and Salaries | $_____ | $_____ |
| b. | Interest and Dividend Income | $_____ | $_____ |
| c. | Business Income | $_____ | $_____ |
| d. | Spousal Maintenance Received | $_____ | $_____ |
| e. | Overtime Pay | $_____ | $_____ |
| f. | Social Security Benefits | $_____ | $_____ |

INT_000141

|  |  | Daniel Wilcox | "Jane Doe" Wilcox |
|---|---|---|---|
| g. | Welfare/Unemployment Received | $_____ | $_____ |
| h. | Retirement | $_____ | $_____ |
| i. | Disability Benefits | $_____ | $_____ |
| j. | Other Income (rentals, bonuses, commissions, dividends, profit sharing, etc.) | $_____ | $_____ |

Do you/he/she own real estate?

    [  ] Yes      [  ] No

What Are The Addresses:

_____

_____

_____

Have you/he/she purchased or sold, in the past 36 months, any real estate?

    [  ] Yes      [  ] No

What are the address(es) and total purchase/sales price:

_____

_____

_____

Where are the proceeds from the sale of such property(ies)?

_____

_____

_____

| k. | TOTAL Gross Monthly Income: (add lines 4a through 4j) | $_____ | $_____ |
|---|---|---|---|

INT_000142

5.   Monthly Deductions From Gross Income:

|     |                                                      | Daniel Wilcox | "Jane Doe" Wilcox |
|-----|------------------------------------------------------|---------------|-------------------|
| a.  | Income Taxes                                         | $             | $                 |
| b.  | FICA/Self-Employment Taxes                           | $             | $                 |
| c.  | State Industrial                                     | $             | $                 |
| d.  | Mandatory Union Dues                                 | $             | $                 |
| e.  | Pension Plan Payments                                | $             | $                 |
| f.  | Spousal Maintenance Paid                             | $             | $                 |
| g.  | Normal Business Expenses                             | $             | $                 |
| h.  | TOTAL Deductions from Gross: (add lines 5a through 5g) | $           | $                 |

6.   Monthly Net Income:                   $_____        $_____
     (line 4k minus line 5h)

7.   I/We have or control the following additional resources:

|     |                                                      | Daniel Wilcox | "Jane Doe" Wilcox |
|-----|------------------------------------------------------|---------------|-------------------|
| a.  | Cash on Hand                                         | $             | $                 |
| b.  | Bank Accounts, Time Certificates, Travelers Checks, etc. (list account numbers and banks) | $ | $ |
|     |                                                      | $             | $                 |
|     |                                                      | $             | $                 |
|     |                                                      | $             | $                 |
|     |                                                      | $             | $                 |
|     |                                                      | $             | $                 |

c.   Life Insurance Policy (list owner, insured, face amount, policy number, and present cash surrender value)

| Owner | Insured | Face Amount | Policy No. | Value |
|-------|---------|-------------|------------|-------|
|       |         |             |            |       |
|       |         |             |            |       |
|       |         |             |            |       |
|       |         |             |            |       |

INT_000143

d.    Automobiles (year & make)

| | | $_____ |
| | | $_____ |
| | | $_____ |
| | | $_____ |

e.    Other Assets

| | $_____ |
| | $_____ |
| | $_____ |
| | $_____ |

f.    For each piece of real estate owned, list the net equity you maintain and for the mortgagor—attach a current copy of a mortgage statement that shows any balances owed:

| | $_____ |
| | $_____ |
| | $_____ |
| | $_____ |

g.    Financial Narrative:

I/we certify that the information contained herein is accurate and that it is not misleading or fraudulent; Christa Rossi, Todd Rossi, Wyatt Rossi, and/or Annalisa Rossi may rely upon this information in determining our financial position.

DATED this _____ day of _____, 2018, at _____, Washington.


_____
Daniel Wilcox

DATED this _____ day of _____, 2018, at _____, Washington.

_____
"Jane Doe" Wilcox (if applicable)

INT_000145