Hon. Barbara Rothstein
United States District Court Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON—SEATTLE

INTEGON PREFERRED INSURANCE
COMPANY, a foreign corporation,

               Plaintiff,

    vs.

DANIEL WILCOX and ELIZABETH
WILCOX, Washington residents; and ERIC
HOFF, a Washington resident,

               Defendants.

NO: 2:21-CV-01501-BJR

THIRD-PARTY DEFENDANT SMITH
FREED EBERHARD, P.C.'S MOTION
FOR SUMMARY JUDGMENT

ORAL ARGUMENT REQUESTED

DANIEL WILCOX and ELIZABETH
WILCOX, Washington residents,

               Counterclaimant,

    vs.

INTEGON PREFERRED INSURANCE
COMPANY, a foreign corporation,

               Counter-defendant.

DANIEL WILCOX and ELIZABETH
WILCOX, Washington residents,

               Third-Party Plaintiffs,

    vs.

THIRD-PARTY DEFENDANTS SMITH FREED
EBERHARD, P.C.'S MOTION FOR SUMMARY
JUDGMENT - 0

DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.
701 5TH AVE, SUITE 5500
SEATTLE, WA 98104
(206) 622-2295

ROBERT W. WARREN, ATTORNEY AT
LAW, PLLC, a Washington professional
limited liability company dba WRIXTON
LAW OFFICE, and SMITH FREED
EBERHARD, P.C., a foreign professional
services corporation,

Third-Party Defendants.

## I.    INTRODUCTION AND RELIEF REQUESTED

Third-Party Defendant Smith Freed Eberhard, P.C. ("SFE" or "Smith Freed") moves for summary judgment dismissal of Third-Party Plaintiff's Wilcoxes' claims against it for legal malpractice and breach of fiduciary duty. *SFE requests that its motion be heard together with the Wilcoxes' cross-motion, Dkt. 79, for litigant and judicial economy.* [1]

More than five years ago, Mr. Wilcox drove his vehicle across a crosswalk, striking and injuring Defendant Hoff (a pedestrian). Hoff sued Wilcox and his wife in state court for personal injury. The Wilcoxes were properly served but failed to appear. On October 16, 2020, Hoff obtained a default judgment against the Wilcoxes for $1.6 Million. The Wilcoxes learned of the default judgment in November 2020, but took no action for another three months. In February 2021, Smith Freed was retained to represent the Wilcoxes and specifically to try to vacate the default judgment. At that point, it had been a year since Hoff served his complaint and four months since entry of default judgment, without any Notice of Appearance ("NOA") by the Wilcoxes.

Over the next seven months, Smith Freed's attorneys, Cliff Wilson and Joyce Fung, diligently pursued numerous arguments and evidence to support the motion to vacate (after quickly confirming that there was no formal appearance prior to SFE's own). Among these arguments were that: the Wilcoxes' prior attorney (Third-Party Defendant Warren) had somehow mis-filed

---

[1] The Wilcoxes filed their motion for partial summary judgment on 1/12/23, Dkt. No. 79. Briefing on the Wilcoxes' motion closes with their reply, due February 16, 2023. Briefing on Smith Freed's cross-motion closes with its reply, due March 24, 2023.

THIRD-PARTY DEFENDANTS SMITH FREED
EBERHARD, P.C.'S MOTION FOR SUMMARY
JUDGMENT - 1

DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.
701 5TH AVE, SUITE 5500
SEATTLE, WA 98104
(206) 622-2295

the NOA that he insisted existed; Warren's alleged communications with Hoff's counsel constituted an informal NOA; Integon's claims correspondence to Hoff's counsel constituted an informal NOA; the Wilcoxes reasonably relied on Warren and/or Integon to defend them in suit; and potential argument that the amount of general damages awarded were excessive. Despite considerable efforts, Smith Freed was unable to obtain admissible evidence for these arguments except for the Wilcoxes' own testimony.

Smith Freed timely filed the motion to vacate in September 2021, seven months after it was retained and eleven months after entry of the default judgment (ahead of the 12-month requirement of CR 60(b)). After oral argument, the trial court denied the motion, finding among other things that the Wilcoxes had failed to respond to Hoff's suit for a full year (*before* Smith Freed was retained). Smith Freed discussed options with the Wilcoxes, who instructed Smith Freed not to appeal the denial order, because they wished to pursue a covenant judgment with Hoff. The Wilcoxes then retained new counsel through whom they negotiated an agreement with Hoff: their case-opponent would temporarily halt collection on the default judgment, in exchange for the Wilcoxes assigning him their claims (of insurance bad faith and attorney malpractice, *i.e.*, the claims made by the Wilcoxes against all other parties in this case) and splitting the proceeds from those claims.

Integon filed the current declaratory judgment action against Hoff and the Wilcoxes (for interpretation of Wilcox's auto insurance policy),[2] and the Wilcoxes counterclaimed for insurer bad faith, etc. The Wilcoxes also filed a third-party claim against Warren and Smith Freed for legal malpractice (later adding a claim against both for breach of fiduciary duty). They claim SFE took too long to prepare the motion to vacate, improperly advised them they would need an appeal bond, and made inadequate efforts to settle. Only the Wilcoxes' claims against Smith Freed are at issue in the current motion and cross-motion.[3]

---

[2] Integon later added claims against Warren for promissory estoppel and tortious interference. Dkt. 42, ¶¶140-160.

[3] The Wilcoxes' motion initially sought relief as to both SFE and Warren, but it was withdrawn as to Warren. Dkt. 82.

THIRD-PARTY DEFENDANTS SMITH FREED
EBERHARD, P.C.'S MOTION FOR SUMMARY
JUDGMENT - 2

DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.
701 5TH AVE, SUITE 5500
SEATTLE, WA 98104
(206) 622-2295

The parties and lay witnesses have been deposed, with expensive expert discovery about to begin as well as dispositive motion practice on the coverage and bad faith claims. The undisputed material facts show that the Wilcoxes cannot prove any of the elements of their claims against Smith Freed (*i.e.*, breach, causation or damages). Smith Freed therefore requests that these claims be dismissed with prejudice so that it may exit the case.

## II.    DETAILED FACTUAL BACKGROUND[4]

*The accident and Integon's efforts to settle the claim*. On November 1, 2017, defendant Dan Wilcox drove into pedestrian Hoff. D.Wilcox Dep., Ex. 19, ¶¶3-4.[5] Mr. Wilcox admits liability for the accident. *Id.*, ¶4. Hoff's counsel wrote plaintiff Integon (Mr. Wilcox's auto insurer) alleging a claim worth $1.6M. Amd. Cmplt., ¶¶27-28 & Ex. B. Integon forwarded the letter to Mr. Wilcox in July 2018. *Id.*, ¶30; *see also*, Wilcox 1st Ans., ¶30 (admitting). That same month, Integon offered Hoff its $25,000 policy limits and sent him the Wilcoxes' signed asset declaration. Amd. Cmplt, ¶¶41-45 & Ex. E; Hoff Ans., ¶¶41, 45 (admitting Integon sent letter); Wilcox 1st Ans. ¶¶40-41(same). Hoff never accepted Integon's policy limits offer, instead explicitly rejecting it. Amd. Cmplt, ¶¶85, 87 & Ex. M; Hoff Ans. ¶¶84-85; Wilcox 1st Ans. ¶85 (admitting rejection letter).

From early 2018 through mid-2020, Integon sent dozens of emails and letters to Hoff requesting settlement at policy limits. Amd. Cmplt, ¶¶21, 48, 75-76. Hoff did not respond. Smalley Dep., 66:19-23, 67:5-16, 67:23-68:9. The Integon adjuster never spoke to Hoff's counsel, and the written communications never mentioned "litigation" or a "lawsuit." *Id.*, 109:14-17, 86:4-14.

*Hoff's suit against the Wilcoxes*. Hoff timely filed a personal injury complaint against the Wilcoxes. Wilson Dec., Ex. 21 (Complaint).  The Wilcoxes admit they were properly served on February 1, 2020. Wilcox Ans., ¶27; D.Wilcox Dep., Ex. 19, ¶11. The Wilcoxes allege that they left a voicemail for the Integon adjuster two days later notifying it that they had been served. D.Wilcox Dep., Ex. 19, ¶9. But Integon has no record of the call, and the Wilcoxes now admit that

---

[4] The first eight paragraphs of §II, 3:7 to 5:5, mirror those in SFE's response brief, Dkt. No. 83, at 3:7: to 5:8..

[5] All abbreviations are defined in the "Authorities" section, beginning on page 9.

THIRD-PARTY DEFENDANTS SMITH FREED
EBERHARD, P.C.'S MOTION FOR SUMMARY
JUDGMENT - 3

**DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.**
701 5TH AVE, SUITE 5500
SEATTLE, WA  98104
(206) 622-2295

they don't have any record of it, either. Trotter-Greer dep., 41:21-44:11; E.Wilson Dep., 31:20-32:14.  Mrs. Wilcox made her own call to Integon on February 3, 2020, including the statement "two years has gone by and we haven't heard anything about this lawsuit," but she forgot about the call until at least April 2022. E.Wilcox Dep., 68:15-72:2 and Ex. 8 (transcript of recorded call); Pierce Dec. at ¶10 (recording was produced 4/22/22, transcript was produced 7/21/22, both in discovery in this case).

*Warren's representation of the Wilcoxes*. On February 5, 2020, the Wilcoxes reviewed Hoff's Complaint with defendant Warren, an attorney they chose personally. D.Wilcox Dep., Ex. 19, ¶¶10-14; E.Wilcox Dep., Ex. 10 ¶¶11-15; Warren dep., 33:13-37:17, 38:15-39:33. The Wilcoxes assert that Warren promised to file an NOA on their behalf. D.Wilcox Dep., Ex. 19, ¶14; E.Wilcox Dep., Ex. 10 ¶15. Warren says he only agreed to "watch over the insurance company's shoulder and make sure [Wilcox] was defended." Warren dep., 42:13-43:10, 41:6-8. It is undisputed that Warren never filed a formal Notice of Appearance in *Hoff*. *Id*., 87:10-12.

The Wilcoxes took no defense action after that February 5 meeting until April 2020, when Mrs. Wilcox called Warren for a status check. He told her there were no updates and that "no news is good news." Warren dep., 48:19-25; E.Wilcox Dep., 92:22-94:8 (also attesting that Warren told her he had filed the Notice of Appearance and had talked to plaintiff's counsel—he had done neither).

*Default judgment*. Meanwhile, because the Wilcoxes had not appeared or answered, Hoff obtained a default (Wilson Dec. Ex. 25) and then on October 16, 2020, a default judgment against the Wilcoxes in the amount of $1,617,796.52. *Id*., Ex. 30.

*Wilcoxes' awareness of the default judgment*. The Wilcoxes learned of Hoff's default judgment in November 2020. D.Wilcox Dep., Ex. 19, ¶16; E.Wilcox Dep., Ex. 10 ¶17. They called Warren, who said he'd filed a NOA but couldn't find it.[6] D.Wilcox Dep., Ex. 19, ¶¶17-18;

---

[6] The Wilcoxes pleaded these same allegations to this Court a year ago. Wilcoxes' 2/11/22 Third-Party Complaint, Dkt. 22, ¶¶37-40. They did not amend the allegations until recently, exactly a year after their original testimony. *See*

E.Wilcox Dep., Ex. 10 ¶¶18-19. The Wilcoxes did nothing further until SFE appeared three months later.

**All of the above-described events occurred *prior* to the involvement of Smith Freed.** In February 22, 2021, Integon retained SFE to defend the Wilcoxes in the *Hoff* litigation, and specifically to try to vacate the default judgment. Smalley Dep, 89:5-9.  SFE filed its appearance two days later. Wilson Dec., Ex. 31. SFE filed the motion to vacate on September 29, 2021.

*Smith Freed's motion preparation*. As expert Robert Christie summarizes in his declaration accompanying this brief, in the seven months before motion filing the SFE lawyers conducted an extensive, diligent investigation. Christie Dec., ¶15. *See also, id.*, ¶17. Smith Freed investigated at least eleven potential arguments for the Motion to Vacate, eventually rejecting all but those of (1) informal appearance by Integon via its claims communications to Hoff's counsel, (2) Wilcoxes' reliance on Integon and Warren to defend them in Hoff's suit, and (3) excessive general damages. Christie Dec., ¶16; Wilson Dec., ¶11; Fung Dec., ¶7.

*The Wilcoxes' declarations supporting their motion to vacate*. Because the Wilcoxes and SFE could not obtain their desired, outside evidence (*e.g.*, a cell phone record of Dan Wilcox's 2/3/21 voicemail to Integon advising that he'd been served,[7] or documents or testimony from Warren showing that he tried to file an NOA or at least communicated with Hoff's counsel), the motion relied on the Wilcoxes' own testimony regarding, *e,g,*, their voicemail to Integon stating that they'd been served, and their communications with Warren in which he said he would file, or had filed, a NOA. *See* D.Wilcox Dep., Ex. 19, ¶¶9, 14, 16-17; E.Wilcox Dep., Ex. 10, ¶¶15-19. SFE was not party to the described events and was unable to determine if the Wilcoxes described them accurately.  But the Wilcoxes had ample time to review their memories and the written summaries. The SFE lawyers talked with each of the Wilcoxes to prepare their declarations,

---

Wilcox 9/29/22 Amended Answer and Third-Party Complaint, Dkt. 73, ¶41 (now stating they were first notified of the default judgment in February 2021).

[7] Integon's phone recordings and transcripts were not produced until discovery in this federal case. Pierce Dec., ¶ 10.

THIRD-PARTY DEFENDANTS SMITH FREED
EBERHARD, P.C.'S MOTION FOR SUMMARY
JUDGMENT - 5

**DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.**
701 5ᵀᴴ Aᴠᴇ, Sᴜɪᴛᴇ 5500
Sᴇᴀᴛᴛʟᴇ, WA  98104
(206) 622-2295

E.Wilcox Dep., 201:15-202:23.  Joyce Fung sent them each a draft declaration, which the Wilcoxes reviewed for a week before each talking with SFE about them. Fung Dec., ¶ 4, Ex. 26 & 27. Mrs. Wilcox made multiple corrections, including to her legal name and who placed a phone call. Fung Dec., ¶ 4, Ex. 28. Neither Wilcox changed the paragraph in each declaration stating that they learned of the default judgment in November 2020, when Integon called to tell them. D.Wilcox Dep., Ex. 19,, ¶16; E.Wilcox Dep., Ex. 10, ¶17.  The Wilcoxes signed their declarations on September 29, 2021. SFE filed the motion to vacate the same day. Fung Dec., ¶8 (top of page 9); Pierce Dec., Ex. 2.

  ***Denial of motion to vacate***. The trial court denied the motion on 10/11/21, finding that the Wilcoxes were properly served on 2/1/20 yet made no appearance for over a year:

> [P]ersonal service of process was made upon Defendants Daniel and "Jane Doe" Wilcox on February 1, 2020…

> [N]either Defendants, nor any attorney on behalf of Defendants,…ever indicated any intent to defend Defendants this case prior to the entry of the Default Order [on March 11, 2020]…

> Defendants failed to act with due diligence in appearing in this litigation before … the Default Order was entered.

> …[A]n Order of Default was properly entered on March 11, 2020…

> Defendants failed to act with due diligence in appearing in this litigation … after the Default Order was entered.

> …[M]ore than seven months elapsed between the Default Order being entered against Defendants on March 11, 2020 and a Default Judgment being entered against Defendants on October 16, 2020….

> Defendants Daniel and Elizabeth (i.e., "Jane Doe") Wilcox admitted in their Declarations that they became aware of the Default Judgment in November of 2020…

> Smith Freed Eberhard, first filed a Notice of Appearance in the present case on February 24, 2021.

> … Defendants' failure to timely appear and answer the Complaint in this case was not occasioned by mistake, inadvertence, surprise, or excusable neglect.

THIRD-PARTY DEFENDANTS SMITH FREED
EBERHARD, P.C.'S MOTION FOR SUMMARY
JUDGMENT - 6

**DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.**
701 5ᵀᴴ AVE, SUITE 5500
SEATTLE, WA  98104
(206) 622-2295

Fung Dec., Ex. 48 (Order Denying Motion to Vacate), ¶¶ 2, 4, 7, 3, 7, 5, 7, 10, 12, 16; Wilson Dec. Ex. 31-A, and Ex. 31 (SFE's NOA filed 2/24/21). It found that the Wilcoxes knew of the Default Judgment by November 2020, per their own sworn testimony supporting the motion, yet still failed to take action. (*Id.*, ¶10.) The Court found that both the Wilcoxes' year-long delay before SFE's appearance, and then the elapse of seven more months until the Wilcoxes moved to vacate, demonstrated the Wilcoxes' lack of due diligence. (*Id.*, ¶¶13, 7, 14.) These findings were explicitly regarding the *Wilcoxes* ("Defendants"), not Warren or Smith Freed. *See, Luckett v. Boeing Co.*, 98 Wash. App. 307, 312, 989 P.2d 1144, 1147 (1999) (in determining what constitutes a "reasonable time" to move to vacate, the critical period is between when *the moving party* became aware of the judgment and when it filed the motion to vacate")(emphasis added)..

   ***Smith Freed pursues possible settlement***. Even before the motion to vacate was decided, Smith Freed's lawyers had discussed possible settlement options with Hoff's counsel Lester. *See* Wilson Dec. at ¶10 and Exs. 16 & 16-A (3/2/21 phone call); Pierce Dec., Ex. 5-B (Fact Stip.), ¶7 and Ex. 5-A (Lester's 2/9/23 agreement to the stipulated facts of that call). The discussions continued on 10/6/2021 after hearing on the motion to vacate, focusing on a covenant judgment arrangement, *i.e.*, for Hoff to forbear ever collecting on the default judgment in exchange for the Wilcoxes assigning him their claims of insurance bad faith and attorney malpractice (against Integon and Warren, respectively). *Id.*, Ex. 21 at 76:13-16, 78:19-79:3. *See also*, *id.*, at Ex. 5-B (Fact Stip.), ¶¶ 12, 15, 18, 20, 24 and Ex. 5-A (Lester's 2/9/23 agreement to the stipulated facts of her additional communications with SFE attorney Wilson).

   Two days after the court denied the motion to vacate, Hoff's counsel wrote Wilson suggesting "entering into a Covenant Not to Execute the Judgment against the Wilcoxes on the condition that they assign Mr. Hoff all their assignable claims against their insurer." Wilson Dec., Ex. 38, at p.1. The Wilcoxes were thrilled with the proposal, calling it "perfect" and a "pie in the sky"; "we'll sign over our rights and then walk away from [litigation]" and "we can finally stop dealing with all of the insanity." E.Wilcox Dep., 126:18-24, 208:17-209:11.

THIRD-PARTY DEFENDANTS SMITH FREED
EBERHARD, P.C.'S MOTION FOR SUMMARY
JUDGMENT - 7

**DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.**
701 5TH AVE, SUITE 5500
SEATTLE, WA 98104
(206) 622-2295

The Wilcoxes were still awaiting a written assignment proposal from Hoff as of 10/21/21 (the deadline for the Wilcoxes to move to reconsider the denial of their motion to vacate). Smith Freed opted not to so move because there was no new evidence to change the outcome, such as testimony or documents from Warren. Wilson dep., 66:9-23.

*Wilcoxes instruct Smith Freed not to appeal.* In advance of the 11/12/21 appeal deadline, the SFE lawyers communicated multiple times with the Wilcoxes, including a lengthy call on 11/9/21. Wilson Dec., Exs. 20 and 35). The Wilcoxes each instructed Wilson not to appeal, primarily because they preferred the "pie in the sky" assignment option to more litigation.[8]

> 3  **Q [W]hat**
> 4  **you're saying is you had options to file for**
> 5  **bankruptcy, pursue an assignment or appeal, and you**
> 6  **decided to not appeal and look at the other two**
> 7  **options? Is that what you're saying?**
>
> 9  A Right, correct.

D.Wilcox Dep., 115:14-116:9 (objection omitted); E.Wilcox Dep., 126:10-127:19. The Wilcoxes both admit that the issue of a possible appellate bond requirement did <u>not</u> factor into their decision not to appeal:[9] *Id.*, at 222:7-223:23; D.Wilcox Dep., 115:3-9 ("it was in my mind a moot point, so I probably just tuned it out").

*Current litigation*. The Wilcoxes have pleaded legal malpractice and breach of fiduciary duty claims against SFE and Warren.  Wilcox Am. Ans. and 3PC, Dkt. No. 73, §XVII.  As to SFE, the bases for those claims appears to be "[1] failing to timely move to set aside the Default Judgment entered against the Wilcoxes in the Hoff Lawsuit, [2] providing inaccurate legal advice regarding an appeal and the posting of an appeal bond, and/or [3] failing to exhaust opportunities to seek relief from that judgment." *Id.*, ¶90.

---

[8] Even if the Wilcoxes were successful on appeal in vacating the default judgment, it would not end their litigation with Hoff. Instead, because Mr. Wilcox admitted liability for the accident, the case would go to trial (or settle) on damages only. Wilson Dep., 30:23-31:15.

[9] As Wilson testified, no supersedeas bond was necessary, although he himself was initially unclear on the issue. Wilson Dep., 71:24-73:17 and Ex. 7.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

### III.    AUTHORITIES

Declaration of Joyce Fung ("Fung Dec."), with exhibits including SFE's invoices to Integon for work on *Hoff v. Wilcox* (Exs. 37-40), and filings in the motion to vacate (Exs. 41-48). Ms. Fung's, Mrs. Wilcox's and Mr. Wilcox's 9/29/2021 declarations in the motion to vacate are exhibits 42, 43 and 44, respectively.

Declaration of Cliff Wilson ("Wilson Dec."), with exhibits including the hearing transcript for the motion to vacate (Ex. 3), SFE's invoices to Integon for work on *Hoff v. Wilcox* (Exs. 32-35); and state-court filings in the motion for default (Exs. 23-25) and motion for default judgment (Exs.26-30); and other state-court filings (Exs. 21, 22 and 31).

Declaration of Suzanne Pierce ("Pierce Dec."), with exhibits including excerpts from the depositions of Meghan Smalley (Ex.14), Tia Trotta-Greer (Ex. 15), the Wilcoxes (Exs. 17 & 18), Robert Warren (Ex. 16), Cliff Wilson (Ex. 19), Joyce Fung (Ex. 11), Oscar Mateo (Ex.13) and Aaron Garcia (Ex. 12); unpublished state-court cases (Exs. 1-A – 1-F); and a Stipulation Re: Undisputed Facts ("Fact Stip.") as agreed by Hoff and Wilcox counsel (Exs. 5-B, 5-C & 5-D).

Declaration of Robert Christie ("Christie Dec.")(Smith Freed's standard-of-care expert).

Cited filings in this Court include Integon's Complaint filed 11/5/21 ("Compl.", Dkt. 1); Wilcoxes' initial Answer, Counterclaims and Third-Party Complaint filed 2/11/22 ("Wilcox 1st Ans.," Dkt. 22); Integon's Amended Complaint filed 5/9/22 ("Amd. Compl.", Dkt. 42); Wilcoxes' Answer to Amended Complaint filed 5/16/22 ("Wilcox 2nd Ans.," Dkt. 43); Hoff's Answer to Amended Complaint ("Hoff Ans.", Dkt. 44); and Wilcoxes' Amended Answer, Counterclaims and Third-Party Complaint filed 09/29/22 ("Wilcox 3rd Ans.," Dkt. 73).

### IV.    STATEMENT OF ISSUES

1.    Can the Court decide the elements of the Wilcoxes' claims as a matter of law?

2.    What standard of care governs Smith Freed's representation of the Wilcoxes?

3.    Did Smith Freed breach its duty of care?

4.    Was the motion to vacate viable if filed earlier?

THIRD-PARTY DEFENDANTS SMITH FREED
EBERHARD, P.C.'S MOTION FOR SUMMARY
JUDGMENT - 9

**DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.**
701 5TH AVE, SUITE 5500
SEATTLE, WA 98104
(206) 622-2295

5.    Have the Wilcoxes shown that a trial judgment would be less than the default?

6.    Do the Wilcoxes have any evidence of recoverable damages?

## V.    ARGUMENT AND AUTHORITY

### A.  Elements of the Wilcoxes' Claims

There are four elements to a legal malpractice claim: 1) the existence of an attorney-client relationship which gives rise to a duty of care on the part of the attorney to the client; 2) breach of that duty; 3) damage to the client; and 4) proximate causation between the breach and the damages. *Spencer v. Badgley Mullins Turner, PLLC*, 6 Wn. App. 2d 762, 777, 432 P.3d 821 (2018). The elements of the Wilcoxes' other claim against Smith Freed, breach of fiduciary duty, mirror those of legal malpractice. *Bronzich v. Persels & Assocs., LLC*, No. CV-10-0364-EFS, 2011 WL 2119372, at *9-10 (E.D. Wash. May 27, 2011), citing *Hizey v. Carpenter*, 119 Wn. 2d 251, 259–60, 830 P.2d 646 (1992).

Smith Freed does not dispute the first element, of attorney-client relationship. This motion explains that the other three elements all fail: breach (for each of the Wilcoxes' allegations of malpractice), causation and damages.

### B.  Summary Judgment in the Legal Malpractice Context

The trial court grants summary judgment to a party when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). "'A material fact is one that affects the outcome of the litigation.' " *Elcon Const., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 164, 273 P.3d 965 (2012) (citing other authority). "A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation." *Ranger Ins. Co. v. Pierce County*, 164 Wash.2d 545, 552, 192 P.3d 886 (2008). If reasonable minds can reach only one conclusion on an issue of fact, that issue may be determined on summary judgment. *M.A. Mortenson Co. v. Timberline Software Corp*., 140 Wash.2d 568, 579, 998 P.2d 305 (2000). *Every* element of a legal malpractice claim may be decided as a matter of law, with summary judgment appropriate if the plaintiff fails to prove any *one* of the elements.

DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.
701 5TH AVE, SUITE 5500
SEATTLE, WA 98104
(206) 622-2295

**C.  The Wilcoxes' Expert Recites an Incorrect Standard of Care**

***Standard.*** The existence of a duty and the scope of that duty are questions of law. *MatconUSA LP v. Houston Cas. Co.*, No. C19-1952JLR, 2022 WL 2755545, at *9 (W.D. Wash. July 14, 2022), *on reconsideration in part*, No. C19-1952JLR, 2022 WL 3334691 (W.D. Wash. Aug. 12, 2022); *Linth v. Gay*, 190 Wn. App. 331, 337, 360 P.3d 844, 847 (2015); *Johnson v. State*, 77 Wn.App. 934, 937, 894 P.2d 1366 (1995). An attorney has a duty to exercise the degree of skill, care, and learning expected of a reasonably prudent attorney in the state of Washington acting in the same or similar circumstances at the time such services are provided. *Thurston v. Godsil,* 117 Wash. App. 1070, 2003 WL 21690529 (2003)(unpublished), at *4. Violation of the Rules of Professional Conduct has no bearing on whether an attorney has conducted legal malpractice. *Bronzich v. Persels & Assocs., LLC*, No. CV-10-0364-EFS, 2011 WL 2119372, at *9-10 (E.D. Wash. May 27, 2011).

***Experts' opposing opinions***. Specific to the issue of whether SFE breached the standard of care by taking seven months to prepare the motion to vacate, expert Robert Christie has explained:

> Analysis of whether a lawyer acted with "reasonable diligence and promptness" depends on the facts and circumstances of the particular case. *See* CR 60(b) (motions for relief from judgment "shall be made within a reasonable time…"); *Ha v. Signal Elec., Inc.*, 182 Wn. App. 436, 454, 332 P.3d 991 (2014)(in motion to vacate default judgment, "[w]hat constitutes a 'reasonable time' depends on the facts and circumstances of each case"). Attorneys are entitled to use their professional judgment in deciding the timing for taking a certain action (such as filing a motion), weighing the benefits that may come from taking time to gather additional evidence to support their argument against the potential benefit from filing the motion earlier… The record demonstrates that the SFE attorneys worked diligently and methodically to investigate possible arguments and to gather the evidence they presented that the Wilcoxes should be legally excused for not having filed a formal appearance and defended against the suit filed by Mr. Hoff.

Christie Dec., ¶18. In contrast, the Wilcoxes' expert essentially opined that a motion to vacate should be limited to a report of the (non)existence of a Notice of Appearance, and that it is

THIRD-PARTY DEFENDANTS SMITH FREED EBERHARD, P.C.'S MOTION FOR SUMMARY JUDGMENT - 11

DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.
701 5ᵀᴴ AVE, SUITE 5500
SEATTLE, WA 98104
(206) 622-2295

malpractice to take time to investigate other arguments and gather supporting evidence.[10] But Strait "fails to consider the attorney judgment that the SFE brought to bear on assessing how to maximize the likelihood of succeeding on the motion to set aside the default" and "[a]s a non-practicing lawyer… fails to consider the realities of practice that a reasonable practicing lawyer in SFE's position would have to encounter and navigate." *Id*., ¶22.

**D.  Smith Freed Did Not Breach Its Duty, As a Matter of Law**

*Standard.* Whether an attorney's error in judgment constitutes a breach of duty can be decided as a matter of law, if reasonable minds could reach only one conclusion. *Clark Cnty. Fire Dist. No. 5 v. Bullivant Houser Bailey P.C.*, 180 Wash. App. 689, 705, 324 P.3d 743, 752 (2014). To breach the duty of care, an attorney "must fail to exercise 'the degree of care, skill, diligence, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent lawyer in the practice of law' in Washington." *Geer v. Tonnon,* 137 Wn. App. 838, 850-51, 155 P.3d 163 (2007). The ultimate result of a case generally is irrelevant in evaluating whether an attorney's conduct breached the duty of care, because an attorney is not responsible for a "bad result" unless the result was proximately caused by that breach. *Id*., at 701. Rather, Washington uses an "attorney judgment rule" to determining if an attorney's alleged error breached the duty of care:

> Under this rule, an attorney cannot be liable for making an allegedly erroneous decision involving honest, good faith judgment if (1) that decision was within the range of reasonable alternatives from the perspective of a reasonable, careful and prudent attorney in Washington; and (2) in making that judgment decision the attorney exercised reasonable care…. [A]n attorney cannot be held liable for malpractice if there is a difference of opinion among reasonably skilled attorneys regarding the attorney's course of action…. Legal negligence commentators also support this rule: "The exercise of judgment often contemplates having to choose among other reasonable alternatives. Thus, picking the wrong alternative is not negligence."

\* \* \* \*

---

[10] Professor Strait states, "Mr. Wilson knew within weeks that Mr. Warren's notice of appearance did not exist in the Court file and could have proceeded to file "a declaration and a motion within days or weeks" to report that information to the court. As such, the delay of seven months …fell below the standard of care." Dkt. 81, ¶24-25.

THIRD-PARTY DEFENDANTS SMITH FREED
EBERHARD, P.C.'S MOTION FOR SUMMARY
JUDGMENT - 12

DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.
701 5TH AVE, SUITE 5500
SEATTLE, WA 98104
(206) 622-2295

> [A legal-malpractice] plaintiff can avoid summary judgment on breach of duty for an error in judgment in one of two ways. First, the plaintiff can show that the attorney's exercise of judgment was not within the range of reasonable choices from the perspective of a reasonable, careful and prudent attorney in Washington. Merely providing an expert opinion that the judgment decision was erroneous or that the attorney should have made a different decision is not enough; the expert must do more than simply disagree with the attorney's decision. The plaintiff must submit evidence that *no* reasonable Washington attorney would have made the same decision as the defendant attorney. If there is a genuine issue as to whether the attorney's decision was within the range of reasonable choices, the jury must be allowed to decide the issue.
>
> Second, the plaintiff can show that the attorney breached the standard of care in making the judgment decision…. [T]he attorney's judgment must be an informed one. In other words, even if the decision itself was within the reasonable range of choices, an attorney can be liable if he or she was negligent based on how that decision was made. Again, if sufficient evidence of such negligence exists, the jury must decide the issue.

*Clark Cnty. Fire Dist. No. 5*, 180 Wash. App. at 704, 706 (internal citations omitted; emphasis added). The first method is dependent on the definitiveness of the legal context: an attorney is not negligent when he or she relies on a decision of the highest court of the state <u>or</u> when he or she exercises judgment on an uncertain and unsettled legal proposition. *Halvorsen v. Ferguson*, 46 Wash. App. 708, 717–18, 735 P.2d 675, 681–82 (1986). Under the second method, an attorney is immune from liability so long as the error was preceded by "reasonable research undertaken to ascertain relevant legal principles and to make an informed judgment." *Id.*, 46 Wn. App. at 718. Finally, note that expert testimony is required to prove breach, *unless* the breach could fairly be considered within the common knowledge of laypersons. *Walker v. Bangs*, 92 Wn.2d 854, 857-58, 601 P.2d 1279 (1979); *Geer v. Tonnon*, 137 Wash. App. 838, 851, 155 P.3d 163 (2007).

 ***Expert analysis***. Expert Christie has opined that the SFE attorneys, specifically Mr. Wilson and Ms. Fung, fully complied with the standard of care for Washington attorneys in their representation of the Wilcoxes. Christie Dec., ¶13. Regarding the Wilcoxes' first pleaded theory of breach—that SFE "fail[ed] to timely move to set aside the Default Judgment," Wilcoxes' Am. Ans. and 3PC, ¶90—Mr. Christie details how the SFE lawyers diligently and reasonably examined

THIRD-PARTY DEFENDANTS SMITH FREED
EBERHARD, P.C.'S MOTION FOR SUMMARY
JUDGMENT - 13

DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.
701 5ᵀᴴ AVE, SUITE 5500
SEATTLE, WA 98104
(206) 622-2295

all viable arguments for the Motion to Vacate and pursued all available and potentially available evidence to support those arguments. *Id*. at ¶¶15-17, 19-21, 33. *See also*, Fung Dec., ¶ 7; Wilson Dec., ¶ 11.

In contrast, Professor Strait's declaration mentions only Smith Freed's early, short investigation verifying that no formal NOA had been filed. Oddly, Strait did not talk to or review the depositions of the Wilcoxes, the very clients suing Smith Freed. *See* Strait Dec., Dkt. 81, ¶8. The Wilcoxes described how they relied on Warren's assurances that he would file, or had filed, a NOA on their behalf. *E.g.*, E.Wilcox Dep., 90:15-18 ("He told us that he was going to make these phone calls and do these letters and all the things….so, obviously … we expected it"). Strait agrees that the Wilcoxes relied on Warren to their detriment:

> [Warren] affirmatively misled the [Wilcoxes] into believing he was taking on certain tasks and responsibilities, including but not limited to contacting Integon and Hoff's attorneys and filing a notice of appearance…. In so doing, Mr. Warren caused the Wilcoxes to reasonably rely on him to look out for their best interests….Mr. Warren's acts and omissions substantially compromised the Wilcoxes' ability to defend themselves in the *Hoff* matter.

Strait Dec., ¶¶12-13, 16. Essentially, Strait has himself argued why the Wilcoxes, by mistake, failed to appear in Hoff's suit. Strait has investigated reasons for the Wilcoxes's non-appearance and found one in Warren's misrepresentations. How can he conclude that it was unreasonable for Smith Freed to make the same investigation, literally two pages after he has done so himself? The Wilcoxes have not only failed to provide the requisite expert opinion, *i.e.*, that *no* reasonable Washington attorney would have investigated reasons for their non-appearance—such as reliance on Warren—but also their expert Strait has proven himself one of the reasonable Washington attorneys who *would* so investigate.

Regarding the second pleaded breach of "providing inaccurate legal advice regarding an appeal and the posting of an appeal bond," the Wilcoxes apparently are referencing Cliff Wilson's initial (erroneous) advice to them that appeal would require a supersedeas bond. Neither of the Wilcoxes recall that Mr. Wilson corrected himself shortly afterwards. E.Wilcox Dep., at 126:7-9;

THIRD-PARTY DEFENDANTS SMITH FREED
EBERHARD, P.C.'S MOTION FOR SUMMARY
JUDGMENT - 14

DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.
701 5TH AVE, SUITE 5500
SEATTLE, WA 98104
(206) 622-2295

D.Wilcox Dep., 115:10-13. *Compare to* Wilson Dep., 71:24-73:17. SFE is entitled to summary judgment on this particular alleged breach *unless* the Wilcoxes produce expert testimony that Mr. Wilson's misinterpretation of the supersedeas bond rule was *not* within the range of reasonable choices from the perspective of a reasonable, careful and prudent attorney in Washington. They haven't produced such testimony, as the only SFE activity challenged by Strait focus is SFE's seven-month investigation for its motion to vacate. But even if Strait proffered that opinion, and even if Wilson had made no correction, his bond advice could not constitute malpractice because the Wilcoxes admit it did not factor into their decision not to appeal.[11] *See* E.Wilcox Dep., 222:7-223:23; D.Wilcox Dep., 115:3-9. *See also,* Christie Dec., ¶27 ("The Wilcoxes' instructions to SFE not to file an appeal were independent of any issue about a bond"). The Wilcoxes' admission of a lack of proximate cause is fatal to this allegation of breach.

The Wilcoxes' third pleaded theory of breach is that SFE "fail[ed] to exhaust opportunities to seek relief from that judgment." That appears to reference settlement. The Wilcoxes' insurer, Integon, had already offered its policy limits and been rejected. Monetary settlement offers were out of reach for the Wilcoxes; per their 2020 asset declaration and recent testimony, they had no significant savings or assets. E.Wilcox Dep., 218:17-18, 233:9-13 and Ex. 6. What *was* valuable was the potential assignment of their bad faith claim against their insurer. Christie Dec., ¶¶31-32. Smith Freed could not prosecute such a claim, as it was outside its scope of representation and Cliff's Wilson's expertise. Wilson Dep., 37:19-38:10. Instead, Smith Freed properly and repeatedly advised the Wilcoxes to consult with their own counsel about these claims. *See* Wilson Dec., Exs. 11 and 11-A (5/18/21 call) 40 (10/22/21 letter); 4 (11/4/21 letter); 9-9-A (11/19/21 call); 35 (invoice for 11/22/21 call); 8-8A (11/22/21 call). Smith Freed's lawyers assisted the Wilcoxes in pursuing possible assignment by asking Hoff's counsel if Hoff would entertain the idea, and

---

[11] This Court could find as a matter of law that Wilson reasonably, if incorrectly, analyzed the application of RAP 8.1(b)(1)(supersedeas bond procedure) to the context of an appeal of a post-judgment order with the judgment still outstanding. See *Halvorsen v. Ferguson*, 46 Wash. App. 708, 717–18, 735 P.2d 675, 681–82 (1986)( attorney is not negligent when he or she exercises judgment on an uncertain legal proposition).

THIRD-PARTY DEFENDANTS SMITH FREED
EBERHARD, P.C.'S MOTION FOR SUMMARY
JUDGMENT - 15

DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.
701 5TH AVE, SUITE 5500
SEATTLE, WA 98104
(206) 622-2295

following up with requests for an assignment proposal. By Nov 22-24, 2021, the Wilcoxes had employed independent counsel to advise them in negotiations with Hoff. Christie Dec., ¶28. No reasonable jury on these facts could find that Smith Freed breached its duty.

In response to this motion, possibly the Wilcoxes will move to amend their Complaint to add new theories of breach against SFE to try to keep it in suit. SFE has preemptively rebutted these potential new theories. *See* Christie Dec., ¶¶23-24 (that Ms. Fung's declaration supporting the motion to vacate was stricken as hearsay);[12] 25 (that SFE did not seek reconsideration of the Order Denying Motion to Vacate),[13] and 28 (SFE's advice to the Wilcoxes' about their potential bad faith and malpractice claims, and about Mr. Hoff's offer of an assignment to them).

**E. The Wilcoxes Have No Recoverable Damages, As a Matter of Law**

**Standard.** To defeat summary judgment, a legal malpractice plaintiff must "create an issue of fact, supported by more than speculation, that they would have received more money [if the attorney had not erred]." *Halquist v. Freeby*, 2008 WL 496801, 143 Wash. App. 1018 (2008)(unpublished), at *5 (affirming summary judgment dismissal when former clients "offered no expert testimony or any evidence that, had they been permitted to opt out of the class settlement and pursue an independent tort action, the result would have been more favorable than the $207,000 they received from the class action settlement"). This factor overlaps with that of proximate cause, discussed in the next section.

The Wilcoxes allege that "[b]ecause SFE failed to timely move to set aside the Default

---

[12] Even if Integon adjuster Meghan Smalley had authored the declaration instead of Ms. Fung, it would not have changed the outcome of the motion to vacate. Smalley never spoke to Hoff's counsel, and their written communications never mentioned "litigation" or a "lawsuit." Ms, Lester agrees. *See* Pierce Dec., Ex. 5-B (Fact Stip.), Ex. 5-C, ¶¶1-3 (Lester's 2/9/23 agreement to those stipulated facts). So do the Wilcoxes. *Id.*, at Ex 5-D (their attorney Brad Moore's 2/10/23 agreement to those stipulated facts). Adjuster Oscar Mateo does not recall ever speaking with Hoff's counsel. Mateo Dep., 64:17-65:2. Adjuster Aaron Garcia could not have had any relevant conversations with Hoff's counsel; he did not work on the Hoff claim until July 2021, long after the default judgment was entered. Garcia Dep., 23:5-9.

[13] This Court can enter conclusions about the outcomes of the Wilcoxes' hypothetical reconsideration or appeal efforts, as a matter of law. *Compare, Daugert v. Pappas*, 104 Wash.2d 254, 259, 704 P.2d 600 (1985)( the determination of what decision would have followed if an attorney had timely filed a petition for review "is a question of law for the judge, irrespective of whether the facts are undisputed.").

---

THIRD-PARTY DEFENDANTS SMITH FREED EBERHARD, P.C.'S MOTION FOR SUMMARY JUDGMENT - 16

DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.
701 5TH AVE, SUITE 5500
SEATTLE, WA 98104
(206) 622-2295

Judgment…the Wilcoxes now owe Hoff the full amount of the Default Judgment of over $1.6 million plus interest." Ex. 7 to Pierce Dec., at Answer to Interrogatory No. 7. (They allege that Integon caused them the same damages. Ex. 8 to Pierce Dec., at Answer to Interrogatory No. 22; Wilcox 3rd Compl., ¶¶73, 86 [same].) But this incorrectly assumes that had the default judgment been vacated, the Wilcoxes would be immune from judgment. Instead, if the trial court had agreed to vacate, the Wilcoxes would still have had to defend litigation by Hoff. A judgment after trial may have been substantially higher than the amount in the default judgment. Christie Dec., ¶29. The Wilcoxes have not shown *evidence* that the trial judgment would have been less, *i.e.*, that SFE caused them money damages. Nor have they disclosed expert medical opinions (*see* Dkt. 93) that would have allowed them to rebut Hoff's medical experts' opinions (which were the basis for the damage calculation in the default judgment). Because the Wilcoxes lack any evidence that a trial judgment would have been different, they have waived their claim that SFE is liable for the difference between the default judgment and a hypothetical, but-for-SFE trial outcome.

Mrs. Wilcox alleges personal injury damages on her claims, namely that she became suicidal and incurred counseling expenses beginning in June 2022. She attested that this was "because I've been under this pressure of the lawsuit for so long." Ex. 8 to Pierce Dec., at Answer to Interrogatory No. 22 (damages asserted against Integon, not SFE). She says that her feelings started after the accident and became much worse after receiving the default judgment. E.Wilcox Dep., at 231:9-12; 231:16-23, 232:16-233:13. She doesn't know if the lack of appeal injured her. *Id.*, 235:6-10. *See also*, Wilcox Amd. Complaint, ¶¶73 (alleging emotional distress damages caused by Integon), 94 (alleging same damages from Warren and SFE).

"[E]motional distress damages are available for attorney negligence [only] when emotional distress is foreseeable due to the particularly egregious (or intentional) conduct of an attorney or the sensitive or personal nature of the representation." *Schmidt v. Coogan*, 181 Wn.2d 661, 671, 335 P.3d 424 (2014)(denying recovery of such damages to its plaintiff). "[S]imple malpractice resulting in pecuniary loss that causes emotional upset does not support emotional distress

THIRD-PARTY DEFENDANTS SMITH FREED
EBERHARD, P.C.'S MOTION FOR SUMMARY
JUDGMENT - 17

DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.
701 5TH AVE, SUITE 5500
SEATTLE, WA 98104
(206) 622-2295

damages." *Id.* In *Schmidt*, attorney Coogan allegedly "harassed, intimidated, and belittled" his client when she raised the issue of the statute of limitations in her underlying premises-liability lawsuit. Coogan eventually filed suit on the last day possible, but against the wrong defendant, causing dismissal of her case. In Schmidt's later malpractice claim, the Supreme Court upheld the trial court's denial of Schmidt's motion to amend her complaint to add a claim for outrage, finding that "the subject matter of the litigation was not particularly sensitive: she did not lose her freedom and Coogan's actions were not egregious." 181 Wn.2d at 674. This Court can similarly find, on these facts, that (1) Mrs. Wilcox's emotional distress was not foreseeable to SFE; (2) the allegedly erroneous conduct of the Smith Freed attorneys was neither egregious nor intended to harm Mrs. Wilcox; and (3) the nature of the representation, in attempting to vacate an existing default judgment, was not particularly sensitive or personal. The Wilcoxes cannot recover emotional distress damages from SFE on a negligence theory. Nor should they recover such damages in their fiduciary duty claim. *See, Arden v. Forsberg & Umlauf,* 189 Wash. 2d 315, 322, 329, 402 P.3d 245, 252 (2017)(trial court summary judgment order concluded there was "no support for recovery of damages for … emotional distress" in claim against law firm for breach of fiduciary duties and request for such damages "failed as a matter of law"; Division II and the Supreme Court affirmed).

## F.  Smith Freed Did Not Cause Damage to the Wilcoxes, As a Matter of Law

***Standard.*** Proximate cause is frequently decided on summary judgment in legal malpractice actions,[14] when "reasonable minds could not differ." *Hertog v. City of Seattle,* 138 Wn.2d 265, 275, 979 P.2d 400 (1999). *See also*, *LaRoche v. Billbe*, No. C13-1913 TSZ, 2014 WL 3557775 (W.D. Wn. July 18, 2014), at *3 (the proximate cause issue in a legal malpractice case is one for the judge). The plaintiff must establish that, in the absence of the attorney's malpractice, the plaintiff would have prevailed or achieved a demonstrably better result in the underlying litigation. *Zander v. Condon*, 93 Wn. App. 1078 (1999), at *1, citing *Daugert v. Pappas*, 104

---

[14] *See, e.g., Estep v. Hamilton,* 148 Wn.App. 246, 201 P.3d 331 (2008); *Powell v. Associated Counsel for Accused.* 146 Wn.App. 242, 191 P.3d 896 (2008); *Griswold v. Kilpatrick,* 107 Wn.App. 757, 27 P.3d 246 (2001).

**DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.**
701 5ᵀᴴ AVE, SUITE 5500
SEATTLE, WA  98104
(206) 622-2295

Wash.2d 254, 257, 704 P.2d 600 (1985). A plaintiff's speculative theory of more favorable results but-for the defendant-attorney's error is appropriately dismissed on summary judgment. For instance, a trial court correctly rejected the testimony of plaintiff's expert who testified based on his general experience that the case would have settled for a greater amount absent the attorney's breach of his duty of care. *Griswold v. Kilpatrick,* 107 Wn.App. 757, 762, 27 P.3d 246 (2001) (affirming summary judgment dismissal of attorney; holding that expert's testimony was "speculative and conclusory" and "insufficient to create an issue of material fact"). An appellate court summarized the issue in a similar context to the current case: **"If [malpractice plaintiff's] motion to vacate would have been denied even if it had been timely filed, it logically follows that [malpractice plaintiff's] malpractice claim against [malpractice defendant] will fail."** *Shepard Ambulance, Inc. v. Helsell, Fetterman, Martin, Todd & Hokanson*, 95 Wn. App. 231, 236, 974 P.2d 1275 (1999)(reviewing trial court's grant of summary judgment in favor of a law firm in legal malpractice action after the law firm's motion to vacate a default judgment was denied).

> ***Claimants' inadequate proffer***. The Wilcoxes argue in a conclusory fashion:

> [T]he trial court would have granted the Wilcoxes' motion but for SFE's negligence because the trial court's order was largely based on the attorneys' failure to act with due diligence and, therefore, it found there was no equitable basis to vacate the default.

Wilcox MSJ, at 19:10-13. This is speculative as well as an inaccurate description of the denial order, which made findings only as to the Wilcoxes themselves, not to Smith Freed. Moreover, only two paragraphs of the order criticize the Wilcoxes' diligence while represented by Smith Freed (*i.e.*, that it took them seven months to file the motion to vacate). The rest calculates how the Wilcoxes made no appearance for over a year, between being properly served on 2/1/20**20** to finally appearing (2/24/20**21**, through Smith Freed). None of that delay was attributable to Smith Freed. The state court also called out the Wilcoxes' three-month silence between learning of the default judgment (November 2020) and finally appearing (2/24/2021). The Wilcoxes testified to the trial court that their only action during those three months was calling Warren and being

THIRD-PARTY DEFENDANTS SMITH FREED
EBERHARD, P.C.'S MOTION FOR SUMMARY
JUDGMENT - 19

DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.
701 5TH AVE, SUITE 5500
SEATTLE, WA 98104
(206) 622-2295

satisfied with his response that he had filed a NOA, but couldn't find it. D.Wilcox Dep., Ex. 19, ¶18; E.Wilcox Dep., Ex. 10 ¶19. Again, that three-month lag pre-existed Smith Freed's retention.

The Wilcoxes' expert does not improve their inadequate showing on proximate cause when he opines only:

> [T]he Smith Freed Eberhard attorneys' acts and omissions in handling the motion to vacate substantially compromised the Wilcoxes' ability to defend themselves in the *Hoff* matter…

Strait Dec., ¶19 (the same as he concluded regarding Warren, *id.* at ¶16). This short statement is rife with errors.

First, Strait fails to explain how or why the Wilcoxes' defense would be affected if they remained subject to the default judgment (that was entered before SFE appeared) versus the default being overturned. The only result of a successful motion to vacate would be to allow the Wilcoxes damages discovery and an option to argue general damages before a jury. In other words, vacation would place them back in position before the default, in active litigation where Dan Wilcox admitted liability and Hoff had incurred serious injuries and lengthy medical treatment.

Second and fatally, in focusing only on the preliminary prerequisite of overturning the default, Strait fails to connect SFE's alleged breach (*i.e.*, its investigating multiple arguments to support the motion, rather than filing as soon as it confirmed there was no NOA in the court file) with damages (*i.e.*, the amount of the default judgment in excess of the trial judgment that would have been entered but-for SFE's breach). Vacation of the default would only send the Wilcoxes back before the jury, having no defense to liability and facing Hoff's undisputed special damage claims and reasonable general damages claim. In a post-COVID world, it is not evident at all that a jury outcome would be less than the default. *See* Christie Dec., ¶ 29. Strait makes no attempt to opine as to a jury verdict on these facts.[15]

**_Whether the motion to vacate would have succeeded: the <u>White</u> test_**. The seminal case for

---

[15] Nor could this Court allow such an opinion from Strait, under *Daubert/Frye*, because he is not a practicing lawyer and therefore lacks the necessary expertise under FRE 702. *Compare* Strait Dec., ¶3 (40-year career as academic) *with* Christie Dec., ¶6 (40+-year career as a trial lawyer).

DAVIS ROTHWELL EARLE & XOCHIHUA P.C.
701 5TH AVE, SUITE 5500
SEATTLE, WA 98104
(206) 622-2295

Washington courts when analyzing whether to vacate a default judgment is *White v. Holm*, 73 Wn. 2d 348, 438 P.2d 581 (1968).  *White* sets out a test with two primary and two secondary factors. *See also Showalter v. Wild Oats*, 124 Wn. App. 506, 511, 101 P.3d 867 (2004).  The primary factors are: (1) the existence of substantial evidence to support, at least prima facie, a defense to the claim asserted; and (2) the reason for the failure to appear, *i.e.*, whether it was the result of mistake, inadvertence, surprise or excusable neglect.  *Showalter*, 124 Wn. App. at 511.  The secondary factors are: (3) the party's diligence in asking for relief following notice of the entry of the default; and (4) prejudice to the opposing party.  *Id*.  Expert Christie opines that the Wilcoxes' Motion to Vacate likely *never* could have met *any* of the four *White* factors, even if another law firm had represented them in lieu of SFE, and even if that law firm had filed the motion immediately upon retention in February 2021 rather than seven months later. Christie Dec., ¶14.

   ***Wilcoxes have no prima facie defense to Hoff's claim (first <u>White</u> factor)***.  The failure to set forth a substantive or procedural defense to an action in a motion to vacate a default judgment is a "fatal[] deficien[cy]." *Johnson v. Asotin County*, 3 Wn. App. 659, 664, 477 P.2d 207 (1970). The purpose of the requirement of a movant to establish *some* kind of defense to the action is to avoid a useless trial.  After all, "[i]f a CR 60 movant cannot produce substantial evidence with which to oppose the claim, there is no point to setting aside the judgment and conducting further proceedings."  *Pfaff v. State Farm Mutual Auto. Ins. Co.*, 103 Wn. App. 829, 834, 14 P.3d 837 (2000); *see also TMT Bear Creek Shopping Center, Inc. v. Petco Animal Supplies, Inc.*, 140 Wn. App. 191, 203, 165 P.3d 1271 (2007).  Because Mr. Wilcox admitted liability for striking Hoff and Hoff's special damages could not reasonably be challenged, the only possible argument the Wilcoxes could make under this *White* factor would be to general damages. Christie Dec., ¶14a.

   A party who moves to set aside a judgment based only upon damages, as here, must present *evidence* of a *prima facie* defense to those damages. *Little v. King,* 160 Wn.2d 696, 704-05. 161 P.3d 345 (2007)(reversing trial court's vacation of default judgment); *White,* 73 Wash.2d at 352. A defendant generally must submit affidavits identifying specific facts that support a defense;

allegations or conclusory statements are insufficient. *VanderStoep*, 200 Wn. App. at 519. It is not a *prima facie* defense that damages "might have been" less in a contested hearing. *Shepard Ambulance,* 95 Wn.App. at 242. To date, the Wilcoxes have not produced any expert testimony regarding Hoff's damages. It appears nearly impossible, on these facts, that the Wilcoxes in moving to vacate could have demonstrated "substantial evidence" that a jury would award Hoff a smaller general damages award than he received via default. Christie Dec., ¶14a.

**Wilcoxes cannot prove mistake (second <u>White</u> factor)**. Regardless of whether the Wilcoxes demonstrated the first primary factor, to vacate they must also have proven the other primary factor: that their failure to timely appear was the result of a mistake. "[T]he plausibility and excusability of the defaulted defendants' reason for failing to initially and timely appear in the action deserve grave, if not dispositive, consideration." *White,* 73 Wn.2d at 353–54. Unlike the analysis for the *prima facie* defense factor, for this second factor (of the reason for failure to timely appear) the trial court may make credibility determinations and weigh the evidence in order to determine whether the defendant can show mistake, inadvertence, or excusable neglect. *Rosander v. Nightrunners Transp., Ltd*., 147 Wash. App. 392, 406, 196 P.3d 711, 718 (2008). Relevant facts in the insurance-defense context can include whether the movant *reasonably* believed that the insurer was resolving the claim; what steps the defendant took to follow the lawsuit's progress; and the amount of time before the defendant moved to vacate. *VanderStoep*, 200 Wash. App. at 526–27 (citing other authority).

<u>Reliance on attorney</u>. The Wilcoxes allege that they gave notice of the suit to their attorney Warren and reasonably relied upon him to defend them (and/or to provide sufficient notice to Integon so that Integon would defend them). But there is no "innocent client doctrine" that allows an insured to be automatically relieved from a default judgment based on a belief that the insurer or attorney is handling the litigation. *Akhavuz v Moody*, 178 Wn. App. 526, 315 P.3d 572 (2013). *See also, In re Marriage of Olsen*, 183 Wn. App. 546, 556, 333 P.3d 561, 565 (2014) (general rule is that a lawyer's negligence can never constitute grounds for vacating

a judgment under CR 60(b)); *Barr v. MacGugan*, 119 Wn. App. 43, 46, 78 P.3d 660, 662 (2003)("an attorney's negligence or neglect does not constitute grounds for vacating a judgment under CR 60(b), because under the law of agency, if an attorney is authorized to appear on behalf of a client, that attorney's acts are binding on the client"); *Lane v. Brown & Haley*, 81 Wn. App. 102, 107, 912 P.2d 1040 (1996)), *aff'd*, 140 Wn.2d 568, 998 P.2d 305 (2000) ("Generally, the incompetence or neglect of a party's own attorney is not sufficient grounds for relief from a judgment in a civil action"). As a matter of law, the Wilcoxes cannot successfully claim that their reliance on Warren was a mistake justifying their nonappearance, because they chose him as their agent;[16] his omissions bound them. Public policy supports this conclusion, too. As the Ninth Circuit explained, an injured party should not have to suffer for the negligence of the tortfeasor's attorney:

> [D]ismissal of this action may appear to punish an innocent client for the lawyer's mistakes…. However, [a] plaintiff cannot avoid dismissal by arguing that he or she is an innocent party who will be made to suffer for the errors of his or her attorney. The established principle is that the faults and defaults of the attorney may be imputed to, and their consequences visited upon, his or her client. In cases such as this where the "litigants are bound by the conduct of their attorneys," the client's remedy is one of malpractice.

*Wheat v. Airport Auth. of Washoe Cnty.*, 166 F.3d 1219 (9th Cir. 1999)(citations omitted).Here, the trial court properly let Hoff keep his default judgment, with the Wilcoxes' remedy being his third-party malpractice claim against Warren.

    <u>Reliance on insurer</u>. The Wilcoxes told the trial court that they made a single mention to

---

[16] Both Wilcoxes claim Warren was their attorney. E.Wilcox Dep., 85:11-15 (he represented them beginning 2/5/20), 96:15-18, 171:15-172:17, 173:14-16 (representation never terminated); D.Wilcox Dep., 53:17-19. Warren agrees. Warren Dep. 121:4 -122:7 and Ex. 4 (2/520 letter of representation). The Warrens' expert also opines that Warren was their attorney. Strait Dec., ¶14.

THIRD-PARTY DEFENDANTS SMITH FREED EBERHARD, P.C.'S MOTION FOR SUMMARY JUDGMENT - 23

DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.
701 5TH AVE, SUITE 5500
SEATTLE, WA 98104
(206) 622-2295

Integon of the Hoff lawsuit, *i.e.*, a voicemail on 2/3/20 after being served with the Complaint.[17,18]

Cases in which a defaulted insured blames her insurer for failure to appear are numerous, and the

Washington courts have sorted them into three groups, with different outcomes:

> The cases addressing a defendant's failure to timely appear because of the interaction between the defendant and an insurer generally fall into three factual scenarios.

> The first scenario occurs when the defendant fails to notify the insurer that a complaint has been served based on a misunderstanding about whether the insurer already knows about the lawsuit and is defending. In this situation, the general rule is that the defendant's failure to appear is excusable.

> The second scenario occurs when the defendant notifies its insurer that a complaint has been served and the insurer fails to arrange for a timely appearance because of a legitimate excuse. In this situation, the general rule is that the insurer's mistake or excusable neglect can be considered in excusing the defendant's default.

> The third scenario occurs when the insured notifies the insurer or the insurer otherwise receives notice that a complaint has been filed, but the insurer fails to timely appear without a legitimate excuse. In this situation, the general rule is that the trial court should focus on whether the defendant, not the insurer, acted with excusable neglect.

*VanderStoep v. Guthrie*, 200 Wash. App. 507, 527–28, 402 P.3d 883, 894 (2017)(internal citations

omitted). The Wilcoxes' situation arguably could fit into either the second or third scenarios, given

that their testimony alleging a voicemail to Integon conflicts with Integon's testimony that it has

---

[17] The Wilcoxes only advised the trial court of Mr. Wilcox's alleged 2/3/20 voicemail to Integon, not their joint, "live" call that day in which Mrs. Wilcox used the word "lawsuit." *See,* E.Wilcox Dep., Ex. 10 (her testimony to the trial court, mentioning the voicemail but not the live call); D.Wilcox Dep., Ex. 19 (same). The Wilcoxes' failure to mention this second call in the motion to vacate was their own mistake. Mrs. Wilcox admits she did not remember the call until the current federal litigation, at least seven months after the motion to vacate. E.Wilcox Dep., 68:17-69:8 (did not remember the second call on 2/3/20 until she heard a recording of it), 70-78 and Ex. 8 (identifying transcript of call), Pierce Dec., ¶10 (counsel received audio recordings on 4/22/22, and transcripts of those recordings on 7/21/22, in discovery in this case). Meanwhile, SFE when preparing the 9/21 motion to vacate had no documentation of either 2/3/21 call (or any personal knowledge, as they were not participants on those calls and were not then the Wilcoxes' counsel. *See* SFE's NOA dated 2/24/21; Fung Dec. ¶8, middle of page 7 (didn't have call records when preparing motion to vacate).

[18] The Wilcoxes have had at least three attorneys related to this case subsequent to Smith Freed. E.Wilcox Dep., 171:13-172:22 (listing Al Donohue, Eric Byrd and Brad Moore). Even Byrd, who was specifically searching for grounds for a CR 60 motion, didn't tell the Wilcoxes that their verified, live call with Integon on 2/3/20—that wasn't proffered in their motion to vacate—might support a CR 60 motion. *See* Pierce Dec., at Ex. 4 (Byrd's 4/8/22 NOA for the Wilcoxes in *Hoff v. Wilcox*), Exs. 24, 25, and 26 (letters dated 5/4/22, 5/6/22 and 6/27/22 from Byrd to Wilcoxes). It is not known whether Byrd possessed the audio recording of the 2/3/20 call that Integon served to counsel in the instant case on 4/22/22.

THIRD-PARTY DEFENDANTS SMITH FREED
EBERHARD, P.C.'S MOTION FOR SUMMARY
JUDGMENT - 24

**DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.**
701 5TH AVE, SUITE 5500
SEATTLE, WA 98104
(206) 622-2295

no record of that voicemail (and that it did not learn of the Hoff lawsuit until after default judgment was entered). Note that Mr. Wilcox's alleged 2/3/20 voicemail is the *only* communication at issue; the Wilcoxes admittedly did not inform the trial court of their joint, live call to Integon later on 2/3/20, that mentioned the word "lawsuit." *See* note 17, *supra*.

The trial court, and this court, can make credibility determinations and weigh the evidence—*i.e.*, the Wilcoxes' testimony,[19] Integon's testimony[20] and the phone records[21]—to determine if Mr. Wilcox indeed left a voicemail for Integon adjuster Mateo on 2/3/20 informing him that the Wilcoxes had been served. The court would then need to decide whether the Wilcoxes justifiedly relied on Integon to defend them, so that the Wilcoxes could claim "mistake" in failing to appear in Hoff's suit.

If the Wilcoxes left a voicemail for Oscar Mateo but no one at Integon heard it,[22] then the facts potentially fit the second *VanderStoep* scenario. If Integon heard the voicemail but did not take action, then the facts may fit the third scenario. In either scenario, this court in determining both the existence of the voicemail and the reasonableness of reliance can consider, for credibility purposes, the admitted fact that the Wilcoxes in their second call to Integon, at 11:20 a.m., did not mention their voicemail earlier that morning. They also did not ask to speak with Mateo, mention being served with a Complaint, or ask what they should do regarding the lawsuit. E.Wilcox Dep., 74:5-7, 76:4-18, 77:22-78:7 and Exhibit 8 (call transcript).

[19] D.Wilcox Dep., 41:1-43:12(admitting no evidence of voicemail); E.Wilcox Dep., 31:20-32:1 (admitting the only evidence of a voicemail on 2/3/20 is the Wilcoxes' own testimony).

[20] *See,* Trotter-Greer dep., 41:21-44:11 (no record of voicemail); Smalley Dep., 56:3-13 (learned of default judgment in February 2021); Garcia dep., 32:16-33:6 and Ex. 1 ("February 2021 was when we first became aware of the lawsuit").

[21] *See* E.Wilcox Dep., at Exhibit 1 (Comcast records), and 19:6-17 (voicemail was made from either ATT or Comcast line), 27:24-28:4 (Integon phone number is (909) 941-5830), 116:11-20 (no 2/3/20 calls to Integon shown on ATT records), 26:13-28:10 (Comcast records show single call to Integon on 2/3/20), 68:17-70:1 (identifying that single call as the live call that was recorded and transcribed as Exhibit 8); 17:4-16 (admitting Comcast call record only shows the live call), 24:9-17 (same).

[22] Mateo was on emergency medical leave from September 2019 to mid-February 2020, encompassing 2/3/20 when Dan Wilcox claims he left a voicemail for him. Mateo Dep., 55:18-58:9. Adjuster Meghan Smalley took over the file from Mateo but was unable to retrieve Mateo's voicemails. Smalley Dep., 107:25-108:17. These facts may be moot if the Court determines the 2/3/20 voicemail does not exist.

Even if this Court finds that Mr. Wilcox did leave a single, unacknowledged voicemail mentioning a lawsuit, that would not justify the Wilcoxes' reliance on the insurer to defend them. Except for the "live" call that the Wilcoxes did not mention to the trial court, they had no other communications with Integon about a lawsuit in the *year* between February 2020 (service of Complaint) and February 2021 (Integon's receipt of Hoff's demand letter with default judgment) – even after the Wilcoxes learned in November 2020 of a $1.6M default judgment against them. Incredibly, in that year the Wilcoxes did not send Integon the Complaint, ask the adjuster about suit status, ask Integon for the phone number of their insurer-retained lawyer, ask Integon to obtain Warren's promised NOA, ask for a trial date, or even call to complain about entry of the default judgment. The trial court, or this Court, would be well within its discretion to find that the Wilcoxes did not reasonably rely on Integon to appear. On similar facts (of insureds that failed to communicate with their insurer about the litigation except for a single, initial tender), Division I found that the insureds' nonappearance was *not* excused as mistake:

> The [insured] defendants heard nothing about the lawsuit for more than a year after forwarding the complaint to [the insurer], yet made no effort to confirm that it was being defended….[A] defendant's failure to "pursue the adjuster with inquiries relative to the progress of the matter" is a factor that can weigh against a finding of excusable neglect, and in this case, it does…. [The insured] has presented no evidence of mistake or misunderstanding on the part of its insurer or counsel that would excuse the lengthy delay [in responding to the Complaint]. The [insured] defendants themselves did not inquire whether the lawsuit had been resolved. Under these circumstances, the negligence of [insured]'s insurer and counsel are attributable to [the insured].

*Akhavuz v Moody*, 178 Wn. App. 526, 537, 315 P.3d 572 (2013) (reversing trial court's vacation of default judgment; distinguishing cases of genuine mistake where insurer incorrectly believed insured would be represented by his own attorney until coverage was determined, and where insurer sent wrong claims file to defense counsel). *Compare* an insured's single tender, *with VanderStoep* (insureds took appropriate steps to ensure their insurer would defend them, justifying vacation of default, when they contacted the insurer on the same day that complaint was served, following up with two telephone calls over the next nine days, and spoke with an adjuster for

twenty months). As in *Akhavuz*, Mr. Wilcox's alleged single voicemail to Integon informing it of Hoff's lawsuit, with no follow-up ensuring Integon received it or would retain defense counsel in response, should be adjudged insufficient to constitute "mistake," as a matter of law.

Note that while *Akhavuz* also criticized the lengthy delay in moving to vacate the default judgment – a delay that exists here, too, and that is mostly unattributable to Smith Freed – the inexcusable *failure to appear in suit* was the dispositive factor in finding that the default judgment should not have been vacated. *Id.*, at 537 ("[i]nexcusable neglect [was] the dispositive factor that should have guided the trial court to deny the motion to vacate"). The trial court here ruled consistently, finding in its denial order that the Wilcoxes had failed to appear for over year—*before* Smith Freed's retention.

Alternatively, the trial court when deciding the motion to vacate may have found (and this Court can find) that there was *no* 2/3/20 voicemail, and therefore that the Wilcoxes *never* informed Integon of Hoff's suit. At that point there are no *VanderStoep* scenarios, and there can be no reasonable reliance on Integon to defend.

Thus, under *White*, there was no mistake justifying the Wilcoxes' nonappearance. There was also no error by Smith Freed, which proffered all the relevant evidence it had, *i.e.*, the Wilcoxes' declarations regarding their single voicemail to Integon and their belief that their attorney, Warren, was defending.[23]

***Wilcoxes were not diligent in seeking relief (third <u>White</u> factor)***. Due to their own errors, the Wilcoxes cannot prove the third *White* factor (or <u>first of the secondary factors</u>): that "the moving party acted with due diligence after notice of entry of the default judgment." The Wilcoxes admitted in their motion declarations that they knew about the default judgment for a full three months before SFE became involved. The superior court, in denying the motion, adopted their admissions as a finding of fact:[24]

---

[23] Integon's communications with Hoff are irrelevant for a different reason. *See* n. 12, *supra*.

[24] The issue before this Court, in deciding the "trial-within-a-trial" component of a legal malpractice claim, is whether

**DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.**
701 5ᵀᴴ AVE, SUITE 5500
SEATTLE, WA 98104
(206) 622-2295

> The Court further finds that Defendants Daniel and Elizabeth (*i.e.*, "Jane Doe") Wilcox admitted in their Declarations that they became aware of the Default Judgment in November of 2020 and were advised of the same by an adjuster from their insurance company...
>
> [N]o attorney ever filed a Notice of Appearance in the present case before [SFE did so on] February 24, 2021.

Order Denying Motion to Vacate, ¶ 10, 8. *See* Smalley Dep., p.3 and Ex. 7 (Integon retained SFE on 2/22/21). The Wilcoxes' three-month delay between November 2020 and February 2021 was therefore *not* the fault of Smith Freed.

In fact, the superior court found that the Wilcoxes inexcusably delayed appearing in suit for a *year*, all prior to SFE's involvement (and therefore not attributable to it). The court, sitting in equity, evidently determined that the Wilcoxes' protracted avoidance of defense, even prior to notice of the default judgment, was germane to its conclusion that "[t]here is no equitable basis for

---

Smith Freed's representation of the Wilcoxes, including timing of filing the motion to vacate, breached the standard of care. There is breach only if *no* reasonable Washington attorney would have acted as SFE did in preparing their clients' declarations (*i.e.*, calling them to obtain their narrative, typing it up and sending for their weeklong review, incorporating their clients' edits, not filing until the clients had reviewed and signed final versions) and providing them the court's order afterwards for review. Notably, after SFE the Wilcoxes had at least four other attorneys assist them with post-denial options, including one, Byrd, retained to analyze a potential CR 60 motion regarding the denial, and one, Moore, who sued SFE for malpractice on the denial. Despite these multiple attorney reviews in the year following filing of the motion to vacate, neither the Wilcoxes nor any of their counsel said that the "November 2020" statement was a mistake, until the Wilcoxes amended their Answer here for the second time. *See* n. 5 *infra*. *See also*, D.Wilcox Dep. 121:12-122:8 ("I think that's a clerical error and I didn't see it"),



E.Wilcox Dep., 98:14-99:1 (declaration should have said February 2021; "I don't know how we missed that when we were reviewing it"). Even if the Wilcoxes reviewed their 9/29/21 declarations more carefully, and corrected their mistakes before 10/16/21 (*i.e.*, one year after entry of default judgment), the trial court still would have been presented with the fact that they had not appeared in suit for over a year. As discussed above regarding the second *White* factor, that was likely sufficient to find there no mistake, and therefore—because there was also no prima facie defense—no grounds to vacate the default.

THIRD-PARTY DEFENDANTS SMITH FREED
EBERHARD, P.C.'S MOTION FOR SUMMARY
JUDGMENT - 28

**DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.**
701 5ᵗʰ Ave, Suite 5500
Seattle, WA 98104
(206) 622-2295

vacating the court's [default] judgment" of a year prior. In other words, although the court did call out SFE's seven-month delay between appearing and filing the motion to vacate (Order Denying Motion to Vacate, ¶¶13-14), it also considered and explicitly recited the Wilcoxes' prior *year* of inactivity between their deadline for appearing/answering (2/21/**20**, twenty days after service of the Complaint) and their appearance via SFE (on 2/24/**21**).

      ***Wilcoxes cannot prove Smith Freed caused hardship to Hoff (fourth <u>White</u> factor)***. The Wilcoxes' financial status and therefore Hoff's ability to collect on the judgment did not change during SFE's representation. As it relates to the fourth *White* factor (or <u>second of the secondary factors</u>), there is no evidence that SFE's activities, including the alleged delay in filing the Wilcoxes' motion to vacate, created any hardship to Mr. Hoff. Christie Dec., ¶14d.

## VI.   CONCLUSION

      SFE requests summary judgment dismissal with prejudice of the Wilcoxes' claims against them because the Wilcoxes cannot prove any of the elements of their claims:

- No **<u>breach</u>** because other reasonable Washington attorneys would have similarly chosen to investigate multiple arguments to support the motion to vacate, as Smith Freed demonstrably did, rather than filing an immediate motion that had no support (as the Wilcoxes' expert Strait recommends);[25]

- No **<u>causation</u>** because under *White*'s four-factor test, the motion to vacate was not viable *regardless* of SFE's filing date. There was no prima facie defense to Hoff's claims (factor 1) because Dan Wilcox admitted liability, special damages were reasonable and related, and there was no *evidence* that the trial judgment would have been less than the default. There was no mistake in failing to appear (factor 2) because the Wilcoxes admit proper service, and could not reasonably claim reliance on Integon to defend based on a single, unanswered voicemail (that the Court may find does not

---

[25] This sentence refers to the Wilcoxes' main argument: that SFE took too long to file the motion to vacate. SFE rebuts the Wilcoxes' other pleaded and possible allegations of breach *supra* at 16:5-10 and Christie Dec., ¶¶23-25, 28.

THIRD-PARTY DEFENDANTS SMITH FREED
EBERHARD, P.C.'S MOTION FOR SUMMARY
JUDGMENT - 29

**DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.**
701 5ᵀᴴ Ave, Suite 5500
Seattle, WA  98104
(206) 622-2295

exist). As to their attorney Warren, his failure to appear is imputed to the Wilcoxes. The Wilcoxes were not diligent in seeking relief (factor 3), given they knew of the default judgment for three months—*prior* to SFE's involvement—without any action except a call to Warren. Finally, SFE's not having filed the motion sooner did not cause hardship to Hoff (factor 4), because the Wilcoxes' financial status, and thus Hoff's ability to collect, did not change during the months of motion preparation.

- No **damages** because the Wilcoxes lack evidence of a smaller judgment if *Hoff v. Wilcox* had gone to jury trial (especially given Mr. Wilcoxes' admitted liability and Mr. Hoff's large medical bills, long treatment, and alleged pain and permanency). Mrs. Wilcox's emotional distress damages are not recoverable.

To prevent the Wilcoxes from relitigating these claims by suing the individual SFE attorneys, SFE requests that the dismissal Order's findings also apply to Cliff Wilson and Joyce Fung.

DATED: February 17, 2023.

DAVIS ROTHWELL
EARLE & XOCHIHUA, PC

By: /s/ *Suzanne K. Pierce*
Suzanne K. Pierce, WSBA #22733
James P. Mullins, WSBA # 52804
Attorneys for Smith Freed Eberhard, PC
701 5th Ave Suite 5500
Seattle, WA 98104
Tel: (206) 622-2295
Email: spierce@davisrothwell.com
Email: jmullins@davisrothwell.com

THIRD-PARTY DEFENDANTS SMITH FREED
EBERHARD, P.C.'S MOTION FOR SUMMARY
JUDGMENT - 30

DAVIS ROTHWELL
EARLE & XOCHIHUA P.C.
701 5TH AVE, SUITE 5500
SEATTLE, WA 98104
(206) 622-2295