1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10

INTEGON PREFERRED INSURANCE
COMPANY, a foreign corporation,

NO.   2:21-cv-01501-BJR

11
12

Plaintiff,

vs.

DECLARATION OF ROBERT L.
CHRISTIE

13
14
15
16

DANIEL WILCOX and ELIZABETH
WILCOX, Washington residents; and ERIC
HOFF, a Washington resident,

Defendants.

17
18

DANIEL WILCOX and ELIZABETH
WILCOX, Washington residents,

19
20

Counterclaimant,

vs.

21
22
23

INTEGON PREFERRED INSURANCE
COMPANY, a foreign corporation,

Counter-defendant.

24
25

DANIEL WILCOX and ELIZABETH
WILCOX, Washington residents,

26

Third-Party Plaintiffs,

27

vs.

DECLARATION OF ROBERT L. CHRISTIE - 1

ROBERT W. WARREN, ATTORNEY AT LAW, PLLC, a Washington professional limited liability company dba WRIXTON LAW OFFICE, and SMITH FREED EBERHARD, P.C., a foreign professional services corporation,

       Third-Party Defendants.

I, Robert L. Christie, declare as follows:

1.    I am over the age of 18 years, have personal knowledge of my own retention and expertise, and am otherwise competent to make this declaration. If called to testify at deposition or trial in this case, I would do so consistently with this declaration.

## SCOPE OF RETENTION

2.    I have been retained by counsel for third-party defendant Smith Freed Eberhard, P.C. ("SFE") to evaluate the actions of SFE attorneys Cliff Wilson and Joyce Fung in *Hoff v. Wilcoxes*, Snohomish County Superior Court No. 20-2-00372-31. Specifically, I have been asked to opine whether Mr. Wilson's and Ms. Fung's representation of the Wilcoxes complied with the standard of care for attorneys practicing in Washington State.  If presented with additional materials, claims by the Wilcoxes, or opinions by other experts, I am capable, willing, and reserve the right to respond in regard to SFE attorneys.

3.    I have also been asked to evaluate the Declaration of Professor John Strait and his opinions set forth therein. I have not yet been asked to opine on the actions of any other party in this matter, but I reserve the right to opine on the actions of Robert Wrixton Warren or other lawyers involved in *Hoff v. Wilcoxes* if asked to do so.

## EXPERT QUALIFICATIONS

4.    I have been admitted to practice law in Washington State since 1980, having graduated Cum Laude from the University of Puget Sound School of Law. I served as a judicial clerk for 12 months after graduation for the Honorable Vernon Pearson, then a judge with Division 2 of the Washington State Court of Appeals.  I began active practice in July 1981 and

DECLARATION OF ROBERT L. CHRISTIE - 2

have been in continuous practice of law since then. I founded Christie Law Group, PLLC in March 2005, after 23 years of practice with my prior firm. I am also admitted to practice in Oregon and Idaho. I have never been disciplined. Attached as **Exhibit 1** is a current and accurate copy of my *curriculum vitae*.

5.     I am a member of three peer-selected national and/or international civil lawyer defense organizations, specifically the Federation of Defense & Corporate Counsel (of which I am the immediate past President and Board Chair), the Association of Defense Trial Attorneys, and the International Association of Defense Counsel. I am a member and former board member of DRI. I am also a current board member of Lawyers for Civil Justice. In connection with each of these organizations I have written articles and presented on a wide range of topics including attorney ethics, civility, professionalism and accepted standards of conduct for lawyers. I have presented CLE seminars on behalf of the Washington State Bar Association that addressed attorney conduct and professionalism. I have actively supervised lawyers in my firm and in my predecessor firm continuously since 1989 on legal ethics, civility and professionalism, and candor to the court in both written and oral presentations.

6.     For over 40 years I have focused my practice on the defense of civil cases and appeals arising from those cases. I have argued appeals in all divisions of the Washington Court of Appeals, the Washington State Supreme Court, the Ninth Circuit Court of Appeals, the Federal Circuit Court of Appeals, and the United States Supreme Court (on briefs only). I have tried over 100 cases over the course of my career in numerous Superior Courts throughout Washington State, in the U.S. District Courts in the Eastern and Western District of Washington, and in the U.S. District Court in Alaska. In my active practice I currently am defending civil cases in superior courts across Washington State and in U.S. District Court in the Western and Eastern Districts of Washington. I have argued countless substantive dispositive motions in both state and federal court over my decades as an active trial lawyer. These motions and arguments often involved questions of: (1) whether there existed a *prima facie* defense to elements of a cause of action; (2) whether there has been conduct amounting

DECLARATION OF ROBERT L. CHRISTIE - 3

to a mistake, inadvertence, surprise, or excusable neglect; (3) whether a party has acted with due diligence, and (4) whether a party has been prejudiced by the actions of another party.

7.    Over the course of my legal career I have defended lawyers in more than fifty legal malpractice cases.  I have tried to judgment two of these malpractice cases, both in King County Superior Court, with both bench trials resulting in rulings in favor of my client.

8.    I have personal experience moving to set aside an order of default (and/or default judgment) entered against my client in a setting where the default was entered before an insurer assigned the case to me to defend.  I estimate that I have personally briefed five or ten motions to vacate default, and I have supervised or assisted associate attorneys in another five or ten such motions. As such, I am familiar with the legal standards applicable to motions to vacate such defaults as set forth in Washington's CR 60 and in *White v. Holm*, 73 Wn.2d 348, 438 P.2d 581(1968) and its progeny.

9.    I have served as an expert witness on attorney standard of care in Superior Court cases in Washington State.  As an expert I have been retained not only by lawyers being sued but also by those suing their former lawyers.  I have also served as an expert witness in U.S. District Court for the Western District of Washington on behalf of a defendant insurer. In that case I opined on the reasonableness of the manner in which a law firm handled the defense of a series of cases that were part of a class action.  I have not testified in court in any of the cases in which I have served as an expert.  My opinions in those cases have been expressed in reports, declarations, and deposition. No court has ever excluded my opinions.

10.    In my position as a member of the Board of Directors for Lawyers for Civil Justice I have studied and monitored the status of the proposed change to Federal Rule of Evidence 702 that is now set to come into effect in December 2023, clarifying the gatekeeping function of the district court in determining whether the proponent of expert testimony has met the evidentiary burden for its admissibility.  Based on my education and experience as summarized above, I believe I am qualified under Federal Rule of Evidence 702 to testify as an expert on the subjects of legal malpractice and the standard of care for attorneys in civil litigation practice

DECLARATION OF ROBERT L. CHRISTIE - 4

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

in Washington State. I have based my opinions on documents, testimony, court rules and caselaw that other qualified legal malpractice experts would reasonably rely upon in forming an opinion regarding whether lawyers have met the standard of care.

11.    I am familiar with the standard of care expected by an attorney in Washington handling all aspects of civil litigation and appeals, including in the context of insurer-retained defense counsel. I am familiar with the Washington State Rules of Professional Conduct. I am also familiar with the Washington State Supreme Court's holding in *Hizey v. Carpenter*, 119 Wn.2d 251, 830 P.2d 646 (1992) that in legal malpractice actions, standard of care experts may only testify generally as to ethical requirements and may not refer to specific Rules of Professional Conduct. Judge Coughenour discussed *Hizey* in a 2020 opinion:

> As discussed by the Washington Supreme Court, ethical violations "do not give rise to an independent cause of action against the attorney" and cannot "be used as evidence of malpractice."

*Cochrane v. Am. Guarantee & Liab. Ins. Co.*, 471 F. Supp. 3d 1140, 1149 (W.D. Wash. 2020), citing *Hizey*, 830 P.2d at 650–54.

## MATERIALS REVIEWED

12.    I have reviewed the following materials in conjunction with my evaluation in this case:

Filings in *Integon v Wilcox v Smith Freed & Warren*, W.D. Wa. NO.  2:21-CV-01501-BJ:

| i. | Integon's Initial Complaint for Declaratory Judgment, dated 11/5/21 |
|---|---|
| ii. | Wilcoxes' Initial Answer, Counterclaims and Third-Party Complaint against Smith Freed Eberhard (and Warren), dated 2/11/22 |
| iii. | Smith Freed's Answer to Wilcox Third-Party Complaint, dated 3/28/22 |
| iv. | Integon's Amended Complaint, dated 5/9/22 |
| v. | Amended Third-Party Complaint of Wilcoxes against Smith Freed (and Warren), dated 9/29/22 |
| vi. | Wilcoxes' Motion for Partial Summary Judgment against Smith Freed (and Warren) and Declaration of John Strait, dated 1/12/23 |

Filings in *Hoff v Wilcox*: Snohomish County Superior Court No. 20-2-00372-3:

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

| | | |
|---|---|---|
| | i. | *Hoff v. Wilcox* docket, printed from Snohomish County Clerk's website on 2/1/23 |
| | ii. | Smith Freed's Notice of Appearance for the Wilcoxes, dated 2021.02.24 |
| | iii. | Hoff's Motion for Default with supporting Declaration of Kari Lester; and Order Granting Motion for Default |
| | iv. | Hoff's Motion for Default Judgment with supporting declarations of Kari Lester, Eric Hoff and Dr. Flugstad; and Order Granting Motion for Default Judgment |
| | v. | Smith Freed's Motion to Vacate Default with supporting declarations of Fung and Wilcoxes, Wilcoxes' response with supporting declaration of Lester, Smith Freed's reply, the transcript of hearing and the conformed Order Granting Motion to Strike and Denying Motion to Vacate |
| | vi. | Smith Freed's Notice of Withdrawal, dated 3/31/22 |

Discovery and background materials:

| | | |
|---|---|---|
| | i. | Complete transcripts of the depositions of Elizabeth Wilcox (with exhibits 1-2, 8, 10-22, 24-26, 28-29), Daniel Wilcox (with exhibits 3-5,7-15, 18-24, 27, 29), Cliff Wilson (with exhibits 1-3, 5, 7-8, 10-11), Joyce Fung (no exhibits) and Robert Warren (with exhibits 1, 4-7, 10-11, 14-15, 19-21) |
| | ii. | Excerpts of depositions of Smalley (with exhibits 1-4, 6-12) and Greer (no exhibits) |
| | iii. | Washington Rules of Professional Conduct Nos. 1.6, 1.7, 1.9, 1.13, 4.2, 4.3 and 8.4 |
| | iv. | Cases cited by Wilcoxes in their motion for partial summary judgment |
| | v. | Additional cases cited within this declaration, including *White v. Holm*, 73 Wn.2d 348, 438 P.2d 581(1968) |
| | vi. | Cliff Wilson's communications to the Wilcoxes advising them to consult independent counsel: SFE_005121 & SFE_005121A (5/18/21 call); , SFE 002491-2492 (10/22/21 letter); SFE_2493-2494 (11/4/21 letter); SFE_005114 & SFE_005114A (11/19/21 call); SFE_005114 (11/22/21 email); SFE_005113 & SFE_005113A (11/22/21 call); SFE 005112 & SFE_005112A (11/24/21 call) |
| | vii. | Cliff Wilson's communications with attorney Al Donohue: SFE_005112 & SFE_005112A; SFE 002535-2536; SFE_005107 & SFE_005107A; SFE 002691; SFE 002622; SFE_2621, 3747 |
| | viii. | Signed Forbearance Agreement between Hoff and Wilcoxes, dated 7/11/22 |
| | ix. | 3 letters from attorney Eric Byrd to the Wilcoxes, dated 5/4/22, 5/6/22 and 6/27/22; email string between Mr. Byrd and Integon adjuster Aaron Garcia dated 7/18/2022 |
| | x. | Smith Freed's invoices to Integon in this matter |
| | xi. | 24 "Aderant" notes by Joyce Fung and Cliff Wilson |

DECLARATION OF ROBERT L. CHRISTIE - 6

| xii. | Cliff Wilson's 10/22/21 letter to the Wilcoxes enclosing Hoff's 10/13/21 demand letter |
| xiii. | Selected other materials produced in discovery, as cited in this declaration |

## OPINIONS

13.    Based upon my education, experience and review of the materials listed above I have formed opinions regarding whether the conduct of the SFE attorneys in their representation of the Wilcoxes complied with the standard of care of reasonable Washington attorneys acting under the same or similar circumstances.  I hold and express these opinions on a more probable than not basis.  As detailed below, in my opinion the **SFE attorneys, specifically Mr. Wilson and Ms. Fung, fully complied with the standard of care for Washington attorneys in their representation of the Wilcoxes**.

14.    I will not recite the full chronology of the Wilcoxes' activity in *Hoff v. Wilcoxes*, although I have reviewed it via the materials listed above.  However, I do find the following facts especially significant to my opinions, as they detail how **the Wilcoxes' Motion to Vacate likely *never* could have met any of the four factors of *White v. Holm***, 73 Wn.2d 348, 438 P.2d 581(1968), even if another law firm had represented them in lieu of SFE, and even if that law firm had filed the motion in February 2021:

    a.    Because Mr. Wilcox admitted liability for striking Mr. Hoff (D.Wilcox deposition, Exhibit 19, at ¶¶ 3-4); and Hoff's special damages could not reasonably be challenged (Declaration of Dr. Flugstad supporting Hoff's Motion for Default Judgment [testifying to causation, reasonableness and necessity of medical bills]; Deposition of Wilson, at 128:12-129:2 [Hoff's economic damages were accurately represented in the judgment]; the only possible argument the Wilcoxes could make under the first primary factor of a *White v. Holm* analysis—*i.e.*, whether "there is substantial evidence extant to support, at least *prima facia*, a defense to the claim…"—was whether further discovery would provide a basis for challenging the general damage elements of the default judgment award, specifically the award

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

of past general damages of $695,000 and future general damages of $832,000. But the general-damages evidence that Hoff submitted in support of his motion for a default judgment was comprehensive and compelling (*e.g.*, Hoff's medical records documenting injuries and lengthy medical treatment, his own declaration as to the pain and decreased quality of life he experienced, and Dr. Flugstad's testimony that Hoff's injuries were "severe and permanent," Flugstad Decl., ¶ 16). By virtue of the default judgment, the Wilcoxes had no opportunity for discovery, such as a defense medical examination of Hoff, and could not even challenge him via cross-examination (as they might have done at trial). The Wilcoxes therefore had no *evidence* to challenge Hoff's request for general damages (as "blackboarded" in his Motion, page 20), but only *speculation*. Moreover, Hoff requested that the Court perform a reasonableness analysis under *Chaussee v. Maryland Casualty Co.*, 60 Wn. App. 504, 803 P.2d 1339 (1991)(in his Motion, pages 11, 22-23), even though he sought a default, not stipulated, judgment. The court explicitly performed such an analysis when it granted the motion (see Order Granting Default Judgment, at Conclusions ¶ 3), making it very difficult for the Wilcoxes to later challenge. (The court reiterated Hoff's damages a year later in its Order Denying Motion to Vacate, ¶ 20: "The Court further finds that Plaintiff provided evidence to support the damages he sought…") In sum, it appears nearly impossible, on these facts, that the Wilcoxes in moving to vacate could demonstrate "substantial evidence" that a jury would award Hoff a smaller general damages award than he received via default.

b.  All the information pertinent to evaluating the <u>second primary factor</u> of a *White v. Holm* analysis—*i.e.*, whether the "moving party's failure to timely appear … was occasioned by mistake, inadvertence, surprise or excusable neglect"—had

transpired *prior* to Integon's[1] retention of SFE to represent the Wilcoxes on or about February 22, 2021. The year of such activity not only was not the fault of SFE's attorneys, but also the unfamiliar case history complicated SFE's ability to discover and document them as part of the motion to vacate. *See, e.g.*:

- February 1, 2020: service of Hoff's complaint on the Wilcoxes (D.Wilcox deposition, Exhibit 19, at ¶ 8);

- February 3, 2020: alleged voicemail from Mr. Wilcox to Integon adjuster advising that he'd been served (D.Wilcox deposition, Exhibit 19, at ¶ 9);

- February 3, 2020: call between Mrs. Wilcox and Integon adjuster in which she mentions "this lawsuit" and that they planned to confer with an attorney the next day (E.Wilcox deposition, Exhibit 8);

- February 2020: Wilcoxes' meeting with attorney Warren in which they discussed Hoff's lawsuit and Warren allegedly promised to file an appearance and talk to plaintiff's counsel (D.Wilcox deposition, Exhibit 19, at ¶¶10-14);

- March 11, 2020: entry of default (Integon's Amended Complaint, Dckt. No. 42, at ¶ 82 and Exhibit K);

- April 2020: Mrs. Wilcox's call with Warren in which she asked for an update on the *Hoff* case, Warren said "no news is good news" and he agreed to "look for paperwork" showing an appearance (E.Wilcox deposition, Exhibit 10, at ¶ 16);

- October 16, 2020: entry of Default Judgment (Integon's Amended Complaint, Dckt. No. 42, at ¶ 83 and Exhibit L);

- November, 2020: Integon adjusters allegedly called each of the Wilcoxes to

---

[1] As Integon itself appears to have done in this matter, I use the name "Integon" to refer to both Integon Preferred Insurance Company and National General Insurance Company. *See, e.g.*, Deposition of Trotta-Greer, at 7:9-10:14 (National General employee testifying as Integon 30b6 witness, stating that Integon is an underwriting company for National General), 177:20-25 (Integon has no employees of its own); Deposition of Morelli, at 7:10-8:10 ((National General employee testifying on behalf of Integon). I combine the names of these entities only for brevity and not as an opinion of their relationship.

DECLARATION OF ROBERT L. CHRISTIE - 9

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

inform them of the Default Judgment ((D.Wilcox deposition, Exhibit 19, at ¶ 16; E.Wilcox deposition, Exhibit 10, at ¶ 17)[2];

- November, 2020: the Wilcoxes allegedly called Warren to inform him of the Default Judgment, and Warren told them he'd filed an appearance (D.Wilcox deposition, Exhibit 19, at ¶¶ 17-18; E.Wilcox deposition, Exhibit 10, at ¶¶ 18-19);

- February 22, 2021: an Integon adjuster called Warren about the Default Judgment and he told her he'd filed an appearance (Deposition of Warren, at Exhibit 10; Deposition of Smalley, at pp. 87-88); and

- Absence of *any* notice of appearance, motion for reconsideration, motion to vacate or communication by the Wilcoxes to Hoff's counsel for more than a *year* after Hoff served the Wilcoxes, until SFE appeared for them on February 24, 2021.

c.     Due to their own errors, the Wilcoxes made it difficult to prove the <u>first secondary factor</u> in a *White v. Holm* analysis—whether "the moving party acted with due diligence after notice of entry of the default judgment." The Wilcoxes admitted that they had delayed for a full three months after receiving such notice, *prior* to SFE's involvement:

> Around November 2020, another adjuster from [Integon] reached out to me to inform me of the default judgment and entry of judgment. This was the first time I found out about the Entry of Judgment.

D.Wilcox Dep., Ex. 19, ¶16. *See also*, E. Wilcox Dep., Ex. 10, ¶17 (same).[3] This

---

[2] As discussed in paragraph 14.c of this declaration, the Wilcoxes redacted this allegation exactly a year after they first testified to it. But that was their sworn testimony supporting their Motion to Vacate, as well as in their initial pleading in this Court.

[3] In drafting the declarations' allegations of a November 2020 phone call, SFE was limited to the Wilcoxes' recollections; the phone recordings and transcripts were not produced until this case. Pierce Dec., ¶ 10. But the Wilcoxes had ample time to review their memories and the written summaries. The SFE lawyers talked with each of the Wilcoxes to prepare their declarations, E.Wilcox dep., 201:15-202:23.  The Wilcoxes reviewed the drafts for a week, and each then talked to SFE again to make corrections. SFE 002388-2408; SFE 002487-2488; SFE_005120; SFE_005119. There were several versions of each declaration. Wilson Dec, 63:13-14. Mrs. Wilcox made multiple corrections, including to her legal name and to

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

testimony is within the declarations filed in support of their Motion to Vacate, which

the superior court in denying the motion adopted as a finding of fact:

> The Court further finds that Defendants Daniel and Elizabeth (*i.e.*, "Jane Doe") Wilcox admitted in their Declarations that they became aware of the Default Judgment in November of 2020 and were advised of the same by an adjuster from their insurance company...

> [N]o attorney ever filed a Notice of Appearance in the present case before [SFE did so on] February 24, 2021.

Order Denying Motion to Vacate, ¶ 10, 8. SFE was not retained until three months *after*

the Wilcoxes' admitted notice of default. (Smalley dep., Ex. 7, p.3 [Integon retained

SFE on 2/22/21], 2/24/21 Notice of Appearance by SFE). The Wilcoxes' three-month

delay between November 2020 and February 2021 was therefore not the fault of Smith

Freed.

In fact, the superior court found that the Wilcoxes inexcusably delayed

appearing in suit for almost a *year*, all prior to SFE's involvement (and therefore not

attributable to it):

> [P]ersonal service of process was made upon Defendants Daniel and "Jane Doe" Wilcox on February 1, 2020…

> [N]either Defendants, nor any attorney on behalf of Defendants,…ever indicated any intent to defend Defendants this case prior to the entry of the Default Order [on March 11, 2020]…

> Defendants failed to act with due diligence in appearing in this litigation before … the Default Order was entered.

---

whom a phone call was made 18 months prior. SFE 002584, SFE 002557-2562. The Wilcoxes finally signed their declarations on September 29, 2021, and SFE filed the motion to vacate the same day. SFE 002584, SFE 002686.

When the Wilcoxes sued SFE in this court on February 11, 2022, they continued to assert that they had learned of the Default Judgment in November 2020. *See* Wilcoxes' Answer, Dckt. No. 22, at Third-Party Complaint ¶ 37. It was more than seven months, exactly a year after they signed their declarations for SFE, that they retracted their allegations about notice, and now asserted that they didn't learn about the Default Judgment until February 2021. *See* Wilcoxes' Amended Answer filed 9/29/22, Dckt. No. 73, at Third-Party Complaint ¶41. *See also*, E.Wilcox dep. dated 11/18/22, p. 26. Had the Wilcoxes made this correction before or even within a few weeks of SFE filing their Motion to Vacate, the superior court would have evidence of only a seven-month delay, not ten months. That would have improved the Wilcoxes' chances of proving due diligence, and therefore possibly winning their Motion to Vacate.

DECLARATION OF ROBERT L. CHRISTIE - 11

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

…[A]n Order of Default was properly entered on March 11, 2020…

Defendants failed to act with due diligence in appearing in this litigation … after the Default Order was entered.

…[M]ore than seven months elapsed between the Default Order being entered against Defendants on March 11, 2020 and a Default Judgment being entered against Defendants on October 16, 2020….

Defendants Daniel and Elizabeth (i.e., "Jane Doe") Wilcox admitted in their Declarations that they became aware of the Default Judgment in November of 2020…

Smith Freed Eberhard, first filed a Notice of Appearance in the present case on February 24, 2021.

… Defendants' failure to timely appear and answer the Complaint in this case was not occasioned by mistake, inadvertence, surprise, or excusable neglect.

Order Denying Motion to Vacate, ¶¶ 2, 4, 7, 3, 7, 5, 7, 10, 12, 16. The court, sitting in equity, evidently determined that the Wilcoxes' protracted avoidance of defense, even prior to notice of the default judgment, was germane to its conclusion that "[t]here is no equitable basis for vacating the court's [default] judgment" of a year prior. In other words, although the court did call out SFE's seven-month delay between appearing and filing the motion to vacate (Order Denying Motion to Vacate, ¶¶13-14), it also considered and explicitly recited the Wilcoxes' prior *year* of inactivity between their deadline for appearing/answering (2/21/**20**, twenty days after service of the Complaint) and their appearance via SFE (on 2/24/**21**).

    d.    The Wilcoxes signed a declaration attesting to their lack of assets and other insurance in July 2018, six months before Hoff filed suit against them. (D.Wilcox Dep., Ex. 13.) There is nothing in all the materials I have reviewed to suggest that the Wilcoxes' financial situation ever changed for the positive, and certainly no information suggesting that it changed anytime between late February 2021 (when SFE began representing the Wilcoxes) and October 2021 (when SFE argued the motion to vacate). In other words, Hoff's ability to collect on the judgment did not change during SFE's

DECLARATION OF ROBERT L. CHRISTIE - 12

representation. As it relates to the <u>second secondary factor</u> in a *White v. Holm* analysis—whether "no substantial hardship will result to the opposing party" by setting aside the default—there is no evidence that I have seen to suggest that SFE's delay in filing the motion created any hardship to Mr. Hoff. No action was ever undertaken to enforce the judgment.

15. **SFE did not violate the standard of care by taking seven months from when they were first retained to file the Wilcoxes' motion to vacate the default judgment**.  In those seven months the SFE lawyers demonstrated a diligent, reasonable examination of all viable arguments for the Wilcox's Motion to Vacate and pursued all available and potentially available evidence to support those arguments. In my review of the materials I noted the following approximate chronology of Smith Freed's activities on behalf of the Wilcoxes:

| Date/s | SFE Activity |
|---|---|
| 2/22/21 – 3/1/21 | Accepted case assignment from Integon; filed notice of appearance in *Hoff*; wrote to clients inviting an introductory call; researched underlying auto accident documents including identifying witnesses; analyzed the claims against the Wilcoxes (*i.e.*, review of Hoff's Complaint, Order Granting Default Judgment, and other case documents); called adjuster to learn settlement negotiation history (including that it had tendered policy limits) and that the Wilcoxes' attorney had appeared in the case:<br><br>When [she] spoke with the insured's atty he confirmed to having filed a NOA … he's supposed to get [her] a copy of the notice filing which he hasn't to date.<br><br>SFE's detailed billing entries for this period mention "identify[ing] possible resolutions to vacate the entry of judgment and/or an attempt to resolve this case" and specific potential arguments for the motion to vacate: "liability," "if the client was personally served," "Plaintiff's injuries, treatment, and damages."<br><br>SFE_005061-62 (SFE billing records); SFE_005128-30 (SFE call notes); INT_001269 (adjuster claim note); Smalley Dep. 96:16-24. |
| 3/2/21-3/12/21 | Checked online docket to confirm Warren did not file formal Notice of Appearance; called Hoff's counsel asking whether she had accepted Integon's policy limits tender, confirming that she didn't plan to execute on the judgment, explaining that the Wilcoxes were judgment-proof, and discussing potential settlement options; called Warren "to discuss…how this matter resulted in default": |

DECLARATION OF ROBERT L. CHRISTIE - 13

| | |
|---|---|
| | He says he believes the entry of judgment was done in error. He had plenty of communication with the Plaintiff's side before the lawsuit and was not notified of the lawsuit. He said he would provide us with documents he can find (NOA, documents receivied, etc)<br><br>SFE also reviewed Hoff's medical records and conducted a "background search of Plaintiff, including online and electronic sources for prior complaints, accidents and claims," presumably searching for preexisting medical conditions by which to attack Hoff's damages.<br><br>SFE_005062-63 (SFE billing records); SFE_005126-27 & SFE_005126a (SFE call notes). |
| 3/16/21-<br>4/7/21 | Conducted introductory client call lasting more than 90 minutes to discuss, *e.g.*, Warren's promising them he had filed an NOA, plus follow-up emails and calls requesting client documents; repeatedly emailed Warren seeking the NOA and file materials he had promised, to support defenses of informal appearance and mistake:<br><br>Mr. Warren would've been able to provide us with exactly what he filed, for example, you know, a copy of what he filed, maybe he entered a different case number. Reaching out to the court would not help if we didn't have that information….<br><br>[T]he fact that he did communicate [with plaintiff's counsel] that was, in fact, some sort of appearance to the other counsel, to plaintiff's counsel.<br><br>(Fung Dep., at 33:1-17) SFE's billing described "[i]dentif[ying] a defense strategy to move this case forward following conversation with the clients," "identif[ying] necessary support/documents and evidence [to] vacate the judgment" and analyzing "early settlement possibilities."<br>.<br>Warren dep. pp. 148-153 & Exs. 19-20, 9 (Warren's admission of receiving SFE's emails and not responding); SFE_005063 (SFE billing records). |
| 4/8/21-<br>5/18/21 | Strategy calls and emails with client developing defense of their reliance on Warren and Integon to defend them; Smith Freed's advice regarding limits of its representation and to obtain independent counsel to pursue claims against Warren or Integon; Smith Freed's second call with Warren in which he said he was still looking for the NOA he filed but he had a new computer system complicating his search; client's own call with Warren in which he agreed to locate and produce his records but needed to check old computer system; client's six weeks of efforts to obtain her phone records to find evidence of client notifying insurer of *Hoff* lawsuit.<br><br>SFE_005123 & SFE_005123a; Fung dep. pp. 22-23; SFE 002570-2573; E.Wilcox dep. p. 192; SFE 002625-2628; Smalley dep. p. 100 & Ex. 1; SFE 002660-2665; E.Wilcox dep. pp. 110-120; SFE 002646-2651; SFE_005122 & SFE_005122a; SFE_005121 & SFE_005121a; Wilson Dep. pp. 53, 115-17; |

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

| | |
|---|---|
| | SFE_005064 & SFE_005066 (SFE billing records); E.Wilcox dep. pp. 17, 194-96 (admitting that as of late May 2021, she was still seeking evidence of her reliance on Integon, needed to support the motion to vacate). |
| 5/20/21-7/9/21 | Rejected proposed defense attacking Hoff's counsel for not informing Integon of lawsuit; left five to ten voicemails for Warren continuing to seek his file materials or else declaration testimony; emailed the Wilcoxes on 6/23/21 that they were still working on the motion to vacate. SFE's billing entries described specific documents, declarations and possible experts to support the motion for default; analysis of whether Smith Freed could pursue discovery (*e.g.*, Hoff's medical records); that Smith Freed was "[i]dentif[ying] alternatives to a motion to vacate the entry of default as a motion is unlikely to be successful given currently known facts surrounding the entry of default"; and documented the client's interest in making claims against Warren and Integon or, alternatively, filing bankruptcy.<br><br>Wilson Dec., p. 53; SFE 002574-2576; SFE_005066-67 (SFE billing records). |
| 7/16/21-8/24/21 | Analyzed Hoff's medical records (almost 500 pages of which had been submitted with his Motion for Default Judgment); updated adjuster on intent to move to vacate; prepared communications between Integon and Hoff's counsel to be attached to a declaration of Integon adjuster; attempted to contact adjuster but discovered she had left Integon's employ; asked subsequent adjuster to sign the declaration but was declined; called each client for information to include in their declarations; drafted client declarations and motion to vacate. Mrs. Wilcox contends that Smith Freed now possessed all the documents that the Wilcoxes had provided, and should have been able to file the motion by the summer of 2021:<br><br>    [I]f we were on the forefront of their mind, they would have had everything taken care of at least by early summer, you know, because we had already given them all the documents we had.<br><br>E,Wilcox dep. 227:16-20. But lay clients may not understand the analytical, adjuster reporting and writing—rarely involving or visible to the clients—that is required to complete a motion.   INT_000363; Fung dep. p. 30, 41-42; SFE_005068-69 (SFE billing records). |
| 9/21/21-9/29/21 | Finished drafting motion to vacate, Fung's declaration and proposed Order; sent copies of motion and declarations to clients; called each one and incorporated their edits into several versions of the declarations; obtained signed declarations; **filed motion to vacate** and supporting declarations the same day they received clients' signatures; and sent copies to clients. Billing records also included "identif[ying] whether oral arguments will benefit the clients Motion to vacate" and "identifying exhibits that would assist the Judge in finding that Defendants informally appeared."<br><br>SFE 002388-2408; SFE 002485; SFE_005120 & SFE_005120a; SFE_005119 & SFE_005119a; SFE 002584; E.Wilcox dep. p. 202; SFE 002557-2562; Wilson |

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

| | |
|---|---|
| | Dep. pp. 63:13-14; SFE 002498, SFE 00268; SFE 002584; SFE 002686; Motion to Vacate; SFE 002409-2472 & 2533-2534; SFE_005070-71 (SFE billing records). |
| 10/4/21-10/6/21 | Emailed Warren requesting his assistance (*i.e.*, his declaration) for reply brief; drafted the reply brief, prepared for hearing, called Warren the day before hearing requesting that he attend and present live testimony; argued at hearing; met with plaintiff's counsel immediately following hearing to discuss possible settlement with assignment of the Wilcoxes' bad faith claim to Hoff; called client to discuss hearing. |
| | SFE 002692, Wilson dep. pp. 37, 53, 59, 76, 78-79, 92, 140-41 & Ex. 3; SFE_005118 & SFE_005118a; SFE_005071-72 (SFE billing records). |

16. Under a hindsight analysis, that was of course not available to SFE's attorneys at the beginning of their representation, it appears from the materials I reviewed that Smith Freed investigated at least eleven potential arguments for the Motion to Vacate:

a) Whether Dan Wilcox could reasonably deny liability for the underlying accident (no; he turned "right on red" into a pedestrian in a crosswalk, who had the right of way);

b) Whether Hoff's service of process was improper (no; the Wilcoxes admitted proper service);

c) Whether attorney Warren had filed a formal Notice of Appearance (NOA) of behalf of the Wilcoxes in *Hoff v. Wilcoxes*, prior to entry of the default judgment (no);

d) Whether Warren attempted to file an NOA but through mistake it was not filed, such as if he accidentally filed it in the wrong case, attempted to mail or email the NOA instead of using the mandatory electronic filing system,[4] or if transmission failed on the electronic filing protocol (unknown; SFE had Warren's telephonic assertion that he'd filed the NOA, but SFE was unable to obtain admissible evidence because Warren failed to provide his file for review, failed to respond to telephonic and email

---

[4] *See* Snohomish County Local Court Rules 30(a)(1)(a) ("Attorneys shall electronically file (e-file) all documents using the Clerk's online e-filing application unless this rule provides otherwise"); 30(a)(1)(e) ("If an attorney files a document in paper form and does not have an approved waiver from mandatory e-filing, the Clerk is authorized to reject the document...") *See also*, https://efilewa.tylertech.cloud/OfsEfsp/ui/landing (portal to Clerk's online Odyssey File & Serve e-filing system).

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

requests to discuss, failed to provide declaration testimony and failed to appear at the motion hearing);

e) Whether Warren's alleged communications with plaintiff's counsel constituted an informal notice of appearance, entitling him to written notice before default judgment was entered, under CR 55(a)(3)(unknown; SFE had Warren's telephonic assertion that he'd "had plenty of communication with the Plaintiff's side,"[5],[6] but SFE was unable to obtain admissible evidence of these communications such as copies of written communications or Warren's declaration);

f) Whether the Integon adjuster's communications with plaintiff's counsel constituted an informal notice of appearance (partly; only the written communications were located as the adjuster author had left Integon's employ several months before filing of the motion to vacate);

g) Whether the Wilcoxes had reasonably relied upon Warren and Integon to appear in on their behalf in Hoff v. Wilcoxes, thereby constituting a mistake meriting vacation of the default (the Wilcoxes, at least, felt strongly that this was the case, and their own testimony was admissible on the subject after other desired evidence—such as their cell phone provider's record of Dan Wilcox's alleged 2/3/20 voicemail to Integon, or Warren's testimony that he promised the Wilcoxes that he would appear in suit—was unobtainable);

h) Whether Hoff's asserted wage loss of $9,700 was unrelated or excessive (no, as Hoff's period of wage loss matched the time he was documented to be hospitalized and/or wheelchair-bound; notably, despite Hoff apparently not working again, Hoff's wage loss request was quite modest and he did not seek vocational training

---

[5] Warren told Cliff Wilson on 3/2/21 that he "had plenty of communication with the Plaintiff's side before the *lawsuit*." But Warren did not meet the Wilcoxes until after they were served. Therefore, presumably Warren meant to say "before the *default judgment*," which was the subject of their conversation.

[6] Hoff's counsel Lester alleged in her 3/11/20 Declaration (filed with Hoff's motion for default), ¶ 4, that she had had no contact with the Wilcoxes or their counsel,

DECLARATION OF ROBERT L. CHRISTIE - 17

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

or impaired earning capacity);

i)   Whether Hoff's reported injuries were unrelated to the accident (no; Hoff had no relevant pre-existing conditions or subsequent injuries according to SFE's social media search and the only available medical records information, which were Hoff's post-accident medical records and Hoff's testimony regarding his pre-accident health, both within Hoff's Motion for Default Judgment; the declaration of Hoff's medical expert opined that his injuries were all causally related; the police report including eyewitness statements concluded that "Hoff suffered obvious femur, hip and knee injuries from the collision"; and the physics of the accident as described by Hoff and the eyewitnesses—*e.g.*, pedestrian "hit by a car and thrown into the air and then into the street"—make any other cause highly unlikely);

j)   Whether Hoff's medical treatment was unnecessary, unrelated or unreasonable (no; post-accident records described an ordinary, expected-cost treatment path that could be readily seen as such, without consultation by a medical records reviewer, by a reasonable lawyer practicing in the area);

k)   Whether Hoff's medical billings of $80,896.52 were excessive for the local area (no, Mr. Wilson determined that the costs were reasonable for the area, for the treatment provided, and I agree based on my own experience); and

l)   Whether Hoff's awarded general damages (of $695,000 past and $832,000 future) were excessive (Smith Freed evidently decided they could be, although in my experience with trials involving similar injuries to no-fault plaintiffs, Hoff's general damages were within the range of reasonable expected jury outcomes, as evidenced in part by the seven jury verdicts Hoff's counsel attached to her motion for default judgment).

SFE ruled out arguments a-c and h-k; could not obtain admissible evidence for d-e; and included the remaining arguments f, g and l in their filed motion. Additionally, SFE's attorneys made

DECLARATION OF ROBERT L. CHRISTIE - 18

settlement inquiries of plaintiff's counsel in an effort at alternative resolution of the matter. I did not find any other viable potential arguments, *i.e.*, anything that a reasonable Washington attorney would have investigated and/or argued in support of a motion to vacate on these facts.[7] I also do not believe that SFE's attorneys dawdled, delayed or focused overlong in pursuing potential arguments and evidence (or of any particular argument or desired evidence). Simply put, Mr. Wilson's and Ms. Fung's efforts to develop the Wilcoxes' Motion to Vacate were well within the standard of care.

17.    The materials I reviewed document that in preparing the Motion to Vacate, the SFE attorneys made reasonable efforts to obtain support for the motion to vacate, including:

    A.    Seeking records and/or a written declaration from the Wilcoxes' prior attorney Warren, who had insisted to the Wilcoxes and SFE that he had filed a formal notice of appearance as well as communicated with Hoff's counsel prior to entry of default judgment. This work included:

        i.    Two initial phone conversations with SFE, in which Warren agreed to give them copies of his NOA and complete file.

        ii.    After these initial calls Warren did not respond to SFE's messages, never sent any documents to SFE nor signed a declaration regarding his communications with Hoff's counsel of the Wilcoxes' motion to vacate.

        iii.    SFE reasonably believed Warren's communications with Hoff's counsel constituted an informal appearance giving the Wilcoxes a right

---

[7] I have reviewed attorney Eric Byrd's analysis of possible new CR 60 arguments in his 5/4/22 letter to the Wilcoxes, INT 003907-12. I do not believe his recommended arguments (*e.g.*, challenging road design via an expert; claiming that Hoff committed misconduct by not proactively informing Integon of the lawsuit), if made by SFE, would have affected the outcome of the Motion to Vacate. Arguing flawed road design, as a defense to Mr. Wilcox turning "right on red" and colliding into pedestrian Mr. Hoff in the marked crosswalk, was not supported by the materials I reviewed nor by the statutory rules of the road.  As to "misconduct through silence," Hoff had no duty to inform Integon of the lawsuit; as further discussed in paragraph 23, claim negotiations between a plaintiff's lawyer and the defendant's insurer do not constitute an appearance that would give rise to the plaintiff's duty to serve it with any motion for default. The standard of care did not require SFE to make these unviable arguments. I agree with Mr. Byrd in that same letter that a CR 60 motion filed in May 2022 or later would have a "low probability of success," but his proposed, nonviable arguments would not have aided the Wilcoxes even if filed in February 2021.

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

1    to vacate the judgment.

2    iv.    SFE further reasonably believed that if there were evidence that Warren

3    had tried to file a NOA but failed (*e.g.*, printouts from Odyssey) that it

4    might constitute a mistake justifying vacation of the default judgment,

5    as well as explain Warren's confidence that he had indeed filed an NOA

6    despite the court docket's evidence to the contrary.

7    v.    SFE continued trying to reach Warren up through hearing on the motion

8    to vacate.

9    B. The Wilcoxes sought certain phone records in support of their motion to vacate,

10    which took six weeks.

11    C. The Wilcoxes considered filing a bad faith claim against their insurer, and

12    consulted with independent attorneys regarding it, both before and after filing of

13    their motion to vacate. Mr. Wilson gave sound advice to the Wilcoxes that they

14    should consult with independent counsel regarding rights they may have both

15    against their insurer and Mr. Warren.  The Wilcoxes eventually did file such

16    claims and entered into a quasi-covenant judgment with Hoff (conditionally

17    assigning the claims to him in exchange for a temporary forbearance of Hoff's

18    collection of the default judgment). The Wilcoxes' search for independent

19    counsel with whom to consult on these claims and a potential assignment

20    evidently dampened their motivation to move to vacate and delayed its filing.

21    D. SFE sought a declaration by the Wilcox's insurance adjuster, who had negotiated

22    for settlement of Hoff's claim, to support the motion to vacate by contending that

23    such communications constituted or included notice by the insurer to Hoff that it

24    intended to defend the Wilcoxes in any related lawsuit. SFE was unable to reach

25    the adjuster, who had left the insurer's employ, and could not locate another

26    adjuster to testify. SFE then had to reframe the declaration as one from lawyer,

27    Joyce Fung.

DECLARATION OF ROBERT L. CHRISTIE - 20

SFE's evidence was well presented to the trial court to support its argument under the second primary *White* factor: that the Wilcoxes' failure to appear in the action was the product of a mistake, inadvertence, surprise, or excusable neglect.  It is clear to me from my review of the materials that Mr. Warren undertook to represent the Wilcoxes in conjunction with the Hoff lawsuit and gave them assurances that he would take the steps necessary to protect their interests.  Mr. Warren believed he filed a Notice of Appearance on their behalf, something demonstrably wrong.  If the SFE attorneys were to have any hope of prevailing on their motion to set aside the default, given the lack of a compelling argument on the <u>first</u> *White* factor, they properly spent the time and effort to collect what evidence they could on *White*'s <u>second</u> factor (along with continued efforts to find evidence of an informal appearance that would preempt the *White* analysis altogether).  For SFE to have rushed in and filed their motion without this evidence would have rung hollow. More importantly, it would not have succeeded, because it would not contain any evidence justifying the requested relief.

18. The applicable standard of care for attorneys preparing motions is *not* necessarily "due diligence" under RPC 1.3 as Professor Strait discusses. *See Barrett v. Freise*, 119 Wn. App. 823, 842, 82 P.3d 1179 (2003) (standard of care owed to any particular client "may or may not be the same standard contemplated by the ethics rules"). Analysis of whether a lawyer acted with "reasonable diligence and promptness" depends on the facts and circumstances of the particular case. *See* CR 60(b) (motions for relief from judgment "shall be made within a reasonable time…"); *Ha v. Signal Elec., Inc.*, 182 Wn. App. 436, 454, 332 P.3d 991 (2014)(in motion to vacate default judgment, "[w]hat constitutes a 'reasonable time' depends on the facts and circumstances of each case"). Attorneys are entitled to use their professional judgment in deciding the timing for taking a certain action (such as filing a motion), weighing the benefits that may come from taking time to gather additional evidence to support their argument against the potential benefit from filing the motion earlier.  Here, that is precisely what the SFE lawyers did: used their judgment to gather evidence to explore the viability of arguing there had been an informal appearance and to support their factor two analysis under *White*.  These lawyers

DECLARATION OF ROBERT L. CHRISTIE - 21

documented contemporaneously, in time records and in file notes, what they were doing and why they were doing certain things. This is not a case of attorneys with a workload that prevented them from handling this matter. The record demonstrates that the SFE attorneys worked diligently and methodically to investigate possible arguments and to gather the evidence they presented that the Wilcoxes should be legally excused for not having filed a formal appearance and defended against the suit filed by Mr. Hoff.

19. The default judgment was entered four months before SFE was retained, yet there was not (upon SFE's retention) and has never been any collection action directed against the Wilcoxes. Mr. Wilson confirmed within two weeks of being retained that Hoff's counsel had no plans to execute on the judgment. SFE_005127 (Mr. Wilcox's records of his 3/2/2 call with Ms. Lester). Lack of collection efforts was unsurprising, as the Wilcoxes lacked the assets to pay (7/27/18 asset declaration, D.Wilcox Dep., Ex. 13), and Hoff's real target for collection was Integon (*see, e.g.*, the "courthouse steps" discussion about the Wilcoxes assigning claims to Hoff, Wilson Dec., pp. 76,78-79; and Hoff's letter one week later demanding payment of $1.6 Million from Integon, not the Wilcoxes, SFE_000356-SFE_000362). On these facts, it was within the standard of care for SFE's lawyers to continue working for the *best* evidence they could locate for their motion, rather than to file immediately.

20. Moreover, as discussed in paragraph 14.d above, I have seen no evidence that the Wilcoxes' financial position, and/or Hoff's ability to collect on the judgment from the Wilcoxes, changed in the course of SFE's representation. Nothing negative occurred to their legal position in the seven months between SFE's retention and their filing of the motion to vacate the default judgment. Of note, SFE communicated regularly with the Wilcoxes throughout the representation. I counted more than 35 substantive emails, Zoom and telephone conferences (per SFE's invoices, SFE_005071- SFE_005077), and SFE usually responded to the Wilcox's inquiries within 48 hours. (The longest response time was six days, between SFE 002574-2576 and SFE 002574-2576.) Had collection activities begun or been threatened, it appears clients and counsel were in contact to discuss it.

DECLARATION OF ROBERT L. CHRISTIE - 22

21.    The motion to vacate was filed within one year of entry of the default judgment (CR 60). This 12-month time frame is integral to the standard of care for a practicing lawyer, setting the outer limit for filing a motion to set aside a default. That rule provides that motions to vacate "shall be made within a reasonable time", but specifies that motions based on section (1)—"[m]istakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order"—must  be brought "not more than 1 year after the judgment . . . was entered or taken."  As such, the rule itself, directed to the lawyers bringing motions, uses an open-ended time frame of reasonableness, which it further defines in the case of a section (1) motion as no more than 12 months.

22.    Professor Strait's opinion fails to consider the attorney judgment that the SFE brought to bear on assessing how to maximize the likelihood of succeeding on the motion to set aside the default.  As a non-practicing lawyer, Professor Strait fails to consider the realities of practice that a reasonable practicing lawyer in SFE's position would have to encounter and navigate.  Professor Strait has chosen to put a negative interpretation around Mr. Wilson's candid deposition testimony about his workload during the relevant time frame.  That Mr. Wilson is a busy trial lawyer with multiple client demands does not support a characterization of his actions in this case as being less than diligent.  Lawyers can, in hindsight, say that they could have done things differently, or wish they had had more time. But litigation, especially defense litigation, is reactive by nature and practicing lawyers can rarely predict their workload in advance with precision. I have studied the records and materials through the lens of whether the SFE attorneys acted in real time with due diligence in their representation of the Wilcoxes, given their focus on the potential argument that there had been an informal appearance and on the elements of the *White* test for setting aside a default judgment.  As stated, in my opinion these lawyers acted with due diligence in their representation of the Wilcoxes and fully complied with the standard of care for Washington lawyers.

23.    **The SFE lawyers did not violate the standard of care in the way they proffered evidence of Integon's communications with Hoff**. Among SFE's evidentiary

DECLARATION OF ROBERT L. CHRISTIE - 23

proffers for its Motion to Vacate was a declaration purporting to authenticate eleven communications between Meghan Smalley (an Integon claims adjuster)[8] and Hoff's counsel discussing Hoff's claim and potential settlement. *See* 9/29/21 Fung Dec. Ms. Fung, not Ms. Smalley, signed the declaration, and the superior court struck it as hearsay. Order Denying Motion to Vacate, at ¶ 21. Even if adjuster Smalley had executed the declaration and it was not stricken, the declaration and its exhibits would not have supported the motion. As a matter of law, claims settlement communications between a plaintiff's attorney and the defendant's insurer do not constitute an appearance that would give rise to the plaintiff's duty to serve it with any motion for default. *Rosander v. Nightrunners Transport, Ltd.,* 147 Wn. App. 392 (2008)(two years of negotiations between a plaintiff's lawyer and the defendant's insurer did not constitute an appearance).

24.    In some contexts, evidence of pre-default communications with a plaintiff's attorney *regarding litigation* can constitute an informal notice of appearance. "[T]he defendant must go beyond merely acknowledging that a dispute exists and instead acknowledge that a dispute exists *in court*." *Morin v. Burris*, 160 Wash. 2d 745, 758-59, 161 P.3d 956 (2007) (emphasis added). *See also Servatron, Inc. v. Intelligent Wireless Prod., Inc.*, 186 Wn. App. 666, 676 (2015) (vacating default judgment because defendants' attorney contacted plaintiff's lawyer by phone and e-mail after plaintiff filed suit, informed him that he represented the defendants with regard to the suit's dispute, and acknowledged the pending litigation). But Ms. Smalley never discussed litigation with Hoff's counsel. Smalley dep., 67:9-16 (Smalley sent multiple letters and emails to Hoff's counsel), 66:19-23 (no response from Hoff's counsel to Integon's communications), 109:14-17 (Smalley never spoke to Hoff's counsel), 86:4-14 (Smalley's communications with Hoff's counsel prior to entry of the default judgment did not discuss a lawsuit). Thus, the facts that Ms. Fung's declaration was executed by her (not Smalley, nor another Integon adjuster) and that it was stricken as hearsay made no difference to the

---

[8] Smalley was employed at Integon from June of 2014 to June of 2021, including the entirety of Hoff's claim up until retention of Smith Freed. Smalley Dep., 14:5-6, 20:7-8.

DECLARATION OF ROBERT L. CHRISTIE - 24

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

outcome of the Motion to Vacate.

25**. The SFE lawyers did not violate the standard of care by not moving for reconsideration of the order denying the Wilcoxes' motion to vacate**.  The trial court took this matter under advisement following oral argument so that he could again review the materials he had filed.  The appellate standard of review of the court's decision (to deny the motion to vacate the default judgment) is abuse of discretion.  The grounds for filing a motion for reconsideration are set forth in CR 59(a).  In my opinion none of those grounds would have been viable here. A motion for reconsideration would have been fruitless.  Further, two days after the Court's Order the SFE attorneys received Ms. Lester's letter presenting a time-limited demand of settlement directed to the insurer.  Alternatively, the letter solicited interest in the Wilcoxes assigning their bad faith claims against their insurer to Mr. Hoff in exchange for Hoff agreeing not to collect on the judgment (*i.e.*, covenant judgment).  Mr. Wilson reasonably focused on the covenant judgment option for resolving the entire matter. Assignment would be a better outcome for the Wilcoxes than pursuing a motion for reconsideration (which would merely return them to litigation with Hoff).  He prepared a comprehensive status letter to his clients outlining the outcome of the motion and the contents of the demand letter.  SFE 002491-2492. By foregoing reconsideration, SFE still had time to evaluate the potential for an appeal and time to discuss this option with the Wilcoxes in the full context of options.

26.  **The SFE lawyers did not violate the standard of care by not appealing the order denying the Wilcoxes' motion to vacate**. On November 9, 2021 the Wilcoxes instructed SFE not to appeal. Mr. Wilson documented this decision in his notes during the meeting, SFE_005115, and in an email to Integon adjuster Aaron Garcia after the meeting. SFE_3516. Both Wilcoxes admitted in their respective depositions that they had considered the option of appealing and instructed Mr. Wilson not to appeal, because they wanted to pursue an assignment with Hoff, or possibly file bankruptcy.  E.Wilcox Dep., 126:10-127:19, 220:20-223:23; D.Wilcox Dep., 109:9-24. I have extensive experience as an appellate lawyer and am very familiar with the standard of review—abuse of discretion—that would have been applied

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

on appeal to review the trial court's decision. In my opinion an appeal from the Order would

have been time-consuming and fruitless.

27.    **The SFE lawyers did not violate the standard of care in how it advised the**

**Wilcoxes about a *supersedeas* bond**.    Mr. Wilson corrected his initial advice to the Wilcoxes

about the need for a supersedeas bond. Wilson Dep. 71:24-73:21, 81:11-83:3 & Ex. 7. The

Wilcoxes' instructions to SFE not to file an appeal were independent of any issue about a bond:

> 3 Q And in this call, you instructed Cliff
> 4 not to appeal and, correct, he did not appeal? That's
> 5 all correct?
> 6 A Yes, correct.
> 7 Q So I'd like you to imagine that all of that is
> 8 exactly the same as it did happen with one difference.
> 9 Let's imagine that there was no discussion of any bond
> 10 in that conversation. So you did not -- you did not
> 11 think you had to put up any money in order to appeal.
> 12 A Correct. Okay.
> 13 Q Would you still have instructed him in that
> 14 call don't appeal, I want to pursue the assignment
> 15 option instead?....
> 24 A To be honest, I believe that we still would
> 25 have pursued the assignment ….
>
> 16 Q So even if there hadn't been talk about a bond
> 17 in this phone call on November 9 with Mr. Wilson, you
> 18 still would have chosen to instruct him not to appeal
> 19 so that you could pursue the assignment option;
> 20 correct?
> 21 MR. MOORE: Object to the form, calls
> 22 for speculation.
> 23 A But that is probably correct, yes.

E.Wilcox Dep., 222:3-25, 223:6-24. *See also*, D.Wilcox Dep. 115:3-24 (bond "was in my mind

a moot point, so I probably just tuned it out….we told them not to appeal"), Wilson Dep. 77:1-

5 ("I informed them that I didn't think that mattered and that we did not need the bond to file

the appeal"). Irrespectively, the appeal would have been unsuccessful in my opinion.

28.    **The SFE lawyers did not violate the standard of care in how they advised the**

**Wilcoxes about their potential bad faith and malpractice claims, and about Mr. Hoff's**

**CHRISTIE LAW GROUP, PLLC**
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

**offer of an assignment**. The SFE attorneys made it clear to the Wilcoxes that these issues were outside the scope of their representation and recommended repeatedly that the Wilcoxes secure the advice of separate counsel. This was done as early as May 18, 2021, when Ms. Fung's time entry documented a "[c]all with the client [to] discuss current case status", and that she had "recommended personal counsel to client regarding a potential malpractice and/or bad faith claim." Similarly, on November 19, 2021, Mr. Wilson documented a "[f]ollow-up phone conference with client regarding their discussions with independent counsel and my recent discussion with Plaintiff's." On November 22, 2021 Ms. Fung documented a "[c]all with client to discuss client's questions and concerns regarding independent counsel..." On December 30, 2021 Ms. Fung documented that she had "[r]eviewed, analyzed, and responded to the client via email discussing Client's questions regarding independent counsel regarding the declaratory action against them" and that she had "[i]dentified a defense strategy to discuss current case status with Plaintiff's counsel regarding the proposed "transfer of assignment" to move this case forward." The thoroughness of SFE's explanations on the subject are also demonstrated in the Wilcoxes' current testimony that they understood and complied:

> [W]e had been told by Cliff, I believe, that we needed to talk to independent counsel about the assignment proposal. And so we went….

E.Wilcox dep. 48:5-7;

> 15 Q Do you remember Smith Freed -- after the
> 16 motion to vacate was denied, Smith Freed telling you
> 17 that you had a right and ability to talk to
> 18 independent counsel?
> 19 A Yes.

D.Wilcox dep. 123:15-19; 151:3-19 (Smith Freed advised Wilcoxes to obtain independent counsel to review Hoff's demand letter). By Nov 22-24, 2021, the Wilcoxes had employed independent counsel to advise them on negotiations with Hoff, and so advised the SFE lawyers.

29.   **The SFE lawyers did not violate the standard of care in relation to their settlement efforts with Mr. Hoff**. The scope of SFE's retention by the Wilcoxes' insurer was

DECLARATION OF ROBERT L. CHRISTIE - 27

first to attack the default judgment, and then, if successful, to represent the Wilcoxes against Hoff's claim. SFE's initial focus was therefore to move to vacate the default judgment. Even if the judgment were vacated, the Wilcoxes would still have to face Hoff's suit, in which they had no defense to liability, Mr. Hoff's doctors already testifying (via declaration) to the actual medical bills and permanency of injury. Even if the trial court had vacated the default judgment the Wilcoxes would still have to go through litigation with Mr. Hoff and face the prospect for a large judgment that could well have been substantially higher than the amount set forth in the default judgment.  Verdicts in Washington State, and in particular in Western Washington, have been substantially higher post-COVID, than they were when the default judgment was entered.  The potential for a resolution that involved an assignment of the bad faith claim against the insurer and a covenant not to enforce the default judgment would clearly have been a better outcome for the Wilcoxes.

30.     As early as March 2, 2021, within two weeks of SFE being retained, Mr. Wilson made settlement overtures to Ms. Lester, pointing out that the Wilcoxes couldn't pay the default judgment and seeking to find out what it was that Mr. Hoff really wanted. On October 6, 2021, immediately following hearing on the motion, Mr. Wilson again had settlement (assignment) discussions with Ms. Lester and followed up requesting a written assignment proposal. The Wilcoxes said they were interested in the concept of assigning their claims to Mr. Hoff.  Mr. Wilson followed that up by trying to get Mr. Hoff to make an offer to that effect in writing. On October 13, 2021 (2 days after enter of order denying motion to vacate) Ms. Lester wrote to Mr. Wilson expressing an interest on the part of her client to "discussing the possibility of entering into a Covenant Not to Execute the Judgment against the Wilcoxes . . . "

31.     The settlement communications Mr. Wilson had with Ms. Lester, up through the November 12, 2021 deadline for appeal, were limited to the terms "assignment" and "covenant judgment." Mr. Wilson's advice to the Wilcoxes – *i.e.*, that Hoff seemed to be proposing a covenant not to execute on the default judgment in exchange for Wilcoxes assigning their bad faith claim to Hoff – was a reasonable lawyer's interpretation of what these terms of art mean.

CHRISTIE LAW GROUP, PLLC
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA 98109
206-957-9669

Further, Integon already had offered its policy limits to Hoff, which Hoff refused, so there was no point in Mr. Wilson seeking the insurer's permission for authority to make a monetary offer within the $25,000 limits.  Mr. Wilson knew early on, from Wilcoxes' asset declaration, that the Wilcoxes had no money and were even considering bankruptcy, so there was no point in Mr. Wilson asking them for authority to make a monetary offer.

32.    Under the policy terms and under *Tank v. State Farm*, Integon had a right to settle Hoff's claim against the Wilcoxes without their input. The Wilcoxes had no right to dictate the terms, including timing or amount, of any settlement efforts by Integon. The Wilcoxes retained a right to settle with their own money, but they admittedly had none. Following the entry of the default judgment, and with no change in the financial status of the Wilcoxes, there is no reason for the SFE attorneys to be putting together monetary settlement offers to Mr. Hoff.  The item of value in negotiations was the potential assignment of the bad faith claim against the insurer. Ms. Lester recognized this.  And the SFE attorneys recognized that the Wilcoxes would need separate counsel to advise them on that subject.  The SFE attorneys fully complied with the standard of care by repeatedly recommending to their clients that they seek separate counsel to pursue these negotiations.

33.    **The SFE attorneys fully complied with the standard of care in their work to strategize, seek evidence for, research, assemble, file, and argue the motion for vacation of the default judgment**.  They properly focused on both the potential for arguing that there had been an informal appearance and on the primary *White* factors, trying to explain why the Wilcoxes did not file a notice of appearance—excusable neglect—and what aspect of the case—general damages—would be the focus of a trial.  They used their judgment to strike the balance between the assembly of the evidence demonstrating excusable neglect with the desire to get the motion filed—something first documented in their time records as early as February 26, 2021, three days after accepting the assignment.  It is simplistic to opine that the SFE attorneys did not diligently and promptly represent their clients because they did not file their motion until September 2021.  Further, under *White*, and as further discussed in *Norton v.*

DECLARATION OF ROBERT L. CHRISTIE - 29

*Brown*, 99 Wn. App. 118, 124 (2000), the two secondary factors—due diligence in seeking relief after notice of default and the effect of the delay on Mr. Hoff—are "interdependent." The delay in seeking relief here did nothing to prejudice Mr. Hoff. Unlike in *Akhavuz v. Moody*, 178 Wn. App. 526 (2013), which Ms. Lester argued to the court, there was no risk that evidence on liability would go stale or be lost. This was always a clear case of liability with the only area for trial being on the nature and extent of Mr. Hoff's general damages. To the extent that one could characterize the SFE's attorneys' timing for filing the motion as a lack of diligence, it had no impact on the likelihood of getting the motion granted. The die was cast on this matter when SFE undertook the assignment given the events that preceded the assignment to them. The attorneys did their best under the circumstances presented to them, fully complying with the standard of care for attorneys in Washington under similar circumstances. Nothing about the seven-month delay in filing the SFE attorneys filing the motion to vacate the default either violated the standard of care or compromised the Wilcoxes' interests.

THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE UNDER PENALTY OF PERJURY FOR THE STATE OF WASHINGTON AND THE UNITED STATES OF AMERICA.

DATED this 2nd day of February, 2023.

Robert L. Christie, WSBA #10895
Attorney at Law

DECLARATION OF ROBERT L. CHRISTIE - 30

DECLARATION OF SERVICE

The undersigned declares under penalty of perjury under the laws of the State of Washington that on this date she filed the attached document via the ECF system, which system will send notification and a copy of the foregoing document for delivery to the following persons:

| **Plaintiff's Counsel** | **Counsel for Defendant Hoff** |
|---|---|
| Eliot M. Harris, WSBA #36590 | Kari I. Lester, WSBA #28396 |
| Bethany B. Nolan, WSBA #55788 | Geoff Bridgman, WSBA #25242 |
| Williams Kastner & Gibbs, PLLC | Ogden Murphy Wallace, PLLC |
| eharris@williamskastner.com | klester@omwlaw.com |
| bnolan@williamskastner.com | gbridgman@omwlaw.com |
| **Counsel for Defendants/3rd-Party Plaintiffs Wilcox** | **Counsel for 3rd-Party Defendants Robert W. Warren, Attorney at Law, PLLC dba Wrixton Law Office** |
| Brad J. Moore, WSBA #21802 | Jeffrey T. Kestle, WSBA #29648 |
| Daniel R. Laurence, WSBA #19697 | Nicole T. Morrow, WSBA #51546 |
| Ruby K. Aliment, WSBA #51242 | Forsberg & Umlauf, P.S. |
| Stritmatter Kessler Koehler Moore | jkestle@foum.law |
| brad@stritmatter.com | nmorrow@foum.law |
| dan@stritmatter.com | |
| ruby@stritmatter.com | |

SIGNED at Seattle, Washington, on this 2nd day of February, 2023.


*/s/ Tamara M. Whitney*
Tamara M. Whitney, Legal Assistant

DECLARATION OF ROBERT L. CHRISTIE - 31

**CHRISTIE : LAW GROUP** PLLC

# ROBERT L. CHRISTIE
**PRINCIPAL**



### Christie Law Group, PLLC

**Next level lawyering**—that is what we do at CLG. We handle large exposure cases that demand expertise. Our four partners bring a combined 80+ years of real trial experience. We actively study juror conduct, social and behavior science, developing verdict trends, and visual presentation techniques. We are the only firm of our size in the country with three members in the prestigious national defense organization, the Federation of Defense & Corporate Counsel. Our active engagement in this and other professional organizations connects us with the best lawyers, experts, and consultants in civil trial work from across the country. We bring this to the table when we handle cases for our clients. Frequently brought in to first chair major cases now headed to trial, Bob's deep experience allows him to adapt to the playing field and present the best possible defense.

Bob Christie is the founding principal of Christie Law Group, PLLC. A trial lawyer for over 39 years, Bob has tried over 100 cases throughout Washington State and the U.S. District Courts in Washington and Alaska, argued appeals in all divisions of the Washington Court of Appeals, the Washington State Supreme Court, the Ninth Circuit Court of Appeals, the Federal Circuit Court of Appeals, and the U.S. Supreme Court (on briefs). Bob is widely recognized as one of the foremost lawyers defending police officers and their agencies in civil rights cases in Washington. He also represents professionals, individuals, and companies in litigation ranging from malpractice, products liability, transportation liability, road design, premises liability, commercial litigation, employment, construction, and many other categories of civil disputes. He works extensively in cases involving death and serious injury and is often called to serve as trial counsel in defense of significant claims. Working occasionally on behalf of catastrophically injured individuals and damaged business owners, Bob has also achieved several multi-million-dollar verdicts and settlements.

Bob is a member of three prestigious peer selected international defense lawyer organizations -- the Federation of Defense & Corporate Counsel (FDCC), the Association of Defense Trial Attorneys (ADTA), and the International Association of Defense Counsel (IAD). He is the immediate past President and Board Chair of the FDCC. Bob is also a board member of Lawyers for Civil Justice.

Bob also served as co-chair of the Washington Pattern Instruction subcommittee charged with drafting civil rights instructions for use in Washington's superior courts. Bob writes and lectures frequently on risk management issues, civil rights, governmental entity liability, and trial technology and presentation strategies. The Washington Defense Trial Lawyers (WDTL) named Bob the Outstanding Defense Lawyer for 2017. He is a 1980 law graduate from the University of Puget Sound (now Seattle University) School of Law, cum laude, and began his career as a clerk for Judge Vernon Pearson in the Washington Court of Appeals. Bob is also licensed in Idaho and Oregon and resides in Seattle.

Washington, Oregon, and Idaho State Bar Associations

Federal Bar Association

Federation of Defense & Corporate Counsel (FDCC) (Board Chair and member)

Defense Research Institute (DRI)

Washington Defense Trial Lawyers (WDTL)

Lawyers for Civil Justice (LCJ) (Board Member)

Association of Defense Trial Attorneys (ADTA)

International Association of Defense Counsel (IADC)

**ADMITTED TO PRACTICE**

Washington, 1980

Oregon, 2016

Idaho, 2016

**RECOGNITION**

AV Rated in Martindale Hubbell

Washington Law & Politics "Super Lawyer" since 2000

WDTL's Outstanding Defense Trial Lawyer 2017

Phone (206) 957-9669

Email: bob@christielawgroup.com

**EDUCATION**

University of Puget Sound School of Law
J.D. 1980; Cum Laude

University of Washington
B.S. 1977

Law Clerk, Honorable Vernon Pearson, Division II
Court of Appeals 1980-1981