The Honorable Barbara J. Rothstein

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

INTEGON    PREFERRED    INSURANCE
COMPANY,

              Plaintiff,

       v.

DANIEL   WILCOX   and   ELIZABETH   WILCOX
and ERIC HOFF,

              Defendants.
_____
DANIEL WILCOX and ELIZABETH WILCOX,

              Counterclaimants,

       v.

INTEGON    PREFERRED    INSURANCE
COMPANY,

              Counter-Defendant.

_____
DANIEL WILCOX and ELIZABETH WILCOX,

              Third-Party Plaintiffs,

       v.

ROBERT W. WARREN, ATTORNEY AT LAW,
PLLC, dba WRIXTON LAW OFFICE; and SMITH
FREED EBERHARD, P.C.,

              Third-Party Defendants.

Civil Action No. 2:21-cv-1501

**ORDER GRANTING INTEGON'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT**

## I.   INTRODUCTION

This lawsuit arises from a pedestrian/motor vehicle accident that occurred in Snohomish County, Washington in November 2017. The driver of the vehicle, Daniel Wilcox, was insured by Plaintiff and Counter-Defendant Integon Insurance Company ("Integon") at the time of the accident. Integon instituted this action against Mr. Wilcox, and his wife, Elizabeth Wilcox (collectively "Defendants")[1] seeking declaratory judgment regarding the insurance policy liability limits and the parties' respective obligations and actions. Dkt. No. 42.

Before the Court is Integon's motion for partial summary judgment on its claim that it did not breach its duty to defend Mr. Wilcox in a lawsuit filed against him because: (1) Integon was not legally obligated to defend Mr. Wilcox until February 18, 2021 when it was first notified of the lawsuit, and (2) Integon satisfied its legal obligation to defend Mr. Wilcox after that date when it retained legal counsel to represent him in the lawsuit. Dkt. No. 102. Defendants oppose the motion. Dkt. No. 117. Having reviewed the motion, the opposition and reply thereto, the record of the case, and the relevant legal authority, the Court grants the motion. The reasoning for the Court's decision follows.

## II.   FACTUAL BACKGROUND

Mr. Wilcox purchased an automobile insurance policy from Integon that was effective from August 19, 2017 to August 19, 2018, with limits for liability coverage of $25,000 per person and $50,000 per accident ("the Policy"). On November 1, 2017, Mr. Wilcox turned right at an intersection where he had a green light but failed to see Eric Hoff who was walking in the crosswalk. Mr. Wilcox hit Hoff, injuring him. Mr. Wilcox timely reported the incident to Integon

---

[1] The Wilcoxes are also Third-Party Plaintiffs and Counterclaimants but for simplicity's sake this order will refer to them as "Defendants" or "the Wilcoxes".

and the insurer opened a claim file and assigned an adjuster. The day after the incident, the adjuster contacted Hoff to obtain information about the incident and his injuries. The adjuster also contacted and took a recorded statement of Mr. Wilcox. On November 10, 2017, the adjuster sent a letter to Mr. Wilcox that explained the claim process and informed him of the Policy's liability limits.

On November 29, 2017, Integon received a voicemail from attorney Kari Lester in which she stated that she represented Hoff regarding the incident. Over the next six months, Integon continued to follow up with Lester, exchanging letters and emails, and speaking on the phone. On July 13, 2018, Lester sent a settlement demand letter to Integon, which requested $1,638.574.92, comprised of $82,372.72 in medical costs, $31,200 in lost wages, and $1,525,000 for past and future pain and suffering. Integon forwarded a copy of the demand letter to Mr. Wilcox on July 18, 2018.

On July 30, 2018, Integon offered the policy limits to Lester to settle Hoff's claims; it also provided her with a copy of the Policy and declaration from the Wilcoxes regarding other insurance and their personal assets. Lester acknowledged the offer and indicated that she would speak to Hoff about it. Over the next six months, Integon called and emailed Lester multiple times about the offer. On February 12, 2019, Lester informed Integon that Hoff was not ready to accept the offer. Dkt. No. 106, Ex. 24 at 2. Integon continued to regularly call Lester about the settlement. Dkt. No. 105, Ex. 2 at 70:3-21.

On January 16, 2020, Lester filed a lawsuit against Mr. Wilcox in Snohomish County Superior Court on behalf of Hoff (the "Underlying Lawsuit"). She did not provide a courtesy copy of the Underlying Lawsuit to Integon, nor did she provide notice to Integon about the Lawsuit. Mr. Wilcox was served with the Underlying Lawsuit on February 1, 2020.

1
2
3
4
5
6
7
8
9
10
11
12
13
14

Defendants claim that Mr. Wilcox called Integon on February 3, 2020 and left a voicemail informing the insurer that he had been served with the Underlying Lawsuit. However, Integon does not have a record of the phone call and the Wilcoxes have also been unable to produce a record of the phone call.[2] Integon did receive a telephone call from Mrs. Wilcox on that day (*i.e.*, February 3, 2020). The 4 minute 43 second call at 11:20am was recorded and Integon produced a transcript of the call. Dkt. No. 103-1. During the call, Mrs. Wilcox informed Integon that she and Mr. Wilcox planned to meet with an attorney the following day and requested that a copy of the Policy declaration page be sent to them so that they can bring it to the attorney. *Id*. at 28:21-29:7. Mr. Wilcox also briefly spoke with the Integon agent during the phone call to give the agent permission to speak with Mrs. Wilcox about the Policy. *Id*. at 29:17-30:17. Neither Mr. nor Mrs. Wilcox informed Integon about the Underlying Lawsuit during the phone call. *Id*. at 26-31; Dkt. No. 105, Ex. 4 at 74:20-77:8.

15
16
17
18
19
20
21
22

On February 5, 2020, the Wilcoxes met with Third-Party Defendant attorney Robert Warren about the Underlying Lawsuit. That same day, Warren sent a letter of representation to Integon, but he did not mention the Underlying Lawsuit and did not provide a copy of the summons and complaint to Integon. Dkt. No. 106, Ex. 26 at 2. Integon called and spoke with Warren after receiving his letter. Integon recorded the conversation and has produced a transcript of the call. Once again, Warren did not mention the Underlying Lawsuit. Warren admits that he never tendered the Underlying Lawsuit to Integon. Dkt. No. 105, Ex. 5 at 53: 3-20.

23
24
25
26

No one appeared on behalf of Mr. Wilcox in the Underlying Lawsuit, so on March 11, 2020, the superior court entered an order of default against him and, on October 16, 2020, entered default judgment in the amount of $1,618,587.33. The Wilcoxes originally claimed that they

27

---

[2] All calls to Integon are recorded. *See* Dkt. No. 103, Ex. 1 at 2:3-4.

learned of the default judgment in November 2020. Dkt. No. 22, Third-Party Complaint at ¶¶ 37-40. However, they now claim that they did not learn of the default judgment until February 2021. Dkt. No. 73, Amended Answer and Third-Party Complaint at ¶ 41.

On February 18, 2021, in response to an email that Integon sent Lester regarding the outstanding settlement offer Integon had extended to Hoff back in July 2018, Lester informed Integon that she had obtained the default judgment against Mr. Wilcox. Dkt. No. 106, Ex. 27. Integon immediately contacted Mr. Wilcox who confirmed that he had been served with the Underlying Lawsuit in February 2020 and had provided the pleadings to Warren. Integon tried to speak to Warren that same day but was unable to reach him until February 22, 2021, when he confirmed that he was aware of the Underlying Lawsuit but not the default judgment. That same day, Integon retained Third-Party Defendant Smith Freed Eberhard P.C. ("Smith Freed") as defense counsel for Mr. Wilcox to try to vacate the default judgment. Smith Freed appeared in the Underlying Lawsuit on February 24, 2021 and moved to vacate the default judgment on September 29, 2021. The superior court denied the motion on October 11, 2021.

### III.    STANDARD OF REVIEW

"The standard for summary judgment is familiar: 'Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact.'" *Zetwick v. County of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)). A court's function on summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If there is not, summary judgment is warranted.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## IV.     DISCUSSION

As stated above, Integon seeks summary judgment on its claim that it did not breach its duty to defend Mr. Wilcox in the Underlying Lawsuit because: (1) Integon did not have a legal obligation to defend Mr. Wilcox in the Lawsuit until February 18, 2021 when Integon alleges it first received notice of the Lawsuit, and (2) Integon satisfied its legal obligation to defend Mr. Wilcox after February 18, 2021 when it retained Smith Freed to represent him in the Lawsuit. Defendants counter as follows: first, they contend that under the plain language of the Policy, Integon's duty to defend was triggered when Hoff sent the demand letter, long before Hoff filed the Underlying Lawsuit; and second, the Policy did not require Mr. Wilcox to tender the Underlying Lawsuit to trigger Integon's duty to defend, and even if it did, a question of material fact exists as to whether he satisfied this obligation, thus precluding summary judgment. The Court will address each argument in turn.

### A.     Whether Integon Was Legally Obligated to Defend Mr. Wilcox in the Underlying Lawsuit before February 18, 2021

Integon concedes that under the Policy it had a duty to defend Mr. Wilcox in the Underlying Lawsuit but argues that it did not become legally obligated to defend him in the Lawsuit until February 18, 2021 when it first learned of the Lawsuit's existence. And because it did not become legally obligated to defend Mr. Wilcox until February 18, 2021, Integon argues, it could not have breached its duty to defend Mr. Wilcox in the Lawsuit before that date.

Defendants counter that under the plain language of the Policy, Integon's duty to defend Mr. Wilcox arose as soon as Hoff's attorney sent the $1.6 million demand letter to Integon. Defendants argue that unlike "standard" insurance policies that only trigger a duty to defend if a lawsuit is filed against the insured, the instant Policy provides that the duty to defend is triggered

when "any claim or [law]suit asking for [] damages" is made against the insured. Dkt. No. 1, Ex. A, the Policy, at p. 6 Part A – LIABILITY COVERAGE. The Policy provides:

> If you pay a premium for this coverage, we will pay damages, except punitive or exemplary damages, for bodily injury or property damage for which any insured becomes legally responsible because of an auto accident…. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages.

*Id*. (bold removed). Therefore, Defendants argue, under the plain language of the Policy, Integon's duty to defend Mr. Wilcox in the Underlying Lawsuit was triggered as soon as Hoff sent the demand letter to the company. *See* Dkt. No. 117 at 12, citing *United Servs. Auto. Ass'n v. Speed*, 317 P.3d 532, 538 (Wash. App. 2014) (noting that the "duty to defend was triggered when" the "demand letter was sent to insured" because under the terms of the insurance policies at issue "the duty to defend arose not only when a 'suit' was brought against the insured, but also when any 'claim' was made for damages arising from the acts covered under the policies").

The Court is not persuaded by Defendants' argument. While the Court agrees that the plain language of the Policy clearly requires Integon to "settle or defend" "any claim" or "suit", Washington law is equally clear that the duty to defend does not become a legal obligation that can be breached until the obligation is tendered to the insurer. Under Washington law, a duty to defend is not the same as a legal obligation to defend. *See Mutual of Enumclaw Insurance Co. v. USF Insurance Co*., 191 P.3d 866, 873 (Wash. 2008) (a duty to defend does "not become [a] *legal obligation*[] until a claim for defense … is tendered") (emphasis in original). As the Washington Appellate Court stated in *National Sur. Corp. v. Immunex Corp*.:

> An insurer's duty to defend arises when a complaint against the insured alleges facts which could impose liability upon the insured within the policy's coverage. However, an insurer cannot be expected to anticipate when or if an insured will make a claim for coverage; the insured must affirmatively inform the insurer that its participation is desired. Thus, breach of the duty to defend cannot occur before tender.

256 P.3d 439, at 448 (Wash. App. 2011) (internal citations and quotations omitted) *aff'd National Sur. Corp. v. Immunex Corp.* 297 P.3d 688, 696 (Wash. 2013) ("[T]he duty to defend … is not *legally enforceable* until the insured has apprised its insurer that it seeks its performance.") (emphasis in original); *see also Griffin v. Allstate Ins. Co.*, 29 P.3d 777, 140 (Wash. App. 2001) ("[A]n insurer cannot be expected to anticipate when or if an insured will make a claim for coverage; the insured must affirmatively inform the insurer that its participation is desired.") (alteration in original).

Here, Defendants argue that Integon became legally obligated to defend Mr. Wilcox in the Underlying Lawsuit the moment Integon received the $1.6 million demand letter from Hoff's attorney. This Court agrees that Integon was legally obligated to "settle or defend" Hoff's "claim" (*i.e.*, the $1.6 million demand letter) when it received the demand letter because there is no dispute that Mr. Wilcox tendered that claim to Integon. Indeed, Integon repeatedly attempted to settle the claim by offering the Policy limits to Hoff. However, tendering the claim (*i.e.*, the $1.6 million demand letter) to Integon was not sufficient to also tender the Underlying Lawsuit to Integon because under Washington law, mere notice of a claim is insufficient to establish a legal obligation to defend in a lawsuit.

The Washington appellate court's decision in *Unigard v. Leven* is instructive. In *Leven*, an insured tendered two lawsuits involving environmental contamination to its insurer, which the insurer defended to resolution. 983 P.2d 1155, 1158 (Wash. App. 1999). The insured was subsequently named in an additional complaint by the Department of Ecology involving the same contamination site. *Id.* The insurer "knew of the [Department of Ecology's complaint] but never received tender of defense or invoices for expenses in defending the action." *Id.* The insured ultimately settled with the Department of Ecology and submitted invoices for its expenses related

to the settlement to the insurer. In response, the insurer filed a lawsuit seeking a declaration that it was not obligated to defend the insured against the Department of Ecology's complaint. *Id*. at 1159. The trial court determined that because the insurer "had actual notice of the underlying claims, specific tender was not necessary" and ordered the insurer to reimburse the insured for all defense and settlement costs. *Id*. at 1160. The appellate court reversed, stating that the insured did not have a legal obligation to defend even when it had actual notice of a claim because "an insured cannot be expected to anticipate when or if an insured will make a claim for coverage; the insured must affirmatively inform the insurer that its participation is desired." *Id*. Likewise, here, Integon was not obligated to defend Mr. Wilcox in the Underlying Lawsuit simply because it was on notice of Hoff's claim.

Moreover, not only does Washington law unequivocally require tender before the duty to defend becomes legally enforceable, but the instant Policy also required Mr. Wilcox to provide Integon with any legal papers he received related to the accident. *See* Dkt. No. 1-5, the Policy, p. 32, PART E, > DUTIES AFTER AN ACCIDENT OR LOSS FILING A CLAIM <u>GENERAL DUTIES</u>, B. 2 (stating that the insured is required to "promptly send [Integon] copies of any notices or legal papers received in connection with the accident or loss"). The Policy further provided that "[f]ailure to comply with any of the duties under this Part E may result in denial of coverage and relieve [Integon] of all duties to … defend, pay any judgment or otherwise honor any claims made against an insured." *Id*. at <u>GENERAL DUTIES</u>, A. Thus, the Court concludes that both Washington law and the Policy required Mr. Wilcox to tender the Underlying Lawsuit to Integon before the insurer became legally obligated to provide him with a defense in the Lawsuit.

Next Defendants argue that even if they were required to tender the Underlying Lawsuit to Integon before the insurer became legally obligated to defend Mr. Wilcox, at a minimum, a

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

question of fact exists as to whether they satisfied this obligation. While Defendants concede that neither Mr. Wilcox nor attorney Warren provided Integon with the pleadings from the Underlying Lawsuit, Defendants contend that Mr. Wilcox called Integon on February 3, 2020 and left a voicemail informing the insurer that he had been served with the summons and complaint from the Lawsuit and requesting that someone call him back. (Defendants allege that this telephone call was in addition to the 4 minute 43 second call at 11:20am that Mrs. Wilcox made to Integon that same day for which there is a recording.) Mr. Wilcox testified in his deposition that he made the phone call and Mrs. Wilcox repeatedly testified in her deposition that she witnessed Mr. Wilcox make the call from their business.

The problem with this argument is that there is no corroborating evidence to support Defendants' claim that Mr. Wilcox made the phone call. To the contrary, the evidence establishes otherwise. Unlike the 4 minute 43 second call Mrs. Wilcox made on February 3 for which there is a recording, Integon's system shows no record of Mr. Wilcox's alleged phone call. Nor do the Wilcoxes' own telephone records show that he made the call. Mr. Wilcox testified that he made the call from either his business line or his AT&T cell phone. However, the records from those telephone numbers do not show that a call was made to Integon. *See* Dkt. No. 105, Ex. 1 40:8-43:12; Ex. 4 at 32:2-14. Mr. Wilcox testified that they do not have a landline in their home.

Once again, the only evidence of a phone call that Integon received from the Wilcoxes on February 3, 2020 is the call that Mrs. Wilcox made to Integon in which she requested a copy of the Policy's declaration page and did *not* inform Integon about Underlying Lawsuit.[3] The

---

[3] During the phone call Mrs. Wilcox did use the word "lawsuit", stating: "Well, the reason I'm calling is two years has [*sic*] gone by and we hadn't [*sic*] heard anything about this lawsuit. As far as I understand, you guys haven't even made a payment out on this either." Dkt. No. 103, Ex. 1 at 27-28. From the context of the telephone call, it is clear that Mrs. Wilcox is referring to Hoff's $1.6

10

Wilcoxes' self-serving testimony, which is directly contradicted by the evidence in this case, is insufficient to create a genuine issue of material fact. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment."). Simply put, no reasonable jury could find that Mr. Wilcox called Integon on February 3, 2020.[4]

Thus, the Court concludes that Integon did not become legally obligated to defend Mr. Wilcox in the Underlying Lawsuit until February 18, 2021 when it first learned of the Lawsuit.[5] Therefore, Integon is entitled to summary judgment on its claim that it did not breach its duty to defend Mr. Wilcox in the Lawsuit prior to February 18, 2021. *See Griffin*, 29 P.3d at 141 ("Certainly breach of the duty to defend cannot occur before tender.").

---

million demand letter, not the Underlying Lawsuit. Indeed, Mrs. Wilcox testified that she was referring to the demand letter not the Underlying Lawsuit. Dkt. No. 105, Ex. 4 at 74:20-77:8.

[4] Defendants offer expert testimony from Kevin Quinley in which he opines that Mrs. Wilcox's use of the word "lawsuit" and request for a copy of the Policy declaration page during the February 3, 2020 phone call "should have trigger[ed] a prudent claim representative to inquire further." Dkt. No. 117 at 19. The Court rejects this expert testimony. Mr. Quinley's declaration does not explain how this opinion is supported by data or quantifiable evidence and thus is improper. Expert testimony must be based on sufficient facts or data that is the product of reliable principles and methods that the expert has reliably applied. *See* Fed. Rules Evid. 702 and 703; *see also Abarca v. Franklin County Water Dist.* 761 F. Supp. 2d 1007, 1021 (E.D. Cal. 2011) *quoting Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993) ("Reliable [expert] testimony must be grounded in the methods and procedures of science and signify something beyond 'subjective believe or unsupported speculation.'").

[5] The parties argue whether Integon has established as a matter of law that it was prejudiced by Defendants' late tender of the Underlying Lawsuit. Under Washington law, an insurer may be relieved of its duty to defend under the insurance contract if it can show that the late notice caused it actual and substantial prejudice. *Mutual of Enumclaw Ins. Co. v. USF Ins. Co.*, 191 P.3d 866, 876 (Wash. 2008). However, here, Integon is not trying to escape its duty to defend altogether; rather, it argues that it did not become legally obligated to defend Mr. Wilcox until February 18, 2021 when the Underlying Lawsuit was finally tendered to it. Integon concedes that it was required to defend Mr. Wilcox in the Lawsuit thereafter, so whether the insurer was prejudiced by the late notice is irrelevant.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**B.     Whether Integon Satisfied Its Legal Obligation to Defend Mr. Wilcox after February 18, 2021**

As stated above, on February 18, 2021, Hoff's attorney informed Integon that she had obtained a default judgment in Snohomish County Court against Mr. Wilcox. Integon called Mr. Wilcox that same day and he confirmed that he had been served with the Underlying Lawsuit in February 2020 and that he had provided the pleadings to attorney Warren. Integon called Warren but was unable to speak to him until February 22, 2021. Warren confirmed that he was aware of the Underlying Lawsuit but not the default judgment. That same day, on February 22, Integon retained the law firm Smith Freed as defense counsel for Mr. Wilcox. Smith Freed appeared in the Underlying Lawsuit on February 24, 2021 and attempted, unsuccessfully, to vacate the default judgment.

Integon argues that the fact that it retained defense counsel to represent Mr. Wilcox within a few days of learning of the Underlying Lawsuit means that it satisfied its legal obligation to defend its insured under the Policy. While Defendants have instituted a third-party complaint against Smith Freed alleging that the law firm committed malpractice, Defendants do not argue nor present evidence to suggest that Integon failed to comply with its duty to defend Mr. Wilcox once Integon retained Smith Freed on his behalf. Thus, Integon is entitled to summary judgment on its claim that it satisfied its duty to defend Mr. Wilcox after February 18, 2021. *See Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000) ("If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment.").[6]

---

[6] Defendants argue that Integon's motion is premature because "one remedy for the bad faith breach of an insurer's duty to defend is coverage by estoppel, which would negate all of Integon's coverage defenses." Dkt. No. 117 at 23. The Court has concluded that Integon did not breach its duty to

## V.     CONCLUSION

For the foregoing reasons, the Court HEREBY GRANTS Integon's motion for partial summary judgment. Dkt. No. 102. Integon is entitled to summary judgment on its claim that it did not breach its duty to defend Mr. Wilcox in the Underlying Lawsuit.

Dated this 6th day of July 2023.

_Barbara J Rothstein_

Barbara      Jacobs      Rothstein
U.S. District Court Judge

---

defend Mr. Wilcox in the Underlying Lawsuit, thus any bad faith claim regarding the same is inapplicable.