The Honorable Barbara J. Rothstein

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| INTEGON PREFERRED INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>  v.<br><br>DANIEL WILCOX and ELIZABETH WILCOX and ERIC HOFF,<br><br>    Defendants.<br>_____<br>DANIEL WILCOX and ELIZABETH WILCOX,<br><br>    Counterclaimants,<br><br>  v.<br><br>INTEGON PREFERRED INSURANCE COMPANY,<br><br>    Counter-Defendant.<br>_____<br>DANIEL WILCOX and ELIZABETH WILCOX,<br><br>    Third-Party Plaintiffs,<br><br>  v.<br><br>ROBERT W. WARREN, ATTORNEY AT LAW, PLLC, dba WRIXTON LAW OFFICE; and SMITH FREED EBERHARD, P.C.,<br><br>    Third-Party Defendants. | Civil Action No. 2:21-cv-1501<br><br>**ORDER GRANTING THIRD-PARTY DEFENDANT WARREN'S MOTION FOR SUMMARY JUDGMENT AGAINST INTEGON** |

## I. INTRODUCTION

This lawsuit arises from a pedestrian/motor vehicle accident that occurred in Snohomish County, Washington in November 2017. The parties to this litigation are: (1) Plaintiff and Counter-Defendant Integon Insurance Company ("Integon"), (2) Defendants, Counterclaimants, and Third-Party Plaintiffs Daniel and Elizabeth Wilcox ("the Wilcoxes"), (3) Third-Party Defendant Robert W. Warren and Wrixton Law Office (collectively "Warren"), and (4) Third-Party Defendant Smith Freed Eberhard, P.C. ("Smith Freed"). Currently before the Court is Warren's motion for summary judgment against Integon. Dkt. No. 109. Having reviewed the motion, the opposition and reply thereto, the record of the case, and the relevant legal authority, the Court grants the motion. The reasoning for the Court's decision follows.

## II. FACTUAL & PROCEDURAL BACKGROUND

The factual background relevant to the instant motion is as follows:[1] Mr. Wilcox purchased an automobile insurance policy from Integon that was effective from August 2017 to August 2018, with limits for liability coverage of $25,000 per person and $50,000 per accident. On November 1, 2017, Mr. Wilcox turned right at an intersection where he had a green light but failed to see Eric Hoff who was walking in the crosswalk. Mr. Wilcox hit Hoff, injuring him. Mr. Wilcox timely reported the incident to Integon. On July 30, 2018, Integon offered the policy limits to Hoff to settle his claim; he never responded to the offer. On January 16, 2020, Hoff filed a lawsuit against the Wilcoxes in Snohomish County Superior Court (the "Underlying Lawsuit") and served them with the summons and complaint on February 1, 2020. The Wilcoxes claim that they notified Integon of the Underlying Lawsuit on February 3, 2020, but Integon has no record

---

[1] See this Court's order granting Integon's motion for partial summary judgment (Dkt. No. 149) for a more complete background section.

of the notification and this Court previously determined that no reasonable jury could conclude that the notification occurred. *See* Dkt. No. 149 at 11.

On February 5, 2020, the Wilcoxes met with Third-Party Defendant attorney Robert Warren about the Underlying Lawsuit. They allege that Warren promised to enter a notice of appearance and represent them in the Underlying Lawsuit. That same day, Warren sent Integon a letter of representation informing it that he represented the Wilcoxes regarding the accident. The letter did not mention the Underlying Lawsuit, that Mr. Wilcox had been served, nor did it provide a copy of the pleadings from the Underlying Lawsuit. Warren called Integon the next day on February 6, 2020. During the 10 minute and 19 second phone call (that was recorded by Integon), Warren never mentioned the Underlying Lawsuit. He alleges that he did not mention that Lawsuit because he assumed that the Wilcoxes had already informed Integon of it.

Warren never filed a notice of appearance nor took other action on the Wilcoxes' behalf in the Underlying Lawsuit and on March 11, 2020, the Snohomish County Superior Court entered an order of default against the Wilcoxes and, on October 16, 2020, entered default judgment in the amount of $1,618,587.33. Integon learned of the default judgment from Hoff's attorney on February 18, 2021 and immediately contacted Mr. Wilcox who confirmed that he had been served with the Underlying Lawsuit in February 2020 and had provided the pleadings to Warren. Integon tried to speak to Warren that same day but was unable to reach him until February 22, 2021, when he confirmed that he was aware of the Underlying Lawsuit but not the default judgment. That same day, Integon retained Third-Party Defendant Smith Freed as counsel for Mr. Wilcox to try to vacate the default judgment. Smith Freed appeared in the Underlying Lawsuit on February 24, 2021 and moved to vacate the default judgment on September 29, 2021. The Snohomish County Court denied the motion on October 11, 2021.

Thereafter, Integon instituted this action against the Wilcoxes seeking entry of a declaratory judgment that, among other relief, Integon did not breach its duty to defend the Wilcoxes in the Underlying Lawsuit and moved for summary judgement on this issue. This Court granted Integon's motion on July 6, 2023 ("the July 6, 2023 Order"), determining that "Integon is entitled to summary judgment on its claim that it did not breach its duty to defend Mr. Wilcox in the Underlying Lawsuit." Dkt. No. 149 at 13.

The Wilcoxes filed counterclaims against Warren and Smith Freed for legal malpractice and breach of fiduciary duty. Smith Freed moved for summary judgment on the Wilcoxes' claim against it, which this Court granted on July 17, 2023 ("the July 17, 2023 Order"). Dkt. No. 153. In granting the motion, the Court determined that Smith Freed failed to act with due diligence in filing the motion to vacate, but the failure was not the proximate cause of the Wilcoxes' damages so the law firm was entitled to summary judgment on the Wilcoxes' claims against it.

### III.   STANDARD OF REVIEW

"The standard for summary judgment is familiar: 'Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact.'" *Zetwick v. County of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)). A court's function on summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If there is not, summary judgment is warranted.

IV.     DISCUSSION

Integon brings two claims against Warren: (1) promissory estoppel and (2) tortious interference with a contractual relationship. Warren moves for summary judgment on both claims.

A.     **Promissory Estoppel**

To prevail on its promissory estoppel claim, Integon must show that: (1) Warren made a promise, (2) Warren reasonably expected Integon to change its position based on that promise, (3) Integon relied on the promise and changed its position, (4) Integon's reliance was justified, and (5) injustice can be avoided only by enforcement of the promise. *Havens v. C&D Plastics, Inc*. 876 P.2d 435, 443 (Wash. 1994). Integon argues that Warren made two promises, both of which allegedly occurred during Warren's February 22, 2021 phone conversation with Integon adjuster Smalley. Integon alleges that Warren promised Smalley that he had filed a notice of appearance ("NOA") in the Underlying Lawsuit and further promised to provide a copy of the NOA to Smalley. Integon also alleges that Warren "misled" Smalley and his "misleading statement is sufficient to establish the first element of a promissory estoppel claim." Dkt. No. 121 at 12. Specifically, Integon claims that during his February 6, 2020 conversation with Smalley, Warren mislead her into believing that Hoff had not yet filed the Underlying Lawsuit by stating that "*if they file*, I want to depose, please - - I want to depose defendant- - plaintiff." Dkt. No. 103, Ex. 1 at 17:14-16 (emphasis added).

The Court can quickly dispense of the latter argument because Integon cites no Washington authority supporting its contention that "misleading statements" are "promises" for purposes of promissory estoppel. To the contrary, to be enforceable under a theory of promissory estoppel, the promise must be "clear and unambiguous." *Aguilar v. International Longshoremen's Union Local No. 10*, 966 F.2d 443, 446 (9th Cir. 1992); *see also, Hass v. Darigold Dairy*

*Products Co.*, 751 F.2d 1096, 1100 (9th Cir. 1985) (a promise that is "vague, general or of indeterminate application" is unenforceable for purposes of promissory estoppel). Thus, Warren's alleged misleading statement during the February 6, 2020 phone call cannot be the basis for a promissory estoppel claim.

The Court does not need to resolve whether Warren's alleged promises that he filed a NOA and that he would provide Integon with a copy of the NOA are sufficient "promises" for purposes of a promissory estoppel claim. This is because Integon cannot establish that it was harmed even if Warren did make these promises. Integon alleges that Warren's promise that he filed a NOA and further promise to provide Integon with a copy of the NOA caused Smith Freed to delay filing the motion to vacate the default judgment in the Underlying Lawsuit on behalf of the Wilcoxes. Integon argues that the Snohomish County Court would have granted the motion to vacate if it had been filed earlier. However, this Court has already determined in the July 17, 2023 Order that the Snohomish County Court would have denied the motion even if it had been filed immediately after Smith Freed entered a notice of appearance in the Underlying Lawsuit. *See* Dkt. No. 153 ("Therefore, this Court concludes that the County Court would have denied the motion to vacate even if Smith Freed had filed the motion immediately after it entered its notice of appearance."). Moreover, even if the County Court would have granted the motion to vacate the default judgment but for Smith Freed's delay in filing the motion, Integon cannot be held liable for the default judgment because this Court has already held in the July 6, 2023 Order that Integon did not breach its duty to defend Mr. Wilcox in the Underlying Lawsuit. This Court determined that the Wilcoxes failed to tender the Lawsuit to Integon before the default judgment was entered and once they did tender the Lawsuit to Integon, Integon satisfied its duty to defend by retaining Smith Freed to represent the Wilcoxes in the Lawsuit. *See* Dkt. No. 149 for the

Court's analysis on this issue. Thus, Integon cannot satisfy the final element of its promissory estoppel claim—that injustice can be avoided only by enforcement of the promise. Warren is entitled to summary judgment on the claim as a matter of law.

      **B.**     **Tortious Interference**

To prove tortious interference with a contractual relationship, Integon must establish: (1) the existence of a valid contractual relationship between Integon and the Wilcoxes, (2) that Warren was aware of the contractual relationship, (3) an intentional interference inducing or causing a breach or termination of the relationship, (4) that Warren interfered for an improper purpose or used improper means, and (5) resultant damages. *Leingang v. Pierce County Med. Bureau, Inc.*, 930 P.2d 288, 300 (Wash. 1997). Integon alleges that "Warren interfered with the contractual relationship between [it] and the Wilcoxes for his personal financial benefit" and that Integon suffered damages as a result of Warren's tortious conduct. Dkt. No. 42 at ¶ 158. Integon further alleges that "[t]o the extent that the Wilcoxes prevail in their Counterclaims against [it] in the present lawsuit, any breach of the contractual terms of the Policy was induced and/or caused by Warren's intentional interference with that contractual relationship." *Id*. at ¶ 156

Integon's tortious interference claim fails for at least two reasons. First, Integon has produced no evidence to substantiate its claim that Warren benefitted financially from his alleged interference with Integon's contract with the Wilcoxes, while Warren has testified that he never entered into a retainer agreement with the Wilcoxes, nor sought or received payment from them or Integon. Dkt. No. 110, Ex. 2 45:22-47:17. And second, as stated above, this Court has already determined that Integon did not breach its contractual obligations to the Wilcoxes. *See* Dkt. No. 149. Therefore, Integon's tortious interference claim fails as a matter of law and Warren is entitled to summary judgment on the claim.

## V. CONCLUSION

For the foregoing reasons, the Court HEREBY GRANTS Warren's motion for summary judgment on Integon's claims against him.

Dated this 27th day of July 2023.

*Barbara J. Rothstein*
Barbara Jacobs Rothstein
U.S. District Court Judge