The Honorable Barbara J. Rothstein

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| INTEGON PREFERRED INSURANCE COMPANY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DANIEL WILCOX and ELIZABETH WILCOX and ERIC HOFF,<br><br>　　　　　Defendants.<br>_____<br>DANIEL WILCOX and ELIZABETH WILCOX,<br><br>　　　　　Counterclaimants,<br><br>　　v.<br><br>INTEGON PREFERRED INSURANCE COMPANY,<br><br>　　　　　Counter-Defendant.<br><br>_____<br>DANIEL WILCOX and ELIZABETH WILCOX,<br><br>　　　　　Third-Party Plaintiffs,<br><br>　　v.<br><br>ROBERT W. WARREN, ATTORNEY AT LAW, PLLC, dba WRIXTON LAW OFFICE; and SMITH FREED EBERHARD, P.C.,<br><br>　　　　　Third-Party Defendants. | Civil Action No. 2:21-cv-1501<br><br>**ORDER GRANTING INTEGON'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE WILCOXES' EXTRA-CONTRACTUAL CLAIMS** |

## I.   INTRODUCTION

This lawsuit arises from a pedestrian/motor vehicle accident that occurred in Snohomish County, Washington in November 2017. The parties to this litigation are: (1) Plaintiff and Counter-Defendant Integon Insurance Company ("Integon"), (2) Defendant Eric Hoff ("Hoff"), (3) Defendants, Counterclaimants, and Third-Party Plaintiffs Daniel and Elizabeth Wilcox ("the Wilcoxes"), (4) Third-Party Defendant Robert W. Warren and Wrixton Law Office (collectively "Warren"), and (5) Third-Party Defendant Smith Freed Eberhard, P.C. ("Smith Freed").[1] Currently before the Court is Integon's motion for partial summary judgment on the Wilcoxes' extra-contractual claims. Dkt. No. 133. Having reviewed the motion, the opposition and reply thereto, the record of the case, and the relevant legal authority, the Court will grant the motion. The reasoning for the Court's decision follows.[2]

## II.   FACTUAL BACKGROUND

Mr. Wilcox purchased an automobile insurance policy from Integon that was effective from August 2017 to August 2018, with limits for liability coverage of $25,000 per person and $50,000 per accident ("the Policy"). On November 1, 2017, Mr. Wilcox turned right at an intersection where he had a green light but failed to see Eric Hoff who was walking in the crosswalk. Mr. Wilcox hit Hoff, injuring him. Mr. Wilcox timely reported the incident to Integon

---

[1] Smith Freed was dismissed from this lawsuit on July 17, 2023. *See* Dkt. No. 153.

[2] The Wilcoxes object that this is Integon's second summary judgment motion and argue that it should be stricken because it violates Local Civil Rule 7(e)(3). The purpose of Rule 7(e)(3) is to prevent a party from circumventing motion page limitations by filing multiple contemporaneous dispositive motions. That is not the case here as briefing on the first motion was fully complete before the second motion was filed. Moreover, the first motion involved Integon's affirmative claim for declaratory judgment regarding tender of the Underlying Lawsuit, an issue that needed only limited discovery. The instant motion was filed after further discovery, including the deposition of the Wilcoxes' expert witness, and relates to the Wilcoxes' extra-contractual counterclaims. Rather than attempting to take advantage, the Court finds that Integon's approach promoted judicial efficiency.

and the insurer opened a claim file and assigned an adjuster. The day after the incident, the adjuster contacted Hoff to obtain information about the incident and his injuries. The adjuster also contacted and took a recorded statement of Mr. Wilcox. On November 10, 2017, the adjuster sent a letter to Mr. Wilcox that explained the claim process and informed him of the Policy's liability limits. The letter further advised Mr. Wilcox that the claims arising from the incident may exceed the Policy's limits and that he had the right to consult with his own attorney to advise him regarding the potential excess liability, but that he would have to bear the cost of this legal advice. By November 22, 2017, Integon had determined that Mr. Wilcox was solely responsible for the incident.

On November 29, 2017, Integon received a voicemail from attorney Kari Lester in which she stated that she represented Hoff regarding the incident. Over the next six months, Integon continued to follow up with Lester, exchange letters and emails, and speak on the phone. On July 13, 2018, Lester sent a settlement demand letter to Integon, which requested $1,638.574.92, comprised of $82,372.72 in medical costs, $31,200 in lost wages, and $1,525,000 for past and future pain and suffering. Integon forwarded a copy of the demand letter to Mr. Wilcox on July 18, 2018.

On July 30, 2018, Integon offered the policy limits to Lester to settle Hoff's claims; it also provided her with a copy of the Policy and a declaration from the Wilcoxes regarding other insurance and their personal assets. Lester acknowledged the offer and indicated that she would speak to Hoff about it. Over the next six months, Integon called and emailed Lester multiple times about the offer. On February 12, 2019, Lester informed Integon that Hoff was not ready to accept the offer. Integon continued to regularly call Lester about the settlement.

On January 16, 2020, Lester filed a lawsuit against the Wilcoxes in Snohomish County Superior Court on behalf of Hoff (the "Underlying Lawsuit"). She did not provide a courtesy copy of the Underlying Lawsuit to Integon, nor did she provide notice to Integon about the Lawsuit. Mr. Wilcox was served with the Underlying Lawsuit on February 1, 2020.

Defendants claim that Mr. Wilcox called Integon on February 3, 2020 and left a voicemail informing the insurer that he had been served with the Underlying Lawsuit. However, Integon does not have a record of the phone call and the Wilcoxes have also been unable to produce a record of the phone call.[3] This alleged phone call was an issue in a previous summary judgment motion brought by Integon and this Court determined that in light of the record evidence no reasonable jury could find that Mr. Wilcox made the phone call. *See* Dkt. No. 149.

Integon did receive a telephone call from Mrs. Wilcox on that day (*i.e.*, February 3, 2020). The 4 minute 43 second call at 11:20am was recorded and Integon produced a transcript of the call. During the call, Mrs. Wilcox informed Integon that she and Mr. Wilcox planned to meet with an attorney the following day and requested that a copy of the Policy declaration page be sent to them so that they could bring it to the attorney. Mr. Wilcox also briefly spoke with the Integon agent during the phone call to give the agent permission to speak with Mrs. Wilcox about the Policy. Neither Mr. nor Mrs. Wilcox informed Integon about the Underlying Lawsuit during the phone call.

On February 5, 2020, the Wilcoxes met with Third-Party Defendant attorney Robert Warren about the Underlying Lawsuit. That same day, Warren sent a letter of representation to Integon, but he did not mention the Underlying Lawsuit and did not provide a copy of the summons and complaint to Integon. Integon called and spoke with Warren after receiving his

---

[3] All calls to Integon are recorded. *See* Dkt. No. 103, Ex. 1 at 2:3-4.

letter; the conversation was recorded and a transcript of the call produced. Once again, Warren did not mention the Underlying Lawsuit; indeed, Warren admits that he never tendered the Underlying Lawsuit to Integon.

No one appeared on behalf of the Wilcoxes in the Underlying Lawsuit, so on March 11, 2020, the Superior Court entered an order of default against them and, on October 16, 2020, entered default judgment in the amount of $1,618,587.33. On February 18, 2021, in response to an email that Integon sent Lester regarding the outstanding settlement offer Integon had extended to Hoff back in July 2018, Lester informed Integon that she had obtained the default judgment against the Wilcoxes. Integon immediately contacted Mr. Wilcox who confirmed that he had been served with the Underlying Lawsuit in February 2020 and had provided the pleadings to Warren. Integon tried to speak to Warren that same day but was unable to reach him until February 22, 2021, when he confirmed that he was aware of the Underlying Lawsuit but not the default judgment. That same day, Integon retained Third-Party Defendant Smith Freed Eberhard P.C. ("Smith Freed") as defense counsel for Mr. Wilcox to try to vacate the default judgment. Smith Freed appeared in the Underlying Lawsuit on February 24, 2021 and moved to vacate the default judgment on September 29, 2021. The Superior Court denied the motion on October 11, 2021.

### III.    PROCEDURAL HISTORY

Integon instituted this lawsuit against the Wilcoxes and Hoff in November 2021, seeking a declaratory judgment that: (1) the liability limit under the Policy for Hoff's injuries is $25,000, (2) Mr. Wilcox breached the Policy's terms and conditions, (3) Integon did not breach its duty to defend Mr. Wilcox, and (4) Integon satisfied its duty to indemnify Mr. Wilcox. Dkt. No. 42. Integon also brought third-party claims against Warren for promissory estoppel and tortious interference. *Id*. The Wilcoxes, in turn, filed counterclaims against Integon, alleging breach of

contract, bad faith, negligence, and violations of the Insurance Fair Conduct Act ("IFCA") and the Washington Consumer Protection Act ("WCPA"). Dkt. No. 73. They also filed third-party claims against Warren and Smith Freed for legal malpractice and breach of fiduciary duty.

The parties have filed multiple dispositive motions to date, several of which this Court has already resolved. For instance, Integon moved for summary judgment on its claim that it did not breach its duty to defend Mr. Wilcox under the Policy. This Court granted the motion, holding that Integon did not become legally obligated to defend Mr. Wilcox in the Underlying Lawsuit until February 18, 2021, when Integon first learned of the Lawsuit, and that Integon satisfied its obligation thereafter by retaining Smith Freed on February 22, 2021 to try to vacate the default judgment. Dkt. No. 149. Thus, this Court concluded, Integon did not breach its duty to defend Mr. Wilcox.

Smith Freed also moved for summary judgment on the Wilcoxes' legal malpractice and breach of fiduciary duty claims against it. In granting the motion, this Court determined that Smith Freed failed to act with due diligence in filing the motion to vacate, but the failure was not the proximate cause of the Wilcoxes' alleged damages. Dkt. No. 153. Thus, this Court concluded, the law firm was entitled to summary judgment on the Wilcoxes' claims against it. Lastly, Warren moved for summary judgment on Integon's promissory estoppel and tortious inference claims against him. This Court granted the motion, concluding, among other things, that because this Court had already determined that Integon did not breach its duty to defend Mr. Wilcox, Integon could not establish the final element of either claim, thus requiring summary judgment for Warren. Dkt. No. 154.

With the instant motion, Integon now moves for summary dismissal of the Wilcoxes' extra-contractual claims against it.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## IV.    STANDARD OF REVIEW

"The standard for summary judgment is familiar: 'Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact.'" *Zetwick v. County of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)). A court's function on summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If there is not, summary judgment is warranted.

## V.    DISCUSSION

As stated above, Integon seeks summary judgment on the Wilcoxes' extra-contractual claims. Specifically, Integon argues that it is entitled to summary dismissal of the bad faith and negligence claims because the Wilcoxes cannot establish that its conduct was unreasonable, frivolous, or unfounded—the standard for such claims under Washington law. Integon claims that it is also entitled to summary judgment on the WCPA claim because the Wilcoxes cannot establish that Integon violated any applicable provisions of the Washington Administrative Code ("WAC"), and even if they could, they cannot establish causation or compensable damages as a result of the alleged violations. Lastly, Integon asserts that the IFCA claim fails as a matter of law because Integon did not deny benefits or coverage under the Policy. The Wilcoxes counter that a genuine issue of material fact exists as to the reasonableness of Integon's actions and whether Integon's actions violated the applicable provisions of the WAC, thus rendering summary judgment inappropriate.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

A.    **The Bad Faith and Negligence Claims**

In order to succeed on their bad faith claim against Integon under Washington law, the Wilcoxes must demonstrate that Integon acted unreasonably, frivolously, or in an unfounded manner in administering the Hoff claim. *See Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1277 (Wash. 2003). Typically, whether an insurer acted in bad faith is a question of fact for the jury; however, the insurer is entitled to summary judgment if there are no disputed facts pertaining to the reasonableness of the insurer's conduct under the circumstances. *See Indus. Indem. Co. of the NW, Inc. v. Kallevig*, 792 P.2d 520, 528 (Wash. 1990). The elements of a negligence claim are similar to those of a bad faith claim in the insurance context. *See Cardenas v. Navigators Ins. Co.*, 2011 WL 6300253, *8 (W.D. Wash. Dec. 16, 2011) (citing *Hamilton v. State Farm*, 523 P.2d 193 (Wash. 1974)) ("The analysis of a negligence cause of action is essentially the same as that of a claim of bad faith.").

The Wilcoxes cite to the deposition testimony of Integon's 30(b)(6) representative as evidence that the insurer acted unreasonably in administering the Hoff claim. According to the Wilcoxes, the representative testified that Integon could have handled the Hoff claim better by: (1) checking the Snohomish County Court docketing system to see if a lawsuit had been filed by Hoff, (2) specifically asking the Wilcoxes if a lawsuit had been filed against them, and (3) requesting proof that a lawsuit had been filed before continuing to attempt to settle the Hoff claim after the statute of limitations on the claim expired. The Wilcoxes assert that the default judgment in the Underlying Lawsuit would have been avoided if Integon had performed the above actions.

This argument fails for several reasons. First and most important, the Wilcoxes fail to cite to any legal authority, Washington or otherwise, that obligates an insurer to check a court docketing system to determine whether a lawsuit has been filed against its insured, or for an

insurer to specifically ask its insured if a lawsuit has been filed. Not only do the Wilcoxes fail to provide any legal authority for their allegation, but the allegation directly contradicts the terms of the Policy which place the burden for notifying Integon of any lawsuit on the Wilcoxes. *See* Dkt. No. 1-5, the Policy, p. 32, PART E, > DUTIES AFTER AN ACCIDENT OR LOSS FILING A CLAIM GENERAL DUTIES, B. 2 (stating that the insured is required to "promptly send [Integon] copies of any notices or legal papers received in connection with the accident or loss"), *see also*, GENERAL DUTIES, A ("[f]ailure to comply with any of the duties under this Part E may result in denial of coverage and relieve [Integon] of all duties to … defend, pay any judgment or otherwise honor any claims made against an insured"). There is no dispute that the Wilcoxes failed to comply with this provision of the Policy. Lastly, even if Integon had requested proof from Hoff's attorney that he had filed a lawsuit before continuing to attempt to settle his claim after the statute of limitations expired, doing so would not have prevented the default judgment in the Underlying Lawsuit because the statute of limitations expired almost a month *after* the default judgment was entered.

Next, the Wilcoxes submit a bullet-point list of Integon's alleged actions (or inaction) that their expert witness, Kevin Quinley, claims fell below insurance claims handling customs and practices and, as such, were unreasonable.[4] The list is presented in summary fashion with no analysis; nevertheless, the Court has reviewed the portions of Quinley's report cited and concludes that his testimony is insufficient to create a genuine issue of material fact because, as detailed below, he (1) opines on matters this Court has already resolved, (2) contradicts the record evidence, and/or relies (3) on conclusory statements.

---

[4] Quinley has worked in the insurance industry for 45 years and is the author of several articles and books on insurance claim handling. *See* Dkt. No. 119, Ex. 1 at 1.

9

- *Integon failed to ask Hoff's attorney whether she sued the Wilcoxes.*

In support of his opinion that it was unreasonable for Integon to fail to ask Hoff's attorney whether she sued the Wilcoxes, Quinley states, in its entirety:

> Integon failed to communicate to Hoff's attorney the message, 'If you file suit, please send us a courtesy copy of the Summons and Complaint.' Requesting a copy of lawsuit papers is a standard request claims representatives make to personal injury attorneys. Integon repeatedly asked attorney Lester about a signed Release but never asked whether Lester had sued the Wilcoxes. Making such inquires is part of a reasonable claim investigation. Moreover, there never was a 'signed Release.'

Dkt. No. 119, Ex. at 6-7 (internal citation omitted). Quinley fails to provide any substantiation for his claim that it is the standard within the insurance industry for a claims representative to request a personal injury attorney to provide a copy of "lawsuit papers". Such unsupported, conclusionary statements are insufficient to create a genuine issue of material fact on summary judgment. *See Queen City Farms, Inc. v. Central National Ins. Co. of Omaha*, 882 P.2d 703, 731 (Wash. 1994) ("Where there is no basis for the expert opinion other than theoretical speculation, the expert testimony should be excluded."); *United States v. Various Slot Machines in Guam*, 658 F.2d 697, 700 (9th Cir. 1981) (stating that "in the context of a motion for summary judgment, an expert must back up his opinion with specific facts"); *see also Evers v. General Motors Corp.*,770 F.2d 984, 986 (11th Cir. 1985) (noting that a party may not avoid summary judgment solely on the basis of an expert's opinion that fails to provide specific facts from the record to support his conclusory allegations). What is more, Quinley's claim is contradicted by the governing terms of the Policy that place the burden of providing any legal paperwork on the Wilcoxes, not Integon.

- *Integon did not ask Ms. Wilcox during the February 3, 2020 phone call what lawsuit and papers she was referring to and why they were meeting with a lawyer.*

Quinley opines that Ms. Wilcox made four statements during the February 3, 2020 phone with Integon that "should have triggered mental alarms for any claim representative." Dkt. No.

119, Ex. 1 at 7. Specifically, Mrs. Wilcox (1) stated that "over two years had gone by since the accident", (2) referred to "this lawsuit", (3) referred to "these papers", and (4) stated that she planned to take "these papers" to Warren. *Id*. Quinley further opines that Ms. Wilcoxes' statements would have caused a "reasonable claim representative" to believe that a lawsuit had been filed and "should have galvanized Integon's representative to (a) request a copy of those papers ASAP and (b) appoint Integon-selected counsel (c) with the directive to enter a Notice of Appearance for the Wilcoxes, protect the docket and file an Answer." *Id*.

Once again Quinley provides no substantiation for his claim that, under insurance industry customs or practices, Ms. Wilcoxes' comments would have caused a reasonable claim representative to believe a lawsuit had been filed. *Id*. at 7-8. Moreover, this Court has previously determined that it is clear from the context of the February 3, 2020 telephone conversation that by "lawsuit", Mrs. Wilcox was referring to Hoff's initial $1.6 million demand letter and not the Underlying Lawsuit. *See* Dkt. No. 149 at fn. 3. Indeed, Mrs. Wilcox testified to as much during her deposition. *See* Dkt. No. 105, Ex. 4 at 74:20-77:8.

It is equally clear from the telephone transcript that by "these papers" Mrs. Wilcox is referring to the Policy:

> Elizabeth Wilcox: Okay. Yeah, that I was aware of. So what I'm needing, because we just spoke with an attorney and he's wanting us to bring a copy of what our insurance policy was at the time, and I don't have that. So I was hoping you could forward that to us.
>
> Insurance Representative: Okay. And you said you guys got an attorney for this accident?
>
> Elizabeth Wilcox: We are. We're going to confer with an attorney tomorrow.
>
> Insurance Representative: Okay. Okay.
>
> Elizabeth Wilcox: And he's wanting us to bring these papers with us.

1

2

(*Mr. Wilcox, as the insured, gets on the telephone to give permission for the Insurance Representative to send the Policy paperwork.*)

3

4

<u>Insurance Representative</u>: -- and it looks you guys are just wanting some kind of documentation showing what your policy limits were at the time of the accident; is that correct?

5

<u>Mr. Wilcox</u>: Yes.

6

7

<u>Insurance Representative</u>: Perfect. What I can do is I can email you a copy of your declaration page, which shows the policy limits.

8

<u>Mr. Wilcox</u>: Okay.

9

<u>Insurance Representative</u>: Would that work out?

10

<u>Mr. Wilcox</u>: Yeah. …

11

12

<u>Insurance Representative</u>: Perfect. I'll email it to you there and you should receive it shortly.

13

<u>Mr. Wilcox</u>: All right. Thank you.

14

15

<u>Insurance Representative</u>: No problem. Thank you, sir.
<u>Mr. Wilcox</u>: Bye-bye.

16

<u>Insurance Representative</u>: Bye.

17

18

19

20

21

Dkt. No. 103, Ex. 1 at 3-6. The transcript clearly demonstrates that by "these papers", Ms. Wilcox is referring to "a copy" of the "insurance policy" that Mr. Warren instructed her to bring to their meeting the next day. Thus, this Court concludes that the foregoing does not create a genuine issue of material fact regarding whether Integon should have known that a lawsuit had been filed.

22

- *Integon failed to recognize that Hoff's attorney's "silence" was a "red flag".*

23

24

25

26

In support of his opinion that Integon should have recognized that Hoff's attorney's silence was a "red flag", Quinley simply states: "Most lawsuits are initiated on claims that are being actively handled by the claim representative. These lawsuits may be filed because the statute of limitations is about to expire or because negotiations have been unproductive. Here, no

27

substantive settlement negotiations occurred." Dkt. No. 119, Ex. 1 at 12. This "opinion" provides no basis for why Hoff's attorney's silence should have been a "red flag" to Integon. Thus, this allegation is unsubstantiated and cannot provide a basis on which a reasonable jury could conclude that Integon acted unreasonably. *See Various Slot Machines in Guam*, 658 F.2d at 700.

- *Integon failed to defend the Wilcoxes.*

The Court has previously determined that Integon did not breach its duty to defend Mr. Wilcox and will not address this issue again here. *See* Dkt. No. 149.

- *Integon failed to direct Warren to enter a notice of appearance and file an answer in the Underlying Lawsuit.*

The Court has previously determined that Integon was not made aware of the Underlying Lawsuit until after the default judgment was entered. *Id.* As such, Integon did not have the opportunity to direct Warren's actions in the Underlying Lawsuit.

- *Integon failed to exercise prudent claim and litigation management over Warren.*

Given that Integon was unaware of the Underlying Lawsuit until after the default judgment was entered, it did not have the opportunity to exercise "litigation management over Warren."

- *Integon failed to recognize that the Wilcoxes hiring Warren was unusual.*

With respect to this opinion, Quinley simply states: "This fact alone could and should have caused Integon [] to investigate and learn that Hoff had sued Wilcox." Dkt. No. 119, Ex. 1 at 16. Once again, this blanket opinion without substantiation as to why, under insurance industry custom and practice, an insured hiring an attorney should have triggered a particular action by the insurer is an insufficient to defeat summary judgment. This is particularly true given the evidence in the record that Integon repeatedly notified the Wilcoxes that they had the right to retain their own attorney and might want to do so given that Hoff's claim would mostly likely exceed the

Policy limits. Given this repeated advice, there was no reason for Integon to find it "unusual" that the Wilcoxes retained counsel.

- *Integon failed to reasonably investigate whether a lawsuit had been filed against the Wilcoxes.*

Here, Quinley asserts that Integon should have been checking the Snohomish County docketing system to determine whether a lawsuit had been filed against the Wilcoxes. The Court has already rejected this argument (*supra* at pp. 8-9) and will not address it again here.

- *Integon did not actively engage in the Wilcoxes' file.*

With respect to this statement, Quinley opines:

'Trust -- but verify' are watchwords for adjusters overseeing defense counsel. As one claim industry training text explains: The claim representative's responsibilities in handling a claim did not end when the claim has been referred to defense counsel. The claim representative continues to be involved in all aspects of the defense. The adjuster controls the litigation process and provides direction to the handling attorney, in accordance with the litigation management program.

Dkt. No. 119, Ex. 1 at 17. This statement does not establish that Integon "did not actively engage in the Wilcoxes' file" and is directly contradicted by the evidence in the record that demonstrates that Integon continued to attempt to settle Hoff's claim even after the Wilcoxes retained Warren.

For the foregoing reasons, this Court concludes that there is no legal or factual basis to support the Wilcoxes' bad faith or negligence claims and Integon is entitled to summary judgment on these claims as a matter of law.

**B.   The WCPA Claim**

In order to prevail on their WCPA claim, the Wilcoxes must satisfy the five-part test established in *Hangman Ridge Training Stables, Inc. v. Safeco Title Insurance Co.*, by demonstrating: (1) an unfair or deceptive act or practice; (2) in trade or commerce; (3) that impacts the public interest; (4) causes injury to the party in his business or property; and (5) the

injury is causally linked to the unfair or deceptive act. 719 P.2d 531, 535-39 (Wash. 1986). "The

question of whether an act or practice is actionable under the [WCPA] is a question of law."

*Dombrosky v. FIE Ins. Co.*, 928 P.2d 1127, 1136 (Wn. App. 1996) *review denied*, 936 P.2d

417(Wash. 1997). The Wilcoxes may establish a *per se* unfair trade practice under the WCPA by

demonstrating a violation of RCW 48.30.010 based upon a violation of WAC 284-30-330. *Id.*

Even then, however, they must still prove that Integon acted unreasonably when it violated WAC

284-30-330. *Keller v. Allstate*, 915 P.2d 1140, 1145 (Wn. App. 1996).[5]

The Wilcoxes allege that Integon violated WAC 284-30-330(1), which prohibits an

insurer from "[m]isrepresenting pertinent facts or insurance policy provisions." They allege that

Integon violated this regulation because it "never told [them] they were entitled to have a defense

lawyer provided to them at Integon's expense to advise, handle or defend them against the Hoff

claim." Dkt. No. 140 at 23-24. Instead, the Wilcoxes claim, Integon "actively told [them] on at

least five occasions that if they wanted a lawyer to assist them with the claim or provide them

advice, that lawyer would have to be paid for by them. *Id.* at 24. Lastly, the Wilcoxes assert that

"Integon did not provide 'reasonable assistance' to [them] in reporting the Hoff lawsuit". *Id.*

---

[5] The Wilcoxes allege in their opposition to the instant motion that Integon also violated WAC
284-30-350(1) and 284-30-360(4), but these allegations were not raised in their counterclaims. It
is well-settled law that a party may not assert new claims for the first time in response to a
summary judgment motion; as such, the Court will not address the claims. *See Mansur
Properties, LLC v. First Amer. Title*, 2022 WL 10428119 at *5 (W.D. Wash., Oct. 18, 2022) ("A
party cannot assert a new theory of liability—effectively amending its complaint—in response to
a motion for summary judgment."); *Oyarzo v. Turner*, 641 F. App'x 700, 702 (9th Cir. 2015)
(same). The Wilcoxes did plead in their counterclaims that Integon violated WAC 284-30-370 but
did not address that regulation in their opposition. Therefore, the Court assumes that the Wilcoxes
have abandoned that claim. *Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014) (noting
that a court may infer from a party's partial opposition that relevant claims or defenses that are
not defended have been abandoned).

The Wilcoxes' allegation that Integon allegedly did not inform them that they were entitled to a defense attorney at Integon's expense is contradicted by the record evidence that establishes that Integon provided the Wilcoxes with a copy of the Policy, which states that Integon will retain, and pay for, defense counsel as it considers appropriate to defend a lawsuit. The Wilcoxes have presented no evidence to suggest that Integon ever said anything to the contrary to them. As to the Wilcoxes' claim that Integon repeatedly informed them that if they wanted a lawyer to assist them with the claim, they would have to pay for the attorney themselves, they take these statements out of context. As stated above, Integon quickly surmised that Mr. Wilcox was solely responsible for the accident and further concluded that Hoff's claim would likely exceed the Policy limits. It is in this context that Integon wrote Mr. Wilcox and informed him that:

> Our investigation leads us to believe that the claim for injuries and/or damages could exceed the bodily injury and/or property damage limits of liability under this policy. While every attempt will be made to resolve all claims against you consistent with our assessment of your liability and the injuries and damages that are presented for this accident or loss, please understand that Integon [] will not be responsible for any award, judgment or verdict against you in excess of the limits of liability as set forth in your policy and any such excess damages will be your personal responsibility.

> While we cannot render legal advice, we would be happy to answer any questions you may have regarding any personal contribution. *We also do want to remind you that you do have the right to retain counsel, at your own expense, to consult with or represent you in this matter.* Should you decide to retain counsel, please have that attorney contact me immediately so that I can work with that attorney on the successful handling and resolution of your claim.

Dkt. No. 118, Ex. 8 (emphasis added). The Wilcoxes cite to no Washington authority, and this Court could not locate any, that holds that an insurer acts in bad faith when it advises its insured to seek personal counsel in situation involving potential exposure beyond the policy limits. To the

contrary, at least one court has suggested that it may be bad faith for an insurer to *not* advise its insured of its right to seek personal counsel in such a situation:

> Where a claim is made for an amount greater than the limits of the policy, it is obvious that the insured may be exposed to liability up to the amount of the excess. It is the duty of the insurer to disclose to its insured its adverse interest with respect to the extent of its liability under the policy. Here the insurer fulfilled its duty in this respect by its communication to the insured advising them of the possibility of a verdict in excess of the policy limit and suggesting that they retain personal counsel.

*Murach v. Massachusetts Bonding & Ins. Co.*, 158 N.E.2d 338, 342 (Mass. 1959). Thus, for the foregoing reasons, this Court concludes that the Wilcoxes have presented no evidence that Integon violated WAC 284-30-330(1). Integon is entitled to summary judgment on the WCPA claim.

### C.     The IFCA Claim

In order to maintain their IFCA claim, the Wilcoxes must demonstrate that Integon unreasonably denied the claim or payment of benefits. RCW 48.30.015(1). Their IFCA claim rests entirely on Integon's alleged breach of its duty to defend Mr. Wilcox in the Underlying Lawsuit. As it has already been stated several times *supra*, this Court has previously concluded that because Mr. Wilcox did not tender the Underlying Lawsuit to Integon before the default judgment was entered—indeed did not even inform Integon about the Lawsuit until after the default judgment was entered— and Integon retained legal counsel for Mr. Wilcox within days of first learning about the Lawsuit, Integon did not breach its duty to defend him. *See* Dkt. No. 149. Therefore, Integon is entitled to summary judgment on the IFCA claim.

//

//

//

//

## VI.   CONCLUSION

For the foregoing reasons, the Court HEREBY GRANTS Integon's motion for summary judgment on the Wilcoxes' extra-contractual claims against it.

Dated this 3rd day of August, 2023.


_____
Barbara      Jacobs      Rothstein
U.S. District Court Judge